## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

CHINMAY DEORE, YOGESH JOSHI,
XIANGYUN BU, and QIUYI YANG,

      Plaintiffs,

 v.

KRISTI NOEM, in her official capacity as
Secretary of the U.S. Department of Homeland
Security; TODD LYONS, in his official capacity
as Acting Director of U.S. Customs and
Immigration Enforcement; and ROBERT
LYNCH, in his official capacity as Field Office
Director of Detroit, U.S. Immigration and Customs
Enforcement,

      Defendants.

Case No.

Hon.

## <u>VERIFIED COMPLAINT</u>

### INTRODUCTION

1.      On or about April 4, 2025, the United States Department of Homeland

Security ("DHS") began to unilaterally terminate the F-1 student status of numerous

students throughout the United States under the Student and Exchange Visitor

Information System ("SEVIS"), the database used both by DHS and by universities

around the country to track and document the continuing status of students who are

authorized to be in the United States to study pursuant to an F-1 visa or other study-related visas.[1]

2.    DHS did not provide the students or their schools any meaningful explanation for terminating their F-1 student status. At most, what seems to connect students targeted by this newfound and unlawful policy is that the students had some encounter with some American law enforcement official at some point in the past, no matter how innocuous—including receiving a speeding or parking ticket (or even a warning) or lawfully withdrawing an application to enter the United States.

3.    Plaintiffs Chinmay Deore, Yogesh Joshi, Xiangyun Bu, and Qiuyi Yang are among those students. They are students at Michigan-based public universities. Chinmay has been pursuing a bachelor's degree in computer science at Wayne State University since August 2021. Yogesh has been pursuing a Ph.D. in anatomy and cell biology at Wayne State University since August 2021. Xiangyun has been pursuing a master's degree in mechanical engineering at the University of Michigan since August 2023. And Qiuyi has been pursuing a Ph.D. at the School for

---

[1] Elizabeth Román, *5 Umass Amherst Students Have Visas Revoked*, New Hampshire Public Radio (Apr. 5, 2025), https://www.nhpr.org/2025-04-05/5-umass-amherst-students-have-visas-revoked; Katy Stegall & Esmeralda Perez, *Five USCD Students' Visas Revoked and Additional Person Deported, University Confirms*, CBS 8 (Apr. 5, 2025), https://www.cbs8.com/article/news/local/five-ucsd-students-f-1-visas-revoked-additional-deported/509-2c257e52-4a31-42f7-8e3e-f6bd92a287b3; Molly Farrar, *Feds Quietly Revoke Visas of Multiple UMass, Harvard students*, Boston.com (Apr. 6, 2025), https://www.boston.com/news/local-news/2025/04/06/feds-quietly-revoke-visas-of-multiple-umass-harvard-students/.

Environment and Sustainability at the University of Michigan since August 2023. None of them has been charged with, let alone convicted of, any crime in the United States. Some have not even committed a traffic violation. None has violated any immigration law. Nor have they been active in on-campus protests regarding any political issue.

4.      Plaintiffs' dreams of finishing their studies in the United States are now in severe jeopardy because of Defendants' decision to abruptly terminate their F-1 student status under SEVIS without affirmatively notifying them—or even their schools—of the termination or the reasons for it, and without providing them with any opportunity to contest the termination.

5.      Instead of being notified by DHS or another government agency, Plaintiffs each received an email from their respective school informing them that the school learned during their periodic check of SEVIS records that the Plaintiff's student status had been terminated.

6.      The reason for termination, as recorded in SEVIS, was largely the same for each Plaintiff: "OTHERWISE FAILING TO MAINTAIN STATUS: Individual identified in criminal records check and/or has had their VISA revoked. SEVIS record has been terminated."  Yogesh's terminated SEVIS record used slightly different prefatory language: "OTHER: Individual identified in criminal records check and/or has had their VISA revoked. SEVIS record has been terminated."

3

Qiuyi's terminated SEVIS record was also amended to the same language as Yogesh's.

7.      Plaintiffs' respective schools were not able to provide any additional information as to why Plaintiffs' student status was terminated. The schools advised only that Plaintiffs make arrangements to leave the country immediately.

8.      This news shocked Plaintiffs. During the multiple years that each has dutifully maintained their F-1 student status, they have not violated any rules governing the maintenance that status, such as "fail[ing] to maintain a full course of study[.]" *See* 8 C.F.R. § 214.2(f)(5)(iv). In fact, Plaintiffs have been star students and model members of their respective school communities.

9.      In light of DHS's unilateral termination of Plaintiffs' F-1 student status under SEVIS without sufficient notice and explanation, Plaintiffs' ability to complete their degrees as F-1 students, work as paid researchers and instructors, and pursue post-graduate opportunities in the United States has been severely disrupted. Moreover, they may face immediate detention and deportation. Indeed, having and maintaining F-1 student status is critical because it can serve as a form of relief and defense in removal proceedings.

10.     At the most elemental level, the United States Constitution requires notice and a meaningful opportunity to be heard. *See Scorteanu v. I.N.S.*, 339 F.3d 407, 413 (6th Cir. 2003) (due process entitles noncitizens to "notice that is

reasonably calculated, under the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections") (internal quotations omitted). *See also Matthews v. Eldridge*, 424 U.S. 319, 322 (1976). No such process was provided here.

11.     To be clear, Plaintiffs do not challenge the revocation of their F-1 ***visas*** in this case, assuming that their visas were actually revoked at all.[2]  Instead, Plaintiffs bring this lawsuit to challenge Defendants' unlawful termination of their F-1 ***student status*** in SEVIS.

12.     There is a difference between an F-1 student visa and an F-1 student status. The F-1 student *visa* refers only to the document that grants permission for a noncitizen student to *enter* the United States, whereas F-1 student *status*, which is what is tracked in SEVIS, refers to that student's formal immigration classification in the United States after they have entered.

13.     The revocation of an F-1 visa does ***not*** constitute a failure to maintain F-1 student status and, therefore, cannot serve as a basis for termination of F-1 student status in SEVIS. *See* 8 C.F.R. § 214.1(d). Instead, DHS's ability to terminate F-1 student status under SEVIS "is limited by [8 C.F.R.] § 214.1(d)." *Jie Fang v.*

---

[2] Plaintiffs have received no direct communications from the U.S. State Department regarding the revocation of their F-1 visas. In fact, Chinmay transitioned from an H-4 visa to F-1 status while already in the United States, and thus never had (or needed) an F-1 visa.

*Director U.S. Immigration & Customs Enforcement*, 935 F.3d 172, 185 n.100 (3d Cir. 2019). Under 8 C.F.R. § 214.1(d), DHS can terminate F-1 student status in SEVIS only when: (1) a previously granted waiver under 8 U.S.C. § 1182(d)(3) or (4) is revoked; (2) a private bill to confer lawful permanent residence is introduced in Congress; or (3) DHS publishes a notification in the Federal Register identifying national security, diplomatic, or public safety reasons for termination. In other words, under this regulation, the revocation of an F-1 visa does not provide a legal basis to terminate F-1 student status under the SEVIS system.

14.     DHS's own policy guidance confirms that "[v]isa revocation is ***not***, in itself, a cause for termination of the student's SEVIS record." U.S. Immigration and Customs Enforcement, *Policy Guidance 1004-04 – Visa Revocations* (June 7, 2010) (emphasis added).[3] Rather, if the visa is revoked, the student is permitted to continue their course of study in school, and it is only upon departure from the United States that their SEVIS record is terminated. After that occurs, the student would need to obtain a new visa from a consulate or embassy abroad if they wish to re-enter the United States. *See* U.S. Department of State, *Guidance Directive 2016-03, 9 FAM 403.11-3: VISA REVOCATION* (Sept. 12, 2016).[4]

---

[3] *Available at* https://www.ice.gov/doclib/sevis/pdf/visa_revocations_1004_04.pdf.
[4] *Available at* https://www.aila.org/library/dos-guidance-directive-2016-03-on-visa-revocation.

15.    In other words, if DHS wishes to terminate F-1 student status under

SEVIS after (or independent of) revoking an F-1 visa, DHS must comply with 8

C.F.R. § 214.1(d). *See Jie Fang*, 935 F.3d at 185 n.100. DHS has not done so here.

## JURISDICTION AND VENUE

16.    Jurisdiction is proper under 28 U.S.C. § 1331 (federal question), 28

U.S.C. § 1346 (federal defendant), and 5 U.S.C. § 702 (right of review).

17.    Venue is proper in the Eastern District of Michigan under 28 U.S.C. §

1391(e), as at least one Plaintiff and at least one federal officer Defendant reside in

the Eastern District.

18.    This Court is authorized to grant the requested relief under 5 U.S.C. §

706, 28 U.S.C. §§ 2201-2202, 28 U.S.C. § 1651, and the Court's equitable powers.

## PARTIES [5]

19.    **Plaintiff Chinmay Deore** is a 21-year-old undergraduate student at

Wayne State University, where he has been studying computer science since August

2021. He is a native and citizen of India. He first entered the United States with his

family on an H-4 dependent visa in 2004. He and his family left the United States in

2008, and he later returned with his family (again on an H-4 dependent visa) in 2014.

After completing high school in Michigan, he enrolled at Wayne State University

---

[5] Declarations from Plaintiffs verifying the facts in this complaint are attached as
Exhibit A.

under his H-4 status. In May 2022, he lawfully applied for, and was granted, permission to transition to F-1 student status when he was aging out of his H-4 status. He anticipates completing his course of study and graduating in May 2025. He currently resides with his immediate family in Canton. He has never been charged with or convicted of a crime in the United States. And other than a speeding ticket and a parking ticket (the fines for which he promptly paid), he has not been charged with any civil infraction, motor vehicle code violation, or immigration law violation. He has not been active in on-campus protests regarding any political issue.

20.    **Plaintiff Yogesh Joshi** is a 32-year-old Ph.D. student at Wayne State University, where he has been studying anatomy and cell biology since August 2021. He is a native and citizen of Nepal. He initially entered the United States on an F-1 visa in August 2021 and currently resides in Detroit with his wife and his eight-month-old U.S.-citizen child. He anticipates completing his course of study and graduating in 2026. He has never been charged with or convicted of a crime in the United States. And other than a parking ticket (the fine for which he promptly paid), he has not been charged with any civil infraction, motor vehicle code violation, or immigration law violation. He has not been active in on-campus protests regarding any political issue.

21.    **Plaintiff Xiangyun Bu** is a 25-year-old master's student at the University of Michigan, where he has been studying mechanical engineering since

August 2023. He is a native and citizen of China. He entered the United States on an F-1 visa in August 2023, and currently resides in Ann Arbor. He anticipates completing his course of study and graduating with a master's degree in May 2025, after which he plans to enroll in a Ph.D. program at Carnegie Mellon University (where he has already been admitted and has committed), and where he would have been entitled to enroll pursuant to his F-1 status without further DHS adjudication. He has never been charged with or convicted of a crime, nor has he ever been charged with any civil infraction, motor vehicle code violation, or immigration law violation. He has not been active in on-campus protests regarding any political issue.

22.     **Plaintiff Qiuyi Yang** is a 26-year-old Ph.D. student at the University of Michigan, where she has been studying at the School for Environment and Sustainability since August 2023. Before that, she attended Cornell University from August 2021 until she earned a master's degree in urban planning in May 2023. She then lawfully transferred her F-1 student status to the University of Michigan. She is a native and citizen of China. She initially entered the United States on an F-1 visa in August 2021 (to attend Cornell) and currently resides in Ann Arbor. She anticipates completing her course of study and graduating in 2028. She has never been charged with or convicted of a crime in the United States. And other than a few parking tickets (the fines for which she promptly paid), she has not been charged

with any civil infraction, motor vehicle code violation, or immigration law violation. She has not been active in on-campus protests regarding any political issue.

23. **Defendant Kristi Noem** is the Secretary of the Department of Homeland Security ("DHS"). She is sued in her official capacity.

24. **Defendant Todd Lyons** is the Acting Director of the Immigration and Customs Enforcement ("ICE"), a component of DHS. He is sued in his official capacity.

25. **Defendant Robert Lynch** is the Field Office Director of ICE's Detroit Field Office and would be the official in charge of any attempt to arrest or detain Plaintiffs. He is sued in his official capacity.

## FACTS

### Background on F-1 Student Visa and Status

26. Under the Immigration and Nationality Act ("INA"), noncitizens can enroll in government-approved academic institutions as F-1 students. *See* 8 U.S.C. § 1101(a)(15)(F). Admitted students living abroad enter the United States on an F-1 visa issued by the U.S. Department of State, and once they enter, are granted F-1 student status and permitted to remain in the United States for the duration of status (D/S) as long as the student continues to meet the requirements established by the regulations governing the student's visa classification in 8 C.F.R. § 214.2(f), such as maintaining a full course of study and avoiding unauthorized employment. DHS's

Student and Exchange Visitor Program ("SEVP") administers the F-1 student program and tracks information on students with F-1 student status.

27.     An academic institution must obtain formal approval from DHS before it can sponsor a student's F-1 status. An institution must first file an application for School Certification through SEVIS system, a SEVP-managed internet-based system used to track and monitor schools and noncitizen students in the United States. *See* 8 C.F.R. § 214.3. The University of Michigan and Wayne State University have both been formally approved to sponsor F-1 students.

28.     Each school that sponsors F-1 students has a Designated School Official ("DSO") who monitors, advises, and oversees the students attending that school.

29.     F-1 students are subject to an array of regulations, including maintaining a full course of study. 8 C.F.R. § 214.2(f)(6). *See generally* 8 C.F.R. § 214.2(f). F-1 students are also entitled to participate in two types of practical training programs: Curricular Practical Training ("CPT") and Optional Practical Training ("OPT"). *See* 8 C.F.R. § 214.2(f)(10). CPT is any "alternative work/study, internship, cooperative education or any other type of required internship or practicum that is offered by sponsoring employers through cooperative agreements with the school." 8 C.F.R. § 214.2(f)(10)(i)). CPT usually occurs during a student's course of study (i.e., before graduation), and often encompasses paid teaching or

assistantship positions for graduate students. OPT consists of temporary employment that is "directly related to the student's major area of study." 8 C.F.R. § 214.2 (f)(10)(ii). OPT usually occurs at the end of the student's course of study (i.e., after graduation).

30. Once a student has completed their course of study and any accompanying CPT or OPT, they generally have sixty days to either depart the United States or transfer to another accredited academic institution. 8 C.F.R. § 214.2 (f)(5)(iv). If a student has been approved to transfer to another school (including to pursue a higher degree), they are authorized to remain in the United States for up to five months while awaiting matriculation at the transfer institution. 8 C.F.R § 214.2(f)(8)(i). If a student voluntarily withdraws from the F-1 program, "he or she has fifteen days to leave the United States." *Id*. Finally, a student who "who fails to maintain a full course of study without the approval of the DSO or otherwise fails to maintain status," *id.*, must leave the country immediately or seek reinstatement of their status.

**Background on Termination of F-1 Student Status**

31. Termination of F-1 student status in SEVIS is governed by SEVP regulations. The regulations distinguish between two separate ways a student may fall out of status: (1) a student who "fails to maintain status"; and (2) an agency-initiated "termination of status." *See* 8 C.F.R. § 214.2(f).

32.     Students fail to maintain their F-1 student status when they do not comply with the regulatory requirements of F-1 status, such as failing to maintain a full course of study without prior approval, engaging in unauthorized employment, or other violations of the requirements under 8 C.F.R. § 214.2(f). In addition, 8 C.F.R. § 214.1(e)-(g) outlines specific circumstances where certain conduct by any nonimmigrant visa holder, such as engaging in unauthorized employment, providing false information to DHS, or being convicted of a crime of violence with a potential sentence of more than a year, "constitute a failure to maintain status." DSOs at schools must report to SEVP, via SEVIS, when a student fails to maintain status. *See* 8 C.F.R. § 214.3(g)(2).

33.     On the other hand, DHS's ability to initiate the termination of F-1 student status "is limited by [8 C.F.R.] § 214.1(d)." *Jie Fang*, 935 F.3d at 185 n.100. Under this regulation, DHS can terminate F-1 student status under the SEVIS system ***only*** when: (1) a previously granted waiver under 8 U.S.C. § 1182(d)(3) or (4) is revoked; (2) a private bill to confer lawful permanent residence is introduced in Congress; or (3) DHS publishes a notification in the Federal Register identifying national security, diplomatic, or public safety reasons for termination. *See* 8 C.F.R. § 214.1(d).

34.     Accordingly, the revocation of an F-1 visa does ***not*** constitute a failure to maintain F-1 student status and otherwise cannot serve as a basis for agency-

initiated termination of F-1 student status in SEVIS. Of course, if an F-1 visa is revoked *before* the student's admission into the United States, the student may not enter, and their F-1 student status in SEVIS would be cancelled. However, the F-1 student status in SEVIS may not be terminated simply because of visa revocation *after* a student has been admitted into the United States. In DHS's own words, "[v]isa revocation is not, in itself, a cause for termination of the student's SEVIS record." *ICE Policy Guidance 1004-04 – Visa Revocations* (June 7, 2010).[6]

35.    Rather, if an F-1 visa is revoked after admission, the student is permitted to pursue their course of study uninterrupted. Once that student completes their study and departs from the United States, the SEVIS record would then be terminated, and the student would need to obtain a new visa from a consulate or embassy abroad before returning to the United States. *See Guidance Directive 2016-03, 9 FAM 403.11-3: VISA REVOCATION* (Sept. 12, 2016).[7]

36.    While a visa revocation can be charged as a ground of deportability in removal proceedings, deportability (and the revocation of the visa) can expressly be contested in such proceedings. *See* 8 U.S.C. § 1227(a)(1)(B); 8 U.S.C. § 1201(i). The immigration judge may also dismiss removal proceedings where a visa is revoked, so long as a student is able to remain in valid status or otherwise reinstates

---

[6] https://www.ice.gov/doclib/sevis/pdf/visa_revocations_1004_04.pdf.

[7] https://www.aila.org/library/dos-guidance-directive-2016-03-on-visa-revocation.

to F-1 student status. *See* 8 C.F.R. § 1003.18(d)(ii). Only when a final removal order

is entered would the status be lost.

37.     On the other hand, the Immigration Judge has no ability to review the

termination of F-1 student status in SEVIS because the process is collateral to

removal proceedings. *See Jie Fang*, 935 F.3d at 183.

38.     Students who have failed to maintain F-1 status may seek reinstatement.

Under regulations,

> a district director in the U.S. Citizenship and Immigration Services
> ('USCIS') 'may consider' reinstating a student who demonstrates that
> he or she: 1) 'has not been out of [valid F-1] status for more than 5
> months at the time of filing the request for reinstatement' or that 'the
> failure to file within the 5 month period was the result of exceptional
> circumstances and that the student filed the request for reinstatement as
> promptly as possible under these exceptional circumstances;' 2) does
> 'not have a record of repeated or willful violations of Service
> regulations'; 3) is pursuing or intends to pursue a full course of study;
> 4) has not engaged in unauthorized employment; 5) is not deportable
> on any ground other than 8 U.S.C. § 1227(a)(1)(B) and (C)(i); and 6)
> can prove that the violation of status resulted from circumstances
> beyond the student's control, or that the violation relates to a reduction
> in the student's course load that would have otherwise been permitted
> if authorized by the school and that failure to approve reinstatement
> would result in extreme hardship to the student.

*Jie Fang*, 935 F.3d at 176 (citing and quoting 8 C.F.R. § 214.2(f)(16)(i)(A)-(F)).

### Termination of Plaintiffs' F-1 Student Statuses

39.     **Chinmay Deore** is a 21-year-old citizen of India and an undergraduate

student at Wayne State University. He entered the United States on an H-4 dependent

visa, and lawfully applied and was approved by USCIS to change his status to F-1

student status since May 2022. He expects to graduate with a bachelor's degree in May 2025. Following graduation, he had planned to exercise his right, pursuant to his F-1 status, to obtain lawful OPT employment.

40.     On April 4, 2025, Wayne State University informed Chinmay that his F-1 student status in SEVIS had been terminated. Specifically, the email he received stated: "Our record shows that your SEVIS has been terminated this morning-TERMINATION REASON: **OTHERWISE FAILING TO MAINTAIN STATUS - Individual identified in criminal records check and/or has had their VISA revoked. SEVIS record has been terminated.**" Exhibit B (emphasis in original). No further details or allegations were provided.

41.     However, Chinmay has never been charged with, let alone convicted of, a crime. And besides a speeding ticket and a parking ticket (the fines for which he promptly paid), he has no civil infractions on his record. Nor has he ever violated any immigration law. In sum, Chinmay's criminal, civil, and immigration record is virtually clean.

42.     Furthermore, he has not received any notice from the Department of State that any F-1 visa attributed to him has been revoked. Indeed, because he applied for F-1 student status while lawfully present in the United States as an H-4 visa recipient, he never even *received* an F-1 visa that could be canceled in the first

place. He has complied with all rules and regulations as someone with F-1 student status. He does not know why his F-1 student status in SEVIS was terminated.

43.     **Yogesh Joshi** is a 32-year-old citizen of Nepal and a Ph.D. student at Wayne State University. He entered the United States on an F-1 visa in August 2021, and has maintained F-1 student status since then. He expects to graduate with a Ph.D. in 2026.

44.     On April 8, 2025, Wayne State University informed Yogesh that his F-1 student status in SEVIS had been terminated. Specifically, the email he received stated: "I must inform you that your SEVIS immigration record has been terminated today by the Department of Homeland Security.  The reason cited on your SEVIS record for your immigration record termination is: TERMINATION REASON: **TERMINATION REASON: OTHER - Individual identified in criminal records check and/or has had their VISA revoked. SEVIS record has been terminated.** We do not have access to any information specific to why your SEVIS termination, but your lawful status in the U.S. is terminated, and you are at risk of detention and deportation." Exhibit C (emphasis in original).

45.     However, Yogesh has never been charged with, let alone convicted of, a crime. At most, he was arrested for a domestic dispute with his now-wife in 2022, but he was promptly released and no charges were filed. And besides a parking ticket (the fine for which he promptly paid), he has no civil infractions on his record. Nor

has he ever violated any immigration law. In sum, Yogesh's criminal, civil, and immigration record is virtually clean.

46.    Furthermore, he has not received any notice from the Department of State that his F-1 visa has been revoked. He has complied with all rules and regulations as someone with F-1 student status. He does not know why his F-1 student status in SEVIS was terminated.

47.    **Xiangyun Bu** is a 25-year-old citizen of China and a master's student at the University of Michigan. He entered the United States on an F-1 visa in August 2023, and has maintained F-1 student status since then. He expects to graduate with a master's degree in May 2025. He has been admitted and has committed to a Ph.D. program at Carnegie Mellon University, to begin in August 2025, in which he should be entitled to enroll as a student and continue his F-1 student status. He has also applied for lawful summer employment, as is his right under his F-1 status pursuant to the OPT program.

48.    On April 7, 2025, the University of Michigan informed Xiangyun that his F-1 student status in SEVIS had been terminated. Specifically, the email he received stated: "I am writing to inform you that we unfortunately learned during our daily check of SEVIS records that your SEVIS record was 'terminated' by a Department of Homeland Security (DHS) official. The reason noted was 'OTHERWISE FAILING TO MAINTAIN STATUS - Individual identified in

criminal records check and/or has had their VISA revoked. SEVIS record has been terminated.' We do not have any additional information about this termination, but this means you no longer hold valid F-1 status within the United States." Exhibit D.

49.     However, Xiangyun has never been charged with, let alone convicted of, a crime. He has no civil infractions on his record (not even a speeding or parking ticket), nor has he ever violated any immigration law. In December of 2022, well before acquiring his F-1 status, he sought to enter the United States on a visitor's visa to visit his girlfriend at the time for a semester. He lawfully and voluntarily withdrew his application for admission after being told by a border patrol officer that a stay of that length would not be permitted. In sum, Xiangyun's criminal, civil, and immigration record is virtually clean.

50.     Furthermore, he has not received any notice from the Department of State that his F-1 visa has been revoked. He has complied with all rules and regulations as someone with F-1 student status. He does not know why his F-1 student status in SEVIS was terminated.

51.     **Qiuyi Yang** is a 26-year-old citizen of China and a Ph.D. student at University of Michigan. She entered the United States on an F-1 visa in August 2021, and has maintained F-1 student status since then. She expects to graduate with a Ph.D. in 2028.

52.     On April 4, 2025, the University of Michigan informed Qiuyi that her F-1 student status in SEVIS had been terminated. Specifically, the email she received stated: "I am reaching out regarding your immigration record. In our daily review of SEVIS, we learned that your SEVIS record was 'terminated' by a Department of Homeland Security (DHS) official. The reason noted was 'OTHERWISE FAILING TO MAINTAIN STATUS – Individual identified in criminal records check and/or has had their VISA revoked. SEVIS record has been terminated.' We do not have any additional information, but this termination means you no longer hold valid F-1 status within the United States." Exhibit E.

53.     On April 8, 2024, the University of Michigan followed up with Qiuyi via email to inform her that SEVIS now reflected a slightly different termination reason: "A check of your current SEVIS record shows: 'TERMINATION REASON: OTHER - Individual identified in criminal records check and/or has had their VISA revoked. SEVIS record has been terminated.' A point of clarification: if the government terminates the SEVIS record (rather than our office), as is the case in your circumstance, then the university international office cannot change the termination reason." Exhibit F.

54.     However, Qiuyi has never been charged with, let alone convicted of, a crime. At most, she was arrested for a domestic dispute with her current partner in 2024, but she was promptly released and no charges were filed. And besides a few

parking tickets (the fines for which she promptly paid), she has no civil infractions on her record. Nor has she ever violated any immigration law. In sum, Qiuyi's criminal, civil, and immigration record is virtually clean.

55.    Furthermore, she has not received any notice from the Department of State that her F-1 visa has been revoked. She has complied with all rules and regulations as someone with F-1 student status. She does not know why her F-1 student status in SEVIS was terminated.

56.    These terminations have put Plaintiffs' education, research, and career trajectory at risk. In particular, **Chinmay** is no longer able to obtain OPT, and his ability to transfer his F-1 status to another school for a master's degree is in jeopardy. He has also lost a position he lawfully held pursuant to his F-1 status, a position that provided income that he relied on to support himself. If removed from the United States he would also be torn away from his parents and sister, all of whom lawfully reside in Canton, Michigan. **Yogesh** has lost a position he lawfully held pursuant to his F-1 status as a paid research assistant and a graduate instructor—a position that provided income he relied on to support his family, including his U.S. citizen child. **Xiangyun** is no longer able to obtain OPT (his application is pending but may be denied because of his status termination), and he will be unable to attend Carnegie Mellon for the Ph.D. program (to which he has already committed) if his F-1 status is not restored promptly. And **Qiuyi** has lost a position she lawfully held pursuant to

her F-1 status to work as a paid research assistant and a graduate instructor—a position that provided income she relied on to support herself while studying in the United States.

57.    In addition, Plaintiffs' status terminations also put each at serious risk of immediate arrest and detention for removal proceedings—an outcome other students have already faced.[8]

58.    The unlawful terminations of Plaintiffs' F-1 status are part of a clear policy and pattern/practice, whether written or not, perpetuated by Defendants to cancel the status of hundreds, if not thousands, of immigrant students nationwide. On April 7, 2025, *Inside Higher Ed*, an industry publication, had already reported 147 terminations at 48 different educational institutions and indicated that this estimate was "almost certainly a fraction of the total" because "[m]any . . . colleges are reluctant to publicly confirm any student visa revocations [because they are] anxious to avoid attracting federal scrutiny and uncertain how to navigate an increasingly fraught gray zone."[9] The same publication noted that "more than a dozen officials at small colleges" demanded anonymity to discuss cancellations and

---

[8] *See, e.g.*, *Ozturk v. Trump*, No. 25-cv-10695-DJC, __ F. Supp. 3d __, 2025 LEXIS 64831, 2025 WL 1009445 (D. Mass. Apr. 4, 2025).

[9] Laim Knox, *Student Visa Dragnet Reaches Small Colleges*, Inside Higher Ed (April 8, 2025), https://www.insidehighered.com/news/global/international-students-us/2025/04/08/trump-admin-broadens-scope-student-visa (accessed April 9, 2025).

contains a map that has subsequently updated as of April 9, 2025, documenting almost 450 cancellations at nearly 100 colleges and universities—including six universities in Michigan. Mass cancellations have also been documented this week in numerous news sources.[10]

59.     The timing and uniformity of these terminations leave little question that DHS has adopted a nationwide policy, whether written or not, of mass termination of student status in SEVIS. While the exact details of the policy are not currently known, the experience of Plaintiffs and of other publicly reported cases strongly suggests that the terminations are being indiscriminately made based upon *any* information that a given student has had some kind of encounter with a law enforcement official, no matter how innocuous, or a prior encounter with immigration agents even if that encounter did not involve unlawful conduct.

60.     These unlawful cancellations have also been the subject of lawsuits in federal district court in the District of New Hampshire, the Central District of

---

[10] *See, e.g.,* Andy Rose & Caroll Alvarado, *More than 300 Student Visas Revoked As the Government Expands Reasons for Deportation*, CNN (April 9, 2025), https://www.cnn.com/2025/04/09/us/us-immigration-student-visas-revoked/index.html; Collin Binkley, Annie Ma & Makiya Seminera, *Federal Officials Are Quietly Terminating the Legal Residency of Some International College Students*, Associated Press (Apr. 4, 2025), https://apnews.com/article/college-international-student-f1-visa-ice-trump-7a1d186c06a5fdb2f64506dcf208105a; Ava Hu, *Deported Over a Speeding Ticket? Dozens of US Students' Visas Abruptly Revoked*, The Guardian (Apr. 7, 2025), https://www.theguardian.com/us-news/2025/apr/07/trump-student-visas-deportation.

California, and the Western District of Pennsylvania.[11] The district court in New Hampshire issued a temporary restraining order similar to the one sought here, and on a similar legal theory, on April 9, 2025. See *Liu v. Noem*, No. 25-cv-133, Minute Entry (D.N.H. April 9, 2025); *id.* at ECF No. 13 (Order).

## CLAIMS FOR RELIEF

### COUNT 1
### Violation of Fifth Amendment – Procedural Due Process
### (F-1 Student Status Terminations)

61.   The foregoing allegations are realleged and incorporated herein.

62.   The United States Constitution requires notice and a meaningful opportunity to be heard before being deprived of rights and interests that can be withdrawn only for cause by law. *See Scorteanu v. I.N.S.*, 339 F.3d 407, 413 (6th Cir. 2003) (due process entitles noncitizens to "notice that is reasonably calculated, under the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections").

63.   The law, namely 8 C.F.R. § 214.1(d), provides the specific bases upon which an immigrant student's F-1 status can be terminated by DHS.

64.   Defendants terminated each Plaintiff's F-1 student status under SEVIS without (i) notifying them of the termination decision and the reasons for it, (ii)

---

[11] *See Liu v. Noem*, No. 25-cv-133 (D.N.H. filed Apr. 7, 2025); *C.S. v. Noem*, No. 25-477 (W.D. Pa. filed Apr. 7, 2025); *Student Doe #1 v. Noem*, No. 25-cv-847 (C.D. Cal. filed Apr. 5, 2025).

providing them an individualized hearing before an impartial adjudicator, and (iii) failing to provide Plaintiff with adverse evidence and an opportunity to confront and respond to such evidence.

65.     Defendants' disregard for complying with the well-established due process principles violated Plaintiffs' due process rights.

## COUNT 2
### Violation of Administrative Procedure Act and *Accardi* Doctrine
### (Unlawful Terminations of Plaintiffs' F-1 Student Statuses)

66.     The foregoing allegations are realleged and incorporated herein.

67.     Defendants' termination of each Plaintiff's F-1 student status under SEVIS is a final agency action. *See Jie Fang*, 935 F.3d at 182 ("The order terminating these students' F-1 visas marked the consummation of the agency's decisionmaking process, and is therefore a final order[.]").

68.     Defendants' termination of each Plaintiff's F-1 student status under SEVIS violates the Administrative Procedure Act (APA) and should be set aside pursuant to 5 U.S.C. § 706(2) as arbitrary, capricious, an abuse of discretion, contrary to constitutional right, contrary to law, in excess of statutory jurisdiction, and in violation of the *Accardi* doctrine and federal agencies' own rules, *see Accardi v. Shaughnessy*, 347 U.S. 260 (1954).

69.     Under 8 C.F.R. § 214.1(d), Defendants have no statutory or regulatory authority to terminate each Plaintiff's F-1 student status in SEVIS based simply on

revocation of a visa. Additionally, nothing in Plaintiffs' (lack of) criminal history, academic record, or other applicable history or record provides a statutory or regulatory basis for termination or even for determining that any of Plaintiffs have failed to maintain their F-1 status.

70.     Additionally, in making its determination that each Plaintiff's student status should be terminated, Defendants did not consider any facts relevant to Plaintiffs' individual circumstances nor did it provide any explanation, let alone reasoned explanation, justifying its determination. As a result, Defendants arbitrarily and capriciously terminated each Plaintiff's F-1 student status under SEVIS.

71.     Moreover, Defendants terminated each Plaintiff's F-1 student status under SEVIS without affording them meaningful notice and an opportunity to be heard, contrary to Plaintiffs' constitutional right to procedural due process.

72.     Therefore, Defendants' termination of each Plaintiff's F-1 student status under SEVIS is arbitrary and capricious, an abuse of discretion, contrary to constitutional right, contrary to law, and in excess of statutory jurisdiction. 5 U.S.C.A. § 706(2). It is also not in accordance with DHS's own rules.

**COUNT 3**
**Violation of Administrative Procedure Act and *Accardi* Doctrine**
**(Policy and/or Pattern-and-Practice of F-1 Student Status Terminations)**

73.     The foregoing allegations are realleged and incorporated herein.

74.    Defendants have adopted a policy, or have engaged in a pattern-and-practice, of unilaterally terminating students' F-1 student status in SEVIS for reasons that do not rise to the level required for termination under 8 C.F.R. § 214.1.

75.    Beginning on or around April 4, 2025, Defendants unilaterally terminated the F-1 student status of multiple students nationwide *en masse*, including Plaintiffs.

76.    Defendants did not affirmatively notify the affected students or their schools. Instead, school DSOs learned, via SEVIS, that Defendants had terminated certain students' F-1 student statuses. In SEVIS, Defendants recorded the same boilerplate reason in all cases: "Individual identified in criminal records check and/or has had their VISA revoked. SEVIS record has been terminated." Defendants deliberately did not clarify whether the affected students had been identified in a criminal records check, whether their F-1 visa had been revoked, or both—willfully denying students notice of the grounds for the terminations.

77.    This policy and/or pattern-and-practice constitutes a final agency action and violates the Administrative Procedure Act (APA) and should be set aside pursuant to 5 U.S.C. § 706(2) as arbitrary, capricious, an abuse of discretion, contrary to constitutional right, contrary to law, and in excess of statutory jurisdiction, and a violation of the *Accardi* doctrine and federal agencies' own rules, *see Accardi v. Shaughnessy*, 347 U.S. 260 (1954).

## COUNT 4
## Violation of Fifth Amendment – Procedural Due Process
## (Unlawful Detention)

78.    The foregoing allegations are realleged and incorporated herein.

79.    The Fifth Amendment requires fair, pre-deprivation process when a person's liberty hangs in the balance.

80.    In light of the unlawful termination of each Plaintiff's F-1 student status under SEVIS, each Plaintiff is at risk of abrupt arrest and detention by Immigration & Customs Enforcement (ICE) without prior notice.

81.    No Plaintiff has committed any crime, nor has any Plaintiff been subject to any academic discipline. Each Plaintiff has ensured that they have complied with all rules for the F-1 program and have, by all accounts, fully participated in their courses of study. *See Zadvydas v. Davis*, 533 U.S. 678, 690 (2001) (finding immigration detention must further twin goals of (1) ensuring noncitizen's appearance during removal proceedings and (2) preventing danger to the community). There is no credible argument for the need to detain any Plaintiff.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs ask that this Court:

1)    Assume jurisdiction over this matter;

2)    Enter judgment in favor of Plaintiffs and against Defendants;

28

3)   Declare that Defendants Noem's and Lyons's termination of each Plaintiff's F-1 student status in SEVIS without affording them sufficient notice and opportunity to be heard violated each Plaintiff's Fifth Amendment procedural due process rights;

4)   Declare that Defendants Noem's and Lyons's termination of each Plaintiff's F-1 student status in SEVIS violated the Administrative Procedure Act (including under 8 C.F.R. § 214.1(d));

5)   Declare that Defendants Noem and Lyons have adopted a policy, or have engaged in a pattern or practice, of unlawfully terminating students' F-1 student statuses, and that this policy and/or pattern-and-practice violates the APA;

6)   Issue a temporary restraining order, followed by a preliminary and permanent injunction, as to Defendants Noem and Lyons:

   a.  requiring them to restore each Plaintiff's valid F-1 student status in SEVIS at their respective schools or provide each Plaintiff with a reasonable period to maintain their valid F-1 status by allowing them to transfer to another DHS-approved school or to apply for OPT;

   b.  requiring them to set aside the F-1 student status termination decisions as to Plaintiffs;

29

c. prohibiting them from terminating Plaintiffs' F-1 student status absent a valid ground as set forth in 8 C.F.R. § 214.1(d), and absent an adequate individualized pre-deprivation proceeding before an impartial adjudicator for each Plaintiff, in which they will be entitled to review any adverse evidence and respond to such evidence prior to determining anew than any Plaintiff's F-1 student status should be terminated;

7) Issue a temporary restraining order, followed by a preliminary and permanent injunction, as to all Defendants:

a. prohibiting them from arresting, detaining, or transferring Plaintiffs out of this Court's jurisdiction, or ordering the arrest, detention, or transfer of Plaintiffs out of this Court's jurisdiction, without first providing adequate notice to both this Court and Plaintiffs' counsel as well as time to contest any such action;

b. prohibiting them from initiating removal proceedings against or deporting any Plaintiff on the basis of the termination of their F-1 student status;

8) Vacate and set aside Defendants Noem and Lyons's policy and/or pattern-and-practice of unilaterally terminating students' F-1 student status in SEVIS for reasons that do not rise to the level required for termination under 8 C.F.R. § 214.1, and accordingly, issue an injunction (i) requiring Defendants Noem

and Lyons to restore the valid F-1 status of individuals affected by this policy

and/or pattern-and-practice and (ii) prohibiting Defendants Noem and Lyons

from terminating the F-1 status of individuals under this policy and/or pattern-

and-practice;

9)      Award Plaintiffs attorney fees and other litigation costs pursuant to the Equal

Access to Justice Act and/or any other applicable law; and

10)     Grant such further relief as the Court deems just and proper.

Respectfully submitted,

By:     /s/ Ramis J. Wadood

| | |
|---|---|
| Kevin M. Carlson (P67704) | Ramis J. Wadood (P85791) |
| Michael L. Pitt (P24429) | Philip E. Mayor (P81691) |
| Cooperating Attorneys, American Civil | Bonsitu Kitaba-Gaviglio (P78822) |
|   Liberties Union Fund of Michigan | Syeda F. Davidson (P72801) |
| Pitt McGehee Palmer Bonanni | Daniel S. Korobkin (P72842) |
|   & Rivers | American Civil Liberties Union |
| 117 W. 4th St. Ste. 200 |   Fund of Michigan |
| Royal Oak, MI 48067 | 2966 Woodward Avenue |
| (248) 398-9800 | Detroit, MI  48201 |
| kcarlson@pittlawpc.com | (313) 578-6800 |
| mpitt@pittlawpc.com | rwadood@aclumich.org |
| | pmayor@aclumich.org |
| | bkitaba@aclumich.org |
| Russell Abrutyn (P63968) | sdavidson@aclumich.org |
| Cooperating Attorney, American Civil | dkorobkin@aclumich.org |
|   Liberties Union Fund of Michigan | |
| Abrutyn Law PLLC | |
| 15944 W 12 Mile Rd | |
| Southfield, MI 48076 | |
| (248) 965-9440 | |
| russell@abrutyn.com | |

Attorneys for Plaintiffs                              Dated: April 10, 2025