# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

CHINMAY DEORE, YOGESH JOSHI,
XIANGYUN BU, and QIUYI YANG,

      Plaintiffs,

  v.

KRISTI NOEM, in her official capacity as
Secretary of the U.S. Department of Homeland
Security; TODD LYONS, in his official capacity
as Acting Director of U.S. Customs and
Immigration Enforcement; and ROBERT
LYNCH, in his official capacity as Field Office
Director of Detroit, U.S. Immigration and Customs
Enforcement,

      Defendants.

Case No. 2:25-cv-11038

Hon. Stephen J. Murphy III

**IMMEDIATE CONSIDERATION
REQUESTED**

## PLAINTIFFS' EMERGENCY MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

Pursuant to Fed. R. Civ. P. 65 and the Administrative Procedure Act, 5 U.S.C. § 705—and for the reasons stated in the accompanying brief, Verified Complaint (ECF No. 1), and all pleadings filed—Plaintiffs respectfully move this Court to issue a temporary restraining order, followed by a preliminary injunction:

(i) requiring Defendants Noem and Lyons to restore each Plaintiff's F-1 student status in the Student and Exchange Visitor Information System (SEVIS);

(ii) requiring Defendants Noem and Lyons to set aside the F-1 student status termination decisions as to Plaintiffs;

(iii) prohibiting Defendants Noem and Lyons from terminating Plaintiffs' F-1 student status absent a valid ground as set forth in 8 C.F.R. § 214.1(d), and absent an adequate individualized pre-deprivation proceeding before an impartial adjudicator for each Plaintiff, in which they will be entitled to review any adverse evidence and respond to such evidence prior to determining anew that any Plaintiff's F-1 student status should be terminated;

(iv) prohibiting all Defendants from arresting, detaining, or transferring Plaintiffs out of this Court's jurisdiction, or ordering the arrest, detention, or transfer of Plaintiffs out of this Court's jurisdiction, without first providing adequate notice to both this Court and Plaintiffs' counsel as well as time to contest any such action; and

(v) prohibiting all Defendants from initiating removal proceedings against or deporting any Plaintiff on the basis of the termination of their F-1 student status.

Plaintiffs have endeavored to notify Defendants' counsel of this impending motion and the accompanying Verified Complaint (ECF No. 1), including by emailing the U.S. Attorney's Office for the Eastern District of Michigan. However, as set forth in the Verified Complaint, immediate and irreparable injury, loss, or damage will result to Plaintiffs before the adverse parties can be heard in opposition.

*See* Verified Compl., ECF No. 1, ¶¶56-57. Accordingly, Plaintiffs request that the Court immediately enter a temporary restraining order. A proposed order is being submitted to the Court contemporaneously with this motion.

Plaintiffs also request that this Court waive the requirement for bond or security. *See* Fed. R. Civ. P. 65(c).

Respectfully submitted,

By:    /s/ Ramis J. Wadood

Kevin M. Carlson (P67704)
Michael L. Pitt (P24429)
Cooperating Attorneys, American Civil
   Liberties Union Fund of Michigan
Pitt McGehee Palmer Bonanni
   & Rivers
117 W. 4th St. Ste. 200
Royal Oak, MI 48067
(248) 398-9800
kcarlson@pittlawpc.com
mpitt@pittlawpc.com

Russell Abrutyn (P63968)
Cooperating Attorney, American Civil
   Liberties Union Fund of Michigan
Abrutyn Law PLLC
15944 W 12 Mile Rd
Southfield, MI 48076
(248) 965-9440
russell@abrutyn.com

Ramis J. Wadood (P85791)
Philip E. Mayor (P81691)
Bonsitu Kitaba-Gaviglio (P78822)
Syeda F. Davidson (P72801)
Daniel S. Korobkin (P72842)
American Civil Liberties Union
   Fund of Michigan
2966 Woodward Avenue
Detroit, MI  48201
(313) 578-6800
rwadood@aclumich.org
pmayor@aclumich.org
bkitaba@aclumich.org
sdavidson@aclumich.org
dkorobkin@aclumich.org

Attorneys for Plaintiffs

Dated: April 10, 2025

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

CHINMAY DEORE, YOGESH JOSHI,
XIANGYUN BU, and QIUYI YANG,

     Plaintiffs,

 v.

KRISTI NOEM, in her official capacity as
Secretary of the U.S. Department of Homeland
Security; TODD LYONS, in his official capacity
as Acting Director of U.S. Customs and
Immigration Enforcement; and ROBERT
LYNCH, in his official capacity as Field Office
Director of Detroit, U.S. Immigration and Customs
Enforcement,

     Defendants.

Case No. 2:25-cv-11038

Hon. Stephen J. Murphy III

## BRIEF IN SUPPORT OF
## PLAINTIFFS' EMERGENCY MOTION FOR
## TEMPORARY RESTRAINING ORDER
## AND PRELIMINARY INJUNCTION

# TABLE OF CONTENTS

INDEX OF AUTHORITIES.....................................................................................ii

ISSUES PRESENTED........................................................................................iv

CONTROLLING OR MOST APPROPRIATE AUTHORITY ...............................v

INTRODUCTION ...............................................................................................1

FACTUAL BACKGROUND...............................................................................2

   I.   Background on F-1 Student Visa and Status..................................................2

   II.  Termination of F-1 Student Status .............................................................4

   III. Plaintiffs and the Termination of their F-1 Student Status...........................6

   IV. Nationwide Pattern of Arbitrary Status Terminations...............................13

LEGAL STANDARD........................................................................................14

ARGUMENT ....................................................................................................15

   I.   Plaintiffs Are Likely to Prevail on Their Claims That the Termination of Their F-1 Student Status Was Unlawful ................................................15

      A.  The status terminations violate the Fifth Amendment's Due Process Clause (Count 1) .......................................................................15

      B.  The status terminations violate the Administrative Procedure Act (Count 2)...........................................................................................18

   II.  Plaintiffs Are Facing Irreparable Harm and Will Continue to Do So Absent Emergency Injunctive Relief............................................................22

   III. The Balance of Equities and Public Interest Strongly Favor Plaintiffs ......24

CONCLUSION AND RELIEF REQUESTED ......................................................25

# INDEX OF AUTHORITIES

## Cases

*ACLU of Ky. v. McCreary Cnty., Ky.*, 354 F.3d 438 (6th Cir. 2003), *aff'd*, 545 U.S. 844 (2005)..................................................................................23

*Apogee Coal Co., LLC v. Dir., Off. of Workers' Comp. Programs*, 112 F.4th 343 (6th Cir. 2024) ...............................................................................21

*Bridges v. Wixon*, 326 U.S. 135 (1945) ...............................................................23

*Chamber of Com. of United States v. Sec. & Exch. Comm'n*, 115 F.4th 740 (6th Cir. 2024) ...............................................................................21

*Citizens to Pres. Overton Park, Inc. v. Volpe*, 401 U.S. 402 (1971), *abrogated on other grounds by Califano v. Sanders*, 430 U.S. 99 (1977)..........................................................................................................22

*Concerned Pastors for Social Action v. Khouri*, 220 F. Supp. 3d 823 (E.D. Mich. 2016)..........................................................................................25

*Cyr v. Addison Rutland Supervisory Union*, 60 F. Supp. 3d 536 (D. Vt. 2014) ....................................................................................................v

*Dep't of Com. v. New York*, 588 U.S. 752 (2019) ................................................22

*Fong Haw Tan v. Phelan*, 333 U.S. 6 (1948) .......................................................23

*Jie Fang v. Director U.S. Immigration & Customs Enforcement*, 935 F.3d 172 (3d Cir. 2019)........................................................................ passim

*Liu v. Noem*, No. 25-cv-133 (D.N.H. April 10, 2025)...........................................14

*Matthews v. Eldridge*, 424 U.S. 319 (1976) ........................................................16

*Miller v. City of Cincinnati*, 622 F.3d 524 (6th Cir. 2010)...................................24

*Motor Vehicle Mfrs. Ass'n of U.S., Inc., v. State Farm Mut. Auto Ins. Co.*, 463 U.S. 29 (1983)........................................................................................21

*Obama for Am. v. Husted*, 697 F.3d 423 (6th Cir. 2012) ......................................14

*Rosales-Garcia v. Holland*, 322 F.3d 386 (6th Cir. 2003) ...................................15

*Scorteanu v. I.N.S.*, 339 F.3d 407 (6th Cir. 2003) ...............................................16

*Winter v. NRDC*, 555 U.S. 7 (2008) ....................................................................14

*Zadvydas v. Davis*, 533 U.S. 678, (2001) ............................................................16

**Constitutional Provisions**

U.S. Const. amend. V.................................................................................15

**Statutes**

5 U.S.C. § 706.................................................................... 15, 18, 20, 21

8 U.S.C. § 1101...................................................................................2

8 U.S.C. § 1182..............................................................................5, 19

8 U.S.C. § 1201...................................................................................6

8 U.S.C. § 1227...................................................................................6

**Rules**

Fed. R. Civ. P. 65.............................................................................25

**Regulations**

8 C.F.R. § 1003.18.............................................................................6

8 C.F.R. § 214.1......................................................................... passim

8 C.F.R. § 214.2.................................................................. 2, 3, 4, 20

8 C.F.R. § 214.3............................................................................3, 5

**Other Authorities**

Department of State, Guidance Directive 2016-03, 9 FAM 403.11-3 – VISA
    REVOCATION (Sept. 12, 2016) ...................................................6

## ISSUES PRESENTED

1. Are Defendants likely violating Plaintiffs' Fifth Amendment due process rights by terminating their F-1 student status without notifying them of the termination decision and the reasons for it, without providing them with an individualized hearing before an impartial adjudicator, and failing to provide them with adverse evidence and an opportunity to confront and respond to it?

2. Was Defendants' sudden and unilateral termination of each Plaintiff's F-1 student status likely arbitrary and capricious, not in accordance with law, and/or contrary to constitutional right, all in violation of the Administrative Procedure Act?

3. Assuming the Court finds that Defendants' actions are likely unconstitutional or unlawful for any of the reasons stated in issues (1)–(2), should a temporary restraining order, and subsequently a preliminary injunction, issue?

## CONTROLLING OR MOST APPROPRIATE AUTHORITY

1. U.S. Const. amend. V
2. 5 U.S.C. § 706(2)

**Caselaw Pertaining to Due Process Issue**

1. *Scorteanu v. I.N.S.*, 339 F.3d 407 (6th Cir. 2003)
2. *Matthews v. Eldridge*, 424 U.S. 319 (1976)
3. *Rosales-Garcia v. Holland*, 322 F.3d 386 (6th Cir. 2003)
4. *Zadvydas v. Davis*, 533 U.S. 678 (2001)

**Caselaw Pertaining to Administrative Procedure Act Issue**

1. *Jie Fang v. Director U.S. Immigration & Customs Enforcement*, 935 F.3d 172 (3d Cir. 2019)
2. *Chamber of Com. of United States v. Sec. & Exch. Comm'n*, 115 F.4th 740 (6th Cir. 2024)
3. *Liu v. Noem*, No. 25-cv-133, Minute Entry (D.N.H. April 9, 2025); *id.* at ECF No. 13 (Order), attached hereto as Exhibit 1
4. *Motor Vehicle Mfrs. Ass'n of U.S., Inc., v. State Farm Mut. Auto Ins. Co.*, 463 U.S. 29 (1983)

## INTRODUCTION

Plaintiffs are noncitizen students at American universities. Since beginning their studies in the United States, they have been star students and engaged members of their academic communities. But recently, each Plaintiff learned—not through the federal government, but through their school—that Defendants had terminated their F-1 student status in the Student and Exchange Visitor Information System ("SEVIS"), suddenly leaving them without lawful status to remain in the United States. Neither they nor their school were given advance notice or a meaningful explanation for the termination. In the absence of any information pertaining to their status terminations, Plaintiffs' respective schools advised them to make arrangements to leave the country immediately.

Unwilling to fall victim to this blatantly arbitrary and unlawful termination of their F-1 student status, Plaintiffs filed the Verified Complaint, ECF No. 1, and this emergency motion. Pursuant to Counts 1 and 2 of the Verified Complaint, Plaintiffs hereby seek the emergency relief described in their motion restoring their student status and allowing them to resume their lives safe from unlawful government retaliation.

To be clear, Plaintiffs do not challenge the revocation of their F-1 *visa* in this case, assuming that their visas have even been revoked (no Plaintiff has been

informed of any visa cancellation).[1] Instead, Plaintiffs bring this lawsuit to challenge Defendants' unlawful and arbitrary termination of their F-1 student *status* in SEVIS without the procedural safeguards required by the U.S. Constitution.

## FACTUAL BACKGROUND

### I.    Background on F-1 Student Visa and Status

Under the Immigration and Nationality Act ("INA"), noncitizens can enroll in government-approved academic institutions as F-1 students. *See* 8 U.S.C. § 1101(a)(15)(F). Admitted students living abroad enter the United States on an F-1 visa issued by the U.S. Department of State, and once they enter, are granted F-1 student status and permitted to remain in the United States for the duration of their program as long as the student continues to meet the requirements established by the regulations governing the student's visa classification in 8 C.F.R. § 214.2(f), such as maintaining a full course of study and avoiding unauthorized employment. DHS's Student and Exchange Visitor Program ("SEVP") administers the F-1 student program and tracks information on students with F-1 student status.

An academic institution must obtain formal approval from DHS before it can sponsor a student's F-1 status. An institution must first file an application for School

---

[1] There is a difference between a F-1 student visa and F-1 student status. The F-1 student visa refers only to the document noncitizen students receive to enter the United States, whereas F-1 student status refers to students' formal immigration classification in the United States once they enter the country.

Certification through SEVIS system, a SEVP-managed internet-based system used to track and monitor schools and noncitizen students in the United States. *See* 8 C.F.R. § 214.3. The University of Michigan and Wayne State University have both been formally approved to sponsor F-1 students, and both have a Designated School Official ("DSO") who advises and oversees the students attending that school.

F-1 students are subject to an array of regulations, including maintaining a full course of study. 8 C.F.R. § 214.2(f)(6). *See generally* 8 C.F.R. § 214.2(f). F-1 students are also entitled to participate in two types of practical training programs: Curricular Practical Training ("CPT") and Optional Practical Training ("OPT"). *See* 8 C.F.R. § 214.2(f)(10). CPT is any "alternative work/study, internship, cooperative education or any other type of required internship or practicum that is offered by sponsoring employers through cooperative agreements with the school." 8 C.F.R. § 214.2(f)(10)(i). CPT usually occurs during a student's course of study (i.e., before graduation), and often encompasses paid teaching or assistantship positions for graduate students. OPT consists of temporary employment that is "directly related to the student's major area of study." 8 C.F.R. § 214.2 (f)(10)(ii). OPT usually occurs at the end of the student's course of study (i.e., after graduation).

Once a student has completed their course of study and any accompanying CPT or OPT, they generally have sixty days to either depart the United States or transfer to another accredited academic institution. 8 C.F.R. § 214.2 (f)(5)(iv). If a

student has been approved to transfer to another school (including to pursue a higher degree), they are authorized to remain in the United States for up to five months while awaiting matriculation at the transfer institution. 8 C.F.R § 214.2(f)(8)(i). If a student voluntarily withdraws from the F-1 program, "he or she has fifteen days to leave the United States." *Id*. Finally, a student who "who fails to maintain a full course of study without the approval of the DSO or otherwise fails to maintain status," *id.*, must leave the country immediately or seek reinstatement of their status.

## II.    Termination of F-1 Student Status

Termination of F-1 student status in SEVIS is governed by SEVP regulations. The regulations distinguish between two separate ways a student may fall out of status: (1) a student who "fails to maintain status"; and (2) an agency-initiated "termination of status." *See* 8 C.F.R. § 214.2(f). Students fail to maintain their F-1 student status when they do not comply with the regulatory requirements of F-1 status, such as failing to maintain a full course of study without prior approval, engaging in unauthorized employment, or other violations of the requirements under 8 C.F.R. § 214.2(f). In addition, 8 C.F.R. § 214.1(e)-(g) outlines specific circumstances where certain conduct by any nonimmigrant visa holder, such as engaging in unauthorized employment, providing false information to DHS, or being convicted of a crime of violence with a potential sentence of more than a year,

"constitute a failure to maintain status." DSOs at schools must report to SEVP, via SEVIS, when a student fails to maintain status. *See* 8 C.F.R. § 214.3(g)(2).

On the other hand, DHS's ability to initiate the termination of F-1 student status "is limited by [8 C.F.R.] § 214.1(d)." *Jie Fang v. Director U.S. Immigration & Customs Enforcement*, 935 F.3d 172, 185 n.100 (3d Cir. 2019). Under this regulation, DHS can terminate F-1 student status under the SEVIS system **only** when: (1) a previously granted waiver under 8 U.S.C. § 1182(d)(3) or (4) is revoked; (2) a private bill to confer lawful permanent residence is introduced in Congress; or (3) DHS publishes a notification in the Federal Register identifying national security, diplomatic, or public safety reasons for termination. *See* 8 C.F.R. § 214.1(d).

Accordingly, the revocation of an F-1 visa does **not** constitute a failure to maintain F-1 student status and otherwise cannot serve as a basis for agency-initiated termination of F-1 student status in SEVIS. In DHS's own words, "[v]isa revocation is not, in itself, a cause for termination of the student's SEVIS record." ICE Policy Guidance 1004-04 – Visa Revocations (June 7, 2010),[2] attached hereto as Exhibit 2.

Rather, if an F-1 visa is revoked after admission, the student is permitted to pursue their course of study uninterrupted. Once that student completes their study and departs from the United States, the SEVIS record would then be terminated, and the student would need to obtain a new visa from a consulate or embassy abroad

---

[2] *Available at* https://www.ice.gov/doclib/sevis/pdf/visa_revocations_1004_04.pdf.

before returning to the United States. *See* Guidance Directive 2016-03, 9 FAM

403.11-3 – VISA REVOCATION (Sept. 12, 2016),[3] attached hereto as Exhibit 3.

While a visa revocation can be charged as a ground of deportability in removal

proceedings, deportability (and the revocation of the visa) can expressly be contested

in such proceedings. *See* 8 U.S.C. § 1227(a)(1)(B); 8 U.S.C. § 1201(i). The

Immigration Judge may also dismiss removal proceedings where a visa is revoked,

so long as a student is able to remain in valid status or otherwise reinstates to F-1

student status. *See* 8 C.F.R. § 1003.18(d)(ii). Only when a final removal order is

entered would the status be lost. On the other hand, the Immigration Judge has no

ability to review the termination of F-1 student status in SEVIS because the process

is collateral to removal proceedings. *See Jie Fang*, 935 F.3d at 183.

## III.    Plaintiffs and the Termination of their F-1 Student Status

**Plaintiff Chinmay Deore** is a 21-year-old undergraduate student at Wayne

State University, where he has been studying computer science since August 2021.

Verified Compl., ECF No. 1, ¶19. He is a native and citizen of India. *Id.* He first

entered the United States with his family on an H-4 dependent visa in 2004. *Id.* He

and his family left the United States in 2008, and he later returned with his family

(again on an H-4 dependent visa) in 2014. *Id.* After completing high school in

---

[3] *Available at* https://www.aila.org/library/dos-guidance-directive-2016-03-on-visa-revocation.

Michigan, he enrolled at Wayne State University under his H-4 status. *Id.* In May 2022, he lawfully applied for, and was granted, permission to transition to F-1 student status when he was aging out of his H-4 status. *Id.* He anticipates completing his course of study and graduating in May 2025. *Id.* He currently resides with his immediate family in Canton. *Id.*

On April 4, 2025, Wayne State University informed Chinmay that his F-1 student status in SEVIS had been terminated. *Id.* ¶40. The email he received stated: "Our record shows that your SEVIS has been terminated this morning-TERMINATION REASON:  OTHERWISE FAILING TO MAINTAIN STATUS - Individual identified in criminal records check and/or has had their VISA revoked. SEVIS record has been terminated." Exhibit B to Verified Compl., ECF No. 1-2.

However, Chinmay has never been charged with or convicted of a crime in the United States. Verified Compl., ECF No. 1, ¶19. And other than a speeding ticket and a parking ticket (the fines for which he promptly paid), he has not been charged with any civil infraction, motor vehicle code violation, or immigration law violation. *Id.* He has not been active in on-campus protests regarding any political issue. *Id.*

Furthermore, he has not received any notice from the Department of State that any F-1 visa attributed to him has been revoked. *Id.* ¶42. Indeed, because he applied for F-1 student status while lawfully present in the United States as an H-4 visa recipient, he never even *received* an F-1 visa that could be canceled in the first place.

7

*Id.* He has complied with all rules and regulations as someone with F-1 student status. He does not know why his F-1 student status in SEVIS was terminated. *Id.*

**Plaintiff Yogesh Joshi** is a 32-year-old Ph.D. student at Wayne State University, where he has been studying anatomy and cell biology since August 2021. *Id.* ¶20. He is a native and citizen of Nepal. *Id.* He initially entered the United States on an F-1 visa in August 2021 and currently resides in Detroit with his wife and his eight-month-old U.S.-citizen child. *Id.* He anticipates completing his course of study and graduating in 2026. *Id.* He has never been charged with or convicted of a crime in the United States. *Id.* And other than a parking ticket (the fine for which he promptly paid), he has not been charged with any civil infraction, motor vehicle code violation, or immigration law violation. *Id.* He has not been active in on-campus protests regarding any political issue. *Id.*

On April 8, 2025, Wayne State University informed Yogesh that his F-1 student status in SEVIS had been terminated. *Id.* ¶44. Specifically, the email he received stated: "I must inform you that your SEVIS immigration record has been terminated today by the Department of Homeland Security. The reason cited on your SEVIS record for your immigration record termination is: TERMINATION REASON: TERMINATION REASON: OTHER - Individual identified in criminal records check and/or has had their VISA revoked. SEVIS record has been terminated. We do not have access to any information specific to why your SEVIS

termination, but your lawful status in the U.S. is terminated, and you are at risk of detention and deportation." Exhibit C to Verified Compl., ECF No. 1-3.

However, Yogesh has never been charged with, let alone convicted of, a crime. Verified Compl., ECF No. 1, ¶45. At most, he was arrested for a domestic dispute with his now-wife in 2022, but he was promptly released and no charges were filed. *Id.* And besides a parking ticket (the fine for which he promptly paid), he has no civil infractions on his record. Nor has he ever violated any immigration law. *Id.* He has not been active in on-campus protests on any political issue. *Id.* ¶20.

Furthermore, he has not received any notice from the Department of State that his F-1 visa has been revoked. *Id.* ¶46. He has complied with all rules and regulations as someone with F-1 student status. *Id.* He does not know why his F-1 student status in SEVIS was terminated. *Id.*

**Plaintiff Xiangyun Bu** is a 25-year-old master's student at the University of Michigan, where he has been studying mechanical engineering since August 2023. Verified Compl., ECF No. 1, ¶21. He is a native and citizen of China. *Id.* He entered the United States on an F-1 visa in August 2023 and currently resides in Ann Arbor. *Id.* He anticipates completing his course of study and graduating with a master's degree in May 2025, after which he plans to enroll in a Ph.D. program at Carnegie Mellon University (where he has already been admitted), and where he would have been entitled to enroll pursuant to his F-1 status without further DHS adjudication.

9

*Id.* He has also applied for lawful summer employment, as is his right under his F-1 status pursuant to the OPT program. *Id.* ¶47.

On April 7, 2025, the University of Michigan informed Xiangyun that his F-1 student status in SEVIS had been terminated. *Id.* ¶48. Specifically, the email he received stated: "I am writing to inform you that we unfortunately learned during our daily check of SEVIS records that your SEVIS record was 'terminated' by a Department of Homeland Security (DHS) official. The reason noted was 'OTHERWISE FAILING TO MAINTAIN STATUS - Individual identified in criminal records check and/or has had their VISA revoked. SEVIS record has been terminated.' We do not have any additional information about this termination, but this means you no longer hold valid F-1 status within the United States." Exhibit D to Verified Compl., ECF No. 1-4.

However, Xiangyun has never been charged with, let alone convicted of, a crime. Verified Compl., ECF No. 1, ¶49. He has no civil infractions on his record (not even a speeding or parking ticket), nor has he ever violated any immigration law. *Id.* In December of 2022, well before acquiring his F-1 status, he sought to enter the United States on a visitor's visa to visit his girlfriend at the time for a semester. *Id.* He lawfully and voluntarily withdrew his application for admission after being told by a border patrol officer that a stay of that length would not be permitted. *Id.* He has not been active in on-campus protests regarding any political issue. *Id.* ¶21.

Furthermore, he has not received any notice from the Department of State that his F-1 visa has been revoked. *Id.* ¶50. He has complied with all rules and regulations as someone with F-1 student status. *Id.* He does not know why his F-1 student status in SEVIS was terminated. *Id.*

**Plaintiff Qiuyi Yang** is a 26-year-old Ph.D. student at the University of Michigan, where she has been studying at the School for Environment and Sustainability since August 2023. *Id.* ¶22. Before that, she attended Cornell University from August 2021 until she earned a master's degree in urban planning in May 2023. *Id.* She then lawfully transferred her F-1 student status to the University of Michigan. *Id.* She is a native and citizen of China. *Id.* She initially entered the United States on an F-1 visa in August 2021 (to attend Cornell) and currently resides in Ann Arbor. *Id.* She anticipates completing her course of study and graduating in 2028. *Id.*

On April 4, 2025, the University of Michigan informed Qiuyi that her F-1 student status in SEVIS had been terminated. *Id.* ¶52. Specifically, the email she received stated: "I am reaching out regarding your immigration record. In our daily review of SEVIS, we learned that your SEVIS record was 'terminated' by a Department of Homeland Security (DHS) official. The reason noted was 'OTHERWISE FAILING TO MAINTAIN STATUS – Individual identified in criminal records check and/or has had their VISA revoked. SEVIS record has been

terminated.' We do not have any additional information, but this termination means you no longer hold valid F-1 status within the United States." Exhibit E to Verified Compl., ECF No. 1-5.

On April 8, 2025, the University of Michigan followed up with Qiuyi via email to inform her that SEVIS now reflected a slightly different termination reason: "A check of your current SEVIS record shows: 'TERMINATION REASON: OTHER - Individual identified in criminal records check and/or has had their VISA revoked. SEVIS record has been terminated.' A point of clarification: if the government terminates the SEVIS record (rather than our office), as is the case in your circumstance, then the university international office cannot change the termination reason." Exhibit F to Verified Compl., ECF No. 1-6.

However, Qiuyi has never been charged with, let alone convicted of, a crime. Verified Compl., ECF No. 1, ¶54. At most, she was arrested for a domestic dispute with her current partner in 2024, but she was promptly released and no charges were filed. *Id.* And besides a few parking tickets (the fines for which she promptly paid), she has no civil infractions on her record. *Id.* Nor has she ever violated any immigration law. *Id.* She has not been active in on-campus protests regarding any political issue. *Id.* ¶22.

Furthermore, she has not received any notice from the Department of State that her F-1 visa has been revoked. *Id.* ¶55. She has complied with all rules and

regulations as someone with F-1 student status. *Id.* She does not know why her F-1 student status in SEVIS was terminated. *Id.*

## IV.   Nationwide Pattern of Arbitrary Status Terminations.

Defendants have embarked upon a clear policy and pattern/practice to cancel the status of hundreds, if not thousands, of immigrant students nationwide. *Id.* ¶58. According to *Inside Higer Ed*, an industry publication, as of April 9, 2025, almost 450 cancellations at nearly 100 colleges and universities had been documented— including six universities in Michigan. *Id.* (citing article). This was "almost certainly a fraction of the total" because "[m]any . . . colleges are reluctant to publicly confirm any student visa revocations [because they are] anxious to avoid attracting federal scrutiny and uncertain how to navigate an increasingly fraught gray zone." *Id.* Mass cancellations have also been documented this week in numerous news sources. *See* Verified Compl., ECF No. 1, n.10 (collecting sources).

The timing and uniformity of these terminations leave little question that DHS has adopted a nationwide policy of mass termination of student status in SEVIS. *Id.* ¶59. While the exact details of the policy are not currently known, the experience of Plaintiffs and of other publicly reported cases strongly suggests that the terminations are being indiscriminately made based upon *any* information that a given student has had some kind of encounter with a law enforcement official, no matter how

innocuous, or a prior encounter with immigration agents even if that encounter did not involve unlawful conduct. *Id.*

These terminations have also been the subject of lawsuits throughout the nation. *Id.* ¶60 n. 11 (collecting cases). The federal district court in New Hampshire issued a temporary restraining order similar to the one sought here, and on a similar legal theory, on April 9, 2025. See *Liu v. Noem*, No. 25-cv-133, Minute Entry (D.N.H. April 9, 2025); *id.* at ECF No. 13 (D.N.H. April 10, 2025) (Order), attached hereto as Exhibit 1.

## LEGAL STANDARD

Emergency injunctive relief, whether it is a temporary restraining order or a preliminary injunction, is warranted when a plaintiff demonstrates: (1) a likelihood of success on the merits; (2) a likelihood of irreparable harm in the absence of preliminary relief; (3) that the equities balance in the plaintiff's favor; and (4) that preliminary injunctive relief would serve the public interest. *See Winter v. NRDC*, 555 U.S. 7, 20 (2008); *Obama for Am. v. Husted*, 697 F.3d 423, 428 (6th Cir. 2012); Fed. R. Civ. P. 65(b). To obtain preliminary injunctive relief, a complainant need show only a likelihood of success on the merits; they need not demonstrate actual success. *See Winter*, 555 U.S. at 32. As explained below, Plaintiffs are likely to succeed on the merits of their claims, they face irreparable harm absent injunctive relief, the equities balance in their favor, and injunctive relief is in the public interest.

Indeed, another federal court issued a temporary restraining order in a similar case yesterday involving another student subjected to a similarly arbitrary F-1 status termination. *See Liu v. Noem*, Exhibit 1.

## ARGUMENT

### I.     Plaintiffs Are Likely to Prevail on Their Claims That the Termination of Their F-1 Student Status Was Unlawful.

Defendants' termination of each Plaintiff's F-1 student status in SEVIS was unlawful for two independent reasons: First, it violates the Due Process Clause of the Fifth Amendment, U.S. Const. amend. V (Count 1); and second, it violates the Administrative Procedure Act (APA), 5 U.S.C. § 706(2)(A) as arbitrary, capricious, an abuse of discretion, and otherwise not in accordance with the law, including the regulatory regime at 8 C.F.R. § 214.1(d). Relatedly, final agency action contrary to a constitutional right—in this case due process—also violates the APA. 5 U.S.C. § 706(2)(B).

### A.     The status terminations violate the Fifth Amendment's Due Process Clause (Count 1).

Defendants' termination of each Plaintiff's F-1 student status straightforwardly violates the Fifth Amendment's Due Process Clause. As admitted noncitizen students already in the United States, Plaintiffs clearly have due process rights. *See Rosales-Garcia v. Holland*, 322 F.3d 386, 405 (6th Cir. 2003) ("'[T]he Due Process Clause applies to all 'persons' within the United States, including aliens,

whether their presence here is lawful, unlawful, temporary, or permanent.'" (quoting *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001))). The core of a noncitizen's due process rights is "notice that is reasonably calculated, under the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Scorteanu v. I.N.S.*, 339 F.3d 407, 413 (6th Cir. 2003). *See also Matthews v. Eldridge*, 424 U.S. 319, 322 (1976).

In this case, Defendants failed to satisfy even these basic principles of due process. Defendants did not provide *any* notice to any Plaintiff or their schools about the decision to terminate Plaintiffs' F-1 student status. Instead, Plaintiff learned about their status termination only because their schools discovered it during the school's periodic inspection of SEVIS records—a discovery that came days after the status had actually been terminated for most Plaintiffs. *See, e.g.,* Verified Compl., ECF No. 1, ¶44 (four-day delay between status termination and Plaintiff's discovery of the termination).

Nor did Defendants comply with the due process requirement to provide adequate explanation and a meaningful opportunity to respond. Defendants recorded a vague boilerplate reason for each Plaintiff's F-1 student status in SEVIS: "Individual identified in criminal record check and/or had had their VISA revoked. SEVIS record has been terminated" *See* Exs. B-F to Verified Compl., ECF Nos. 1-2, 1-3, 1-4, 1-5, and 1-6. For most Plaintiffs this boilerplate language was prefaced

with "OTHERWISE FAILING TO MAINTAIN STATUS." ECF Nos. 1-2, 1-4, 1-5. Yogesh's terminated SEVIS record used slightly different prefatory language: "OTHER: Individual identified in criminal records check and/or has had their VISA revoked. SEVIS record has been terminated." ECF No. 1-3. Qiuyi's terminated SEVIS record was also amended to the same language as Yogesh's. ECF No. 1-6.

This brief boilerplate language cannot satisfy the requirements of the Due Process Clause for the simple reason that none of its (disjointed) phrases describe Plaintiffs' circumstances. All the plaintiffs have closely followed all applicable rules and regulations to maintain their F-1 student status. *See* Verified Compl., ECF No. 1, ¶8; ¶32 (explaining the regulatory requirements for maintaining F-1 status). Thus, the "failure to maintain status" charge cannot apply to any Plaintiff whose SEVIS record reflected that language. None of the plaintiffs have ever been charged with, let alone committed, any crime. Verified Compl., ECF No. 1, ¶¶19-22. Thus, the criminal record check or failure to maintain student status could not serve as the basis for terminating F-1 student status. Finally, none of the plaintiffs have been notified by the State Department that their F-1 visas have been revoked (presumably meaning that they could all still be active). *Id.* at ¶¶42, 46, 50, 55. In fact, at least one of the Plaintiffs, Chinmay Deore, never had an F-1 visa in the first place, because he adjusted to F-1 status while already in the United States. *Id.* at ¶19. As a result, Plaintiffs are left to wonder what the basis or explanation for their status termination

17

is. They have no meaningful opportunity to defend themselves against hollow and inapplicable boilerplate charges.

Accordingly, Defendants' failure to provide notice, adequate explanations, and meaningful opportunity to contest the termination of each Plaintiff's F-1 student status is in violation of the Due Process Clause.

### B.    The status terminations violate the Administrative Procedure Act (Count 2).

Defendants' termination of each Plaintiff's F-1 student status under the SEVIS system also violates the Administrative Procedure Act (APA) in multiple ways. As a preliminary matter, Defendants' termination of each Plaintiff's F-1 student status is a final agency action which this Court has jurisdiction to review under the APA. *See Jie Fang v. Director U.S. Immigration & Customs Enforcement*, 935 F.3d 172, 182 (3d Cir. 2019) ("[t]he order terminating these students' F-1 visas marked the consummation of the agency's decisionmaking process, and is therefore a final order"). There is no opportunity for Plaintiffs to seek administrative review of DHS's unilateral termination.

As to the substantive APA violations, the termination of each Plaintiff's F-1 student status based solely on the potential revocation of a visa was (1) not in accordance with law (including regulation), (2) arbitrary and capricious, and (3) contrary to a constitutional right. *See* 5 U.S.C. § 706(2).

18

***Not in accordance with law.*** Defendants' termination of each Plaintiff's F-1 student status was "not in accordance with law." 5 U.S.C. § 706(2)(A). Namely, DHS's ability "to terminate an F-1 [student status] is limited by [8 C.F.R.] § 214.1(d)." *Jie Fang*, 935 F.3d at 185 n.100. Under this regulation, DHS can terminate student status ***only*** when: (1) a previously granted waiver under 8 U.S.C. § 1182(d)(3) or (4) is revoked; (2) a private bill to confer lawful permanent residence is introduced in Congress; or (3) DHS publishes a notification in the Federal Register identifying national security, diplomatic, or public safety reasons for termination.[4] 8 C.F.R. § 214.1(d). Noticeably, the revocation of a visa is not a regulatory ground for termination of F-1 student status. DHS and the State Department—the two federal agencies most involved in F-1 visa and status determinations—have both confirmed this point: DHS's own policy guidance confirms that "[v]isa revocation is not, in itself, a cause for termination of the student's SEVIS record." Exhibit 2. The State Department's Foreign Affairs Manual clarifies that, if an F-1 visa is revoked, the student is permitted to pursue his course of study uninterrupted, and only upon the student's ultimate post-graduation departure from the United States does their F-1 student status in SEVIS terminate. *See* Exhibit 3.

---

[4] A search of the Federal Register at www.federalregister.gov indicates that no notices have been filed in the Federal Register regarding any plaintiff.

The regulatory framework governing F-1 status terminations reflects common sense: visas grant individuals permission to *enter* the United States, but once admitted to the United States, that individual's permission to *remain* is governed not by the visa, but by the relevant requirements set out in federal regulations. In the case of F-1 students, those requirements are set out in 8 C.F.R. § 214.2(f) and 8 C.F.R. § 214.1(e)-(g). Plaintiffs have complied with all requirements listed in these regulatory provisions. Verified Compl., ECF No. 1, ¶8. For example, they all have maintained a satisfactory course of study, 8 C.F.R. § 214.2(f)(6) and § 214.2(f)(16)(i)(C); none of them have engaged in unauthorized employment, 8 C.F.R. § 214.1(e) and § 214.2(f)(16)(i)(C); all of them have provided "full and truthful information" to DHS, 8 C.F.R. § 214.1(f); and none of them have committed "a crime of violence for which a sentence of more than one year imprisonment may be imposed," 8 C.F.R. § 214.1(g). In fact, none have committed or even been charged with ***any crimes at all***. Verified Compl., ECF No. 1, ¶¶19-22.

Because Defendants terminated Plaintiffs' F-1 student status without a reason authorized by statute or regulation, Defendants' terminations violate 5 U.S.C. § 706(2)(A) as not in accordance with the law, including 8 C.F.R. § 214.1(d).

***Arbitrary and capricious.*** Defendants' termination of each Plaintiff's F-1 student status was "arbitrary [and] capricious." 5 U.S.C. § 706(2)(A). Agency action is arbitrary and capricious if the agency cannot "'articulate a satisfactory explanation

for its action including a rational connection between the facts found and the choice made.'" *Chamber of Com. of United States v. Sec. & Exch. Comm'n*, 115 F.4th 740, 750 (6th Cir. 2024) (quoting *Motor Vehicle Mfrs. Ass'n of U.S., Inc., v. State Farm Mut. Auto Ins. Co.*, 463 U.S. 29, 43 (1983)). *See also Apogee Coal Co., LLC v. Dir., Off. of Workers' Comp. Programs*, 112 F.4th 343, 353 (6th Cir. 2024) (applying the *State Farm* standard to individualized agency decisions).

Here, there is no rational connection between the facts and the Government's choices. In fact, there is no connection at all: Defendants appear to have reflexively initiated a wave of F-1 student status terminations without even considering any Plaintiff's individual circumstances. Instead, regardless of their circumstances, each Plaintiff received the same decision with the same paper-thin boilerplate explanation *that does not even accurately explain Plaintiff's criminal history (they have none) or immigration status (none has been notified of a visa revocation).* Such a confounding decision is precisely the type of arbitrary and capricious agency action that the APA exists to prohibit.

**Contrary to constitutional right.** As explained above, Defendants failed to provide Plaintiffs with adequate notice and a meaningful opportunity to be heard in violation of the Due Process Clause *See supra* Section I.A. The APA prohibits agency actions that are "contrary to constitutional right." 5 U.S.C. § 706(2)(B). *See Citizens to Pres. Overton Park, Inc. v. Volpe*, 401 U.S. 402, 414 (1971), *abrogated*

21

*on other grounds by Califano v. Sanders*, 430 U.S. 99 (1977) (§ 706(2)(B) is violated "if the [agency] action failed to meet . . . constitutional requirements."); *Dep't of Com. v. New York*, 588 U.S. 752, 792 n. 5 (2019) (describing § 706(2)(B) as "addressing agency actions that violate 'constitutional' . . . requirements"). Because Defendants violated Plaintiffs' constitutional right to due process of law, their termination of each Plaintiffs' F-1 student status also necessarily violated the APA for this separate reason.

\*\*\*

At bottom, Defendants' termination of each Plaintiff's F-1 student status violates the U.S. Constitution and the APA. Defendants provided no notice, adequate explanation, or meaningful opportunity for Plaintiff to respond. Regardless, either with or without notice, Defendants have no statutory or regulatory authority to terminate Plaintiff's F-1 student status, including under 8 C.F.R. § 214.1(d). Accordingly, Defendants acted arbitrarily, capriciously, and contrary to constitutional right—all in violation of the APA. Plaintiffs are therefore likely to prevail on their claims that the termination of their F-1 student status must be set aside and enjoined.

## II.   Plaintiffs Are Facing Irreparable Harm and Will Continue to Do So Absent Emergency Injunctive Relief.

Plaintiffs will suffer irreparable harm if Defendants' termination of their F-1 student status is not set aside and enjoined. At the outset, when "a constitutional right

is being threatened or impaired, a finding of irreparable injury is mandated." *ACLU of Ky. v. McCreary Cnty., Ky.*, 354 F.3d 438, 445 (6th Cir. 2003), *aff'd*, 545 U.S. 844 (2005). Plaintiffs' due process rights are being impaired. *See supra* Section I.A.

Plaintiffs also currently face the serious risk of immediate arrest and detention for deportation because they no longer have lawful status to remain in the United States. *See* Verified Compl., ECF No. 1, ¶57. "[D]eportation is a drastic measure and at times the equivalent of banishment of exile." *Fong Haw Tan v. Phelan*, 333 U.S. 6, 10 (1948).

In addition, this termination will result "in the loss 'of all that makes life worth living'" for Plaintiffs' academic studies and career trajectory. *Bridges v. Wixon*, 326 U.S. 135, 147 (1945). *See* Verified Compl., ECF. No. 1, ¶56. Xiangyun Bu's will not be able to enroll in the Ph.D. program he has been admitted to at Carnegie Mellon University this upcoming fall, and Chinmay Deore's ability to pursue master's programs in the near future and OPT employment has been eliminated. *Id*. Qiuyi Yang's and Yogesh Joshi's ability to safely and reliably complete their degrees— Qiuyi has at least two years remaining in her program, and Yogesh has at least one year remaining—is severely undermined. *Id.* ¶¶20, 22, 56. Qiuyi and Yogesh have already lost authorized university employment, plunging them and their families (for example, Yogesh Joshi supports his wife and U.S.-citizen infant) into extreme financial hardship. *Id.* ¶56.

Finally, these status terminations may ultimately result in the daily accrual of out-of-status presence, which can play a critical role in the potential administrative reinstatement of Plaintiffs' F-1 student status. *See Jie Fang*, 935 F.3d at 176 (noting that a student cannot have been out of valid F-1 student status for more than 5 months in order to pursue a reinstatement application).

## III.    The Balance of Equities and Public Interest Strongly Favor Plaintiffs.

The requested emergency relief would restore Plaintiffs' ability to safely remain in the United States so that they can complete their degrees—something they have spent years working towards—and any associated employment and training programs—something that supports their livelihoods.

By contrast, Defendants have advanced no substantial interest in terminating Plaintiffs' F-1 student status. Indeed, granting emergency relief would merely maintain the status quo that has been in place for the many years that each Plaintiff has been in the United States as a rules-following F-1 student. Defendants also cannot have a legitimate interest in enforcing an unconstitutional and unlawful action. "When a constitutional violation is likely, . . . the public interest militates in favor of injunctive relief because it is always in the public interest to prevent violation of a party's constitutional rights." *Miller v. City of Cincinnati*, 622 F.3d 524, 540 (6th Cir. 2010).

Thus, the balance of equities and the public interest strongly favor a temporary restraining order and preliminary injunction.[5]

## CONCLUSION AND RELIEF REQUESTED

For the reasons stated above, this Court should issue a temporary restraining order, followed by a preliminary injunction, as requested in Plaintiffs' motion in order to protect the status quo and ensure that Plaintiffs are able to continue attending classes and supporting their families free from the government's arbitrary and unconstitutional actions that have so abruptly upended Plaintiffs' law-abiding lives and studies.

Respectfully submitted,

By:  /s/ Ramis J. Wadood

Kevin M. Carlson (P67704)
Michael L. Pitt (P24429)
Cooperating Attorneys, American Civil
  Liberties Union Fund of Michigan
Pitt McGehee Palmer Bonanni
  & Rivers
117 W. 4th St. Ste. 200
Royal Oak, MI 48067
(248) 398-9800
kcarlson@pittlawpc.com
mpitt@pittlawpc.com

Russell Abrutyn (P63968)

Ramis J. Wadood (P85791)
Philip E. Mayor (P81691)
Bonsitu Kitaba-Gaviglio (P78822)
Syeda F. Davidson (P72801)
Daniel S. Korobkin (P72842)
American Civil Liberties Union
  Fund of Michigan
2966 Woodward Avenue
Detroit, MI  48201
(313) 578-6800
rwadood@aclumich.org
pmayor@aclumich.org
bkitaba@aclumich.org

---

[5] Based on the equities and the public interest, the Court should also exercise its discretion not to require Plaintiffs to post a security bond under Fed. R. Civ. P. 65(c) in connection with the injunctive relief sought. *See Concerned Pastors for Social Action v. Khouri*, 220 F. Supp. 3d 823, 829 (E.D. Mich. 2016).

Cooperating Attorney, American Civil      sdavidson@aclumich.org
  Liberties Union Fund of Michigan        dkorobkin@aclumich.org
Abrutyn Law PLLC
15944 W 12 Mile Rd
Southfield, MI 48076
(248) 965-9440
russell@abrutyn.com

Attorneys for Plaintiffs

Dated: April 10, 2025