United States District Court
Eastern District of Michigan

Chinmay Deore, Yogesh Joshi,
Xiangyun Bu, and Qiuyi Yang,

     Plaintiffs,                     Civil No. 25-11038

v.                               Honorable Stephen J. Murphy, III
                                    Magistrate Judge David R. Grand

Kristi Noem, in her official capacity as
Secretary of the U.S. Department of
Homeland Security; Todd Lyons, in his
official capacity as Acting Director of
U.S. Customs and Immigration
Enforcement; and Robert Lynch, in his
official capacity as Field Office
Director of Detroit, U.S. Immigration
and Customs Enforcement,

     Defendants.

---

## Defendants' Response to Plaintiff's Request for an Emergency Temporary Restraining Order

---

On April 11, 2025, plaintiffs filed an emergency motion for a temporary restraining order and a preliminary injunction. (Mot., ECF No. 2). On the same day, the Court issued an order requiring defendants to respond to the portion of plaintiffs' motion seeking a temporary restraining order by 5pm on April 14, 2025. (Order, ECF No. 7, PageID.109). Defendants submit the attached brief in response to the

Court's order and respectfully request that the Court deny plaintiffs' request for a temporary restraining order.

Respectfully submitted,

Julie A. Beck
United States Attorney

/s/ Zak Toomey
Zak Toomey (MO61618)
Assistant U.S. Attorney
211 W. Fort Street, Suite 2001
Detroit, Michigan 48226
(313) 226-9617
Dated: April 14, 2025               zak.toomey@usdoj.gov

United States District Court
Eastern District of Michigan

Chinmay Deore, et al.,

      Plaintiffs,                        Civil No. 25-11038

v.                                  Honorable Stephen J. Murphy, III
                                  Magistrate Judge David R. Grand

Kristi Noem, in her official capacity as
Secretary of the U.S. Department of
Homeland Security; *et al*.,

      Defendants.

---

# Defendants' Brief in Response to Plaintiffs' Motion for an Emergency Temporary Restraining Order

---

## Issues Presented

I.    Should the Court deny some of the relief requested in plaintiffs' motion for a temporary restraining order because it does not maintain the status quo and would grant plaintiffs the ultimate relief they seek in this case?

II.    Should the Court deny plaintiffs motion when they are unlikely to succeed on the merits, they have not demonstrated they are likely to suffer an irreparable harm, and the proposed injunction is not in the public interest?

III.    If the Court issues a temporary restraining order, should the Court require plaintiffs to provide adequate security?

# Table of Contents

Introduction ..................................................................................................1

Background ..................................................................................................1

Standard of Review ......................................................................................7

Argument......................................................................................................7

   I.    Plaintiffs' Requested Relief is Improper....................................8

   II.   Plaintiffs Are Not Entitled to a TRO .......................................9

     A.   Likelihood of Success on the Merits ....................................10

        1.   Due Process .................................................................10

        2.   APA Claim ..................................................................12

     B.   Irreparable Injury ...............................................................17

     C.   Balance of Equities and Public Interest...............................19

   III.   If the Court Enters a TRO the Court Should Require that Plaintiffs Give Appropriate Security .......................................................................20

Conclusion .................................................................................................21

Certificate of Service .................................................................................22

# Introduction

In this case plaintiffs, four international students enrolled at Michigan universities, seek emergency injunctive relief requiring the Department of Homeland Security to change a database known as SEVIS to reflect that plaintiffs have lawful F-1 nonimmigrant status. On this motion, plaintiffs seek a temporary restraining order compelling DHS to alter their SEVIS records. The Court should deny this request because it is procedurally and substantively improper. An emergency motion for a temporary restraining order may only be used to maintain the status quo; it cannot be used to obtain the ultimate relief plaintiffs seek in this case, which is the alteration of their SEVIS record. In addition, the premise of plaintiffs' claim is incorrect—SEVIS does not control or even necessarily reflect whether a student has lawful nonimmigrant status, therefore, plaintiffs are unlikely to succeed on the merits of their claim. Similarly, plaintiffs have not met their burden of demonstrating a likelihood of irreparable harm or that a restraining order would serve the public interest. Finally, if the Court enters preliminary injunctive relief, defendants respectfully request that the Court require plaintiffs to provide adequate security.

# Background

International students may temporarily enter the United States to complete a course of study at approved universities. *See* 8 U.S.C. § 1101(a)(15)(F)(i); 8 C.F.R § 214.2(f)(5). To apply for a student visa to the United States, approved international

students must obtain an I-20 form from their university and present the I-20 to a U.S. embassy in their home country and meet certain other criteria. 22 C.F.R. § 41.61(b)(1). If the international student qualifies, the U.S. Department of State will issue the international student a nonimmigrant visa, which will grant the student entry into the United States under the conditions described in federal regulations governing the admissibility of nonimmigrant students. *See id.*; 8 C.F.R. § 214.2(f)(1). If an individual is admitted to the United States as a nonimmigrant student under § 1101(a)(15)(F)(i), DHS may administratively designate them with F-1 nonimmigrant classification. 8 C.F.R. § 214.1(a)(2).

**Loss of Nonimmigrant Status**

An international student may violate the terms of their F-1 nonimmigrant status and become removable in several ways. First, if the international student violates any of the terms in the regulations governing nonimmigrant students, they may lose their F-1 status. *See* 8 C.F.R. § 214.2(f) (describing the requirements of maintaining nonimmigrant student status); 8 U.S.C. § 1184(a)(1). For instance, if an "F–1 student [] is unable to complete the educational program within the time listed on Form I–20" they are "considered out of status." 8 C.F.R. § 214.2(f)(7). And, if a nonimmigrant student fails to comply with the other regulations at 8 C.F.R. § 214.2(f), he or she may become inadmissible and "will depart from the United States." 8 U.S.C. § 1184(a)(1).

2

Second, the Department of State may revoke an F-1 visa "at any time, in [the Secretary of State's] discretion." 8 U.S.C. § 1201(i); 22 C.F.R. § 41.122(a). A revocation may be immediate, prudential, or provisional. *See* 22 C.F.R. §§ 41.122(b), 42.82; (*see also* Dep't of State Guidance Directive, ECF No. 2-4, PageID.96 (describing a prudential revocation). If the Department of State immediately revokes a visa, the individual is removable under 8 U.S.C. § 1227(a)(1)(B). In contrast, a prudential revocation, or revocation upon departure, does not have a corresponding ground of removability. (*See* Dep't of State Guidance Directive, ECF No. 2-4, PageID.96–97; *see also* SEVP Policy Guidance, ECF No. 2-3, PageID.94). Meanwhile, a "provisional revocation is subject to reversal through internal procedures established by the Department of State." 22 C.F.R. § 41.122(b).

If a student loses nonimmigrant student status, the student or the school may seek reinstatement. *See* 8 C.F.R. § 214.2(f)(16). To do so, the student must submit a form I-539 to U.S. Citizenship and Immigration Services (USCIS). *Id.*

**SEVIS Records**

Congress required that DHS "develop and conduct a program to collect [certain information] from approved institutions of higher education . . . in the United States [certain information] with respect to aliens who have the status, or are applying for the status, of [F-1] nonimmigrants . . . ." 8 U.S.C. § 1372(a)(1). As a result, the Department of Homeland Security's Student and Exchange Visitor

Program created and manages international students at approved schools using an online database known as SEVIS. *See* 8 C.F.R. 214.2(f); (*see also* Exhibit 1 – About SEVIS at 1–3; Exhibit 2 – Watson Decl. ¶¶ 3–4). "SEVIS is the Student and Exchange Visitor Information System, a web-based system for maintaining information on international nonimmigrant students and exchange visitors in the United States that is administered by the Department of Homeland Security." *Yunsong Zhao v. Virginia Polytechnic Inst. & State Univ.*, 770 F. App'x 136, 136 (4th Cir. 2019); *see also Doe v. Dordoni*, 806 F. App'x 417, 419 (6th Cir. 2020).

DHS updates SEVIS to reflect the status of international students within the Student and Visitor Exchange Program. 8 U.S.C. § 1372; (Exhibit 2 – Watson Decl. ¶¶ 3–4). In addition, school officials are required to update SEVIS with information about students in the program. *See* 8 C.F.R. § 214.3(g)(1).

SEVIS does not control or necessarily reflect a nonimmigrant student's immigration status. (Exhibit 2 – Watson Decl. ¶¶ 3–4, 21–22).

**Plaintiffs' Background**

Plaintiffs in this case are students who were studying at Michigan universities until a few days ago. (Compl., ECF No. 1, PageID.7–10). They are citizens of India, Nepal, and China, respectively. (*Id.*). All but one entered the United States under an F-1 visa issued by the U.S. Department of State and the remaining plaintiff converted to F-1 status after he was already in the United States. (*Id.*). Each alleges that they

have been studying at their respective institutions under F-1 student status for 2 to 4 years and that they have never been convicted of any crimes, other than traffic or parking violations. (*Id.*).

DHS searched criminal records for each of the plaintiffs and criminal history matches were returned for each of the plaintiffs. (Exhibit 2 – Watson Decl. ¶¶ 7–22). In addition, on April 3, 2025, and April 5, 2025, respectively, the Department of State prudentially revoked plaintiff Yang and plaintiff Joshi's visas. (*Id.*). DHS does not possess information indicating that plaintiff Deore or plaintiff Bu's visas were revoked. (*See id.*). Based on this information, and at the request of the Department of State, DHS terminated the SEVIS record for each of the plaintiffs between April 4 and April 8, 2025. (*Id.*).

Between April 4 and April 8, 2025, the plaintiffs were contacted by their schools and informed that their "SEVIS immigration record ha[d] been terminated . . . by the Department of Homeland Security." (*See, e.g.*, WSU Email, ECF No. 1-4, PageID.41). The termination reason was: "Individual identified in criminal records check and/or has had their VISA revoked." (*See id.*; WSU Email, ECF No. 1-3, PageID.39; UM Email, ECF No. 1-5, PageID.42; UM Email, ECF No. 1-6, PageID.46; UM Email, ECF No. 1-7, PageID.48).

The Department of State contacted plaintiff Yang to notify her that it had revoked her nonimmigrant visa on April 10, 2025, before plaintiffs filed this lawsuit.

(*See* Yang Email, ECF No. 12-2, PageID.125; Pl. Supp. Sttmt., ECF No. 12, PageID.120 n.2). The Department of State's email does not indicate that Yang's visa was revoked immediately, therefore, it was revoked only prudentially. (*See id.*).

The Department of State notified plaintiff Joshi on April 11, 2025, several hours before the defendants became aware of this lawsuit. (*See* Joshi Email, ECF No. 12-3, PageID.128). The Department of State's email does not indicate that Joshi's visa was revoked immediately, therefore, it was revoked only prudentially. (*See id.*).

DHS has not initiated removal proceedings against any of the plaintiffs and, based on the information currently available to the agency, it cannot determine whether any of the plaintiffs are eligible for immigration proceedings. (Exhibit 2 – Watson Decl. ¶¶ 7–22). To initiate the removal process, DHS would first issue plaintiffs a notice to appear at an immigration hearing. *See* 8 U.S.C. § 1229(a). Once removal proceedings are initiated, a noncitizen is entitled to counsel and to have his or her case heard by an immigration judge. *See* 8 U.S.C. § 1229a. If an immigration judge orders a noncitizen removed, he or she can move for reconsideration and appeal to the Board of Immigration Appeals, then the Sixth Circuit. *See* 8 U.S.C. § 1252.

**Procedural Background**

Plaintiffs filed this suit on April 10, 2025, and filed an emergency motion for temporary restraining order and preliminary injunction on the same day. (Compl., ECF Nos. 1–2). In their complaint, the ultimate relief requested by plaintiffs is an order compelling DHS to restore their SEVIS record. (Compl., ECF No. 1, PageID.28–31). In their emergency motion, plaintiffs seek the same relief, as well as an order prohibiting DHS from "arresting, detaining, or transferring Plaintiffs out of this Court's jurisdiction" or "initiating removal proceedings against or deporting any Plaintiff on the basis of the termination of their F-1 status." (*Id.* at PageID.30; Emergency Mot., ECF No. 2, PageID.50).

## Standard of Review

Under Rule 65, a district court may issue a temporary restraining order or preliminary injunction. Fed. R. Civ. P. 65. However, an "injunction is an extraordinary remedy which should be granted only if the movant carries his or her burden of proving that the circumstances clearly demand it." *Overstreet v. Lexington–Fayette Urban County Gov't,* 305 F.3d 566, 573 (6th Cir. 2002).

## Argument

The Court should deny plaintiffs' emergency motion because it seeks inappropriate relief at this stage of the proceeding and because plaintiffs cannot demonstrate their entitlement to the extraordinary remedy of a temporary restraining

order or preliminary injunction. Further, if the Court grants preliminary injunctive relief, the Court should require that plaintiffs provide appropriate security.

## I.     Plaintiffs' Requested Relief is Improper

"[T]he purpose of a TRO under Rule 65 is to preserve the status quo so that a reasoned resolution of a dispute may be had." *Procter & Gamble Co. v. Bankers Tr. Co.*, 78 F.3d 219, 226 (6th Cir. 1996); *see also Lackey v. Stinnie*, 145 S. Ct. 659, 667 (2025) ("The purpose of a preliminary injunction is merely to preserve the relative positions of the parties until a trial on the merits can be held and to balance the equities as the litigation moves forward.") (quotation and citation omitted).

Here, plaintiffs seek relief that is inappropriate on a motion for temporary restraining order. With respect to plaintiffs' request that the Court order DHS to reinstate their SEVIS record, plaintiffs do not seek to maintain the status quo, they seek to alter it. Before plaintiff filed this suit, DHS had updated the SEVIS system to terminate their status. (Exhibit 2 – Watson Decl. ¶¶ 7–22). And, in this suit, the ultimate relief plaintiffs seek is the reinstatement of their SEVIS record. (*See* Compl., ECF No. 1, PageID.28–31). Accordingly, the status quo is that plaintiffs' SEVIS record has been terminated and plaintiffs' request for an emergency order changing that status is inappropriate. *See Procter & Gamble Co.*, 78 F.3d at 226.

To the extent plaintiffs argue that their SEVIS record controls or reflects their lawful nonimmigrant status, the agency does not take the position that plaintiffs'

lack lawful nonimmigrant status at this time or that SEVIS controls or reflects their nonimmigrant status. (*See* Exhibit 2 – Watson Decl. ¶ 21–22). Therefore, that argument does not present a valid case or controversy. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 568 (1992).

## II.     Plaintiffs Are Not Entitled to a TRO

Under Rule 65, if notice is provided to the adverse party, the standard for issuing a preliminary injunction and a temporary restraining order are the same. *See Overstreet v. Lexington-Fayette Urb. Cnty. Gov't*, 305 F.3d 566, 572 (6th Cir. 2002); *News Herald, a Div. of Gannett Satellite Info. Network, Inc. v. Ruyle*, 949 F. Supp. 519, 521 (N.D. Ohio 1996) ("If there is notice to the other side and a hearing, the Court applies the same standards governing issuance of a preliminary injunction in determining whether to issue a temporary restraining order.")

"A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008); *McPherson v. Michigan High Sch. Athletic Ass'n, Inc.*, 119 F.3d 453, 459 (6th Cir. 1997). "These factors are to be balanced against one another and should not be considered prerequisites to the grant of a preliminary injunction." *Leary v.*

*Daeschner*, 228 F.3d 729, 736 (6th Cir. 2000). Plaintiffs have not met the high burden of demonstrating they are entitled to preliminary injunctive relief.

A.    *Likelihood of Success on the Merits*

Plaintiffs seek relief under the due process clause and the Administrative Procedure Act. As described below, they are unlikely to succeed under either theory.

1.    Due Process

To succeed on a due process claim, a plaintiff must show that they "have a property interest that entitles them to due process protection" and, if so, the "court must then determine 'what process is due.'" *Leary v. Daeschner*, 228 F.3d 729, 741 (6th Cir. 2000). Here, plaintiffs do not have a protected interest in their SEVIS record and, even if they did, the process available to them satisfies the Fifth Amendment.

For instance, in *Zhao*, a nonimmigrant student on an F-1 visa "dropped below the requisite number of credit hours" so his university updated SEVIS to terminate his nonimmigrant status. *Zhao*, 2018 WL 5018487, at *1–2. In response, he sued his university and alleged that it had violated his Fifth Amendment due process rights by terminating his SEVIS record. *See id.* at *4–5. The district court, however, dismissed his claim because "termination of Zhao's SEVIS record . . . in the SEVIS database, a clerical duty performed as a preliminary matter and in accordance with federal regulations . . . does not itself engender due process protections." *Id.*; *see*

*also Bakhtiari v. Beyer*, No. 4:06-CV-01489(CEJ), 2008 WL 3200820, at *3 (E.D. Mo. Aug. 6, 2008) (same).

Here, as in *Zhao*, plaintiffs do not have a constitutionally protected property interest in their SEVIS record. SEVIS is an administrative processing tool that does not affect their lawful nonimmigrant status. *See Zhao*, 2018 WL 5018487, at *4–5.[1] For instance, the regulations permit universities to terminate SEVIS record, but plaintiffs do not argue that universities have the authority to revoke a nonimmigrant student's lawful immigration status. (*See* Emergency Mot., ECF No. 2).

Furthermore, even if plaintiffs had a protected property interest in their SEVIS record, the process afforded them would satisfy the Fifth Amendment. The process due under the Fifth Amendment is determined by weighing the interest involved with the burden of providing additional procedures. *See Mathews v. Eldridge*, 424 U.S. 319, 339–40 (1976); *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 569 (1972). Here, the review procedures available to plaintiffs satisfy due process. If plaintiffs have actually lost their lawful nonimmigrant F-1 status, they could seek reinstatement administratively from USCIS. *See* 8 C.F.R. 214.2(f)(16). Similarly,

---

[1] Plaintiffs explicitly do not challenge the prudential revocation of their visas in this case, but even if they had, they would not have a valid due process claim. *See Wright v. Immigr. & Naturalization Serv.*, 379 F.2d 275, 276 (6th Cir. 1967) ("An alien does not obtain a vested right upon approval of a visa petition."); *see also Bangura v. Hansen*, 434 F.3d 487, 496 (6th Cir. 2006); *Foul v. Mukasey*, 256 F. App'x 785, 790 (6th Cir. 2007); *Martial-Emanuel v. Holder*, 523 F. App'x 345, 350 (6th Cir. 2013); *Knoetze v. U.S., Dep't of State*, 634 F.2d 207, 212 (5th Cir. 1981).

even if there were some reason to believe that plaintiffs were imminently likely to be placed into removal proceedings, the procedures available to plaintiffs in immigration court more than complies with the Fifth Amendment. *See* 8 U.S.C. § 1229a; *Camara v. Holder*, 705 F.3d 219, 223–24 (6th Cir. 2013) (rejecting due process challenge to removal proceedings).

### 2. APA Claim

Plaintiffs are unlikely to succeed on their claim under the Administrative Procedure Act (APA) because another statute provides an adequate remedy, the agency action plaintiffs challenge is not final, and because the agency's action was not arbitrary or capricious.

### a. The Privacy Act Bars APA Review

"The doctrine of sovereign immunity removes subject matter jurisdiction in lawsuits against the United States unless the government has consented to suit." *Beamon v. Brown*, 125 F.3d 965, 967 (6th Cir. 1997). "Although the APA provides a broad waiver of sovereign immunity, codified at 5 U.S.C. § 702, the waiver is limited by . . . § 701(a)(1) [which] provides that Chapter 7 of the APA, including § 702's waiver of sovereign immunity, does not apply to cases in which 'statutes preclude judicial review.'" *Id.*

Here, the Privacy Act bars plaintiffs' APA claim. The Privacy Act allows individuals to challenge data contained in a government system of records in federal

court and establishes a comprehensive scheme for such claims. *See* 5 U.S.C. § 552a(g)(1). However, that statute prohibits most noncitizens from filing suit challenging records under the Privacy Act. *See* 5 U.S.C. §§ 552a(a)(2). Therefore, they do not have a valid claim under the APA because the Privacy Act bars such claims. *See* 5 U.S.C. §§ 701–704; As such, the United States has not waived sovereign immunity. *See* 5 U.S.C. § 552a(a)(2); 5 U.S.C. § 704(a)(1); *Durrani v. U.S. Citizenship & Immigr. Servs.*, 596 F. Supp. 2d 24, 28 (D.D.C. 2009); *Cudzich v. INS*, 886 F. Supp. 101, 105 (D.D.C. 1995); *Raven v. Panama Canal Co.*, 583 F.2d 169, 171 (5th Cir. 1978) ("[I]t would be error for this Court to allow plaintiff, a Panamanian citizen, to assert a claim under the Privacy Act."). Moreover, the Court would lack jurisdiction over any such a claim because Plaintiff has not exhausted their administrative remedies. *Williams v. Bezy*, 97 F. App'x 573, 574 (6th Cir. 2004); *Dickson v. Off. of Pers. Mgmt.*, 828 F.2d 32, 40–41 (D.C. Cir. 1987).

b.    The Agency's Action is Not Final

The APA provides judicial review only for final agency action. 5 U.S.C. § 704. Agency action is final only if (1) it marks "the consummation of the agency's decisionmaking process" and (2) is "one by which rights or obligations have been determined, or from which legal consequences flow." *Bennett v. Spear*, 520 U.S. 154, 177–78 (1997) (citations omitted).

13

Here, the agency's action is not final because no decision has been made on the plaintiffs' nonimmigrant status. Even if plaintiffs' nonimmigrant status (rather than only their SEVIS record) was at issue in this case, plaintiffs could administratively challenge the relevant agency decisions. *See* 8 C.F.R. § 214.2(f)(16); 22 C.F.R. § 41.122(b). Further, plaintiffs cannot establish that the change in their SEVIS record determines plaintiffs' rights or obligations as to their nonimmigrant status or that any legal consequences flow from the termination of their SEVIS record. SEVIS record does not control plaintiffs' nonimmigrant status, it is merely a recordkeeping tool used by DHS and universities to manage the Student and Visitor Exchange Program. (Exhibit 2 - Watson Decl. ¶¶ 3–4, 21–22). Accordingly, plaintiffs have not identified an agency action that qualifies as final under the APA.

To the extent that plaintiffs rely on *Jie Fang v. Director U.S. Immigration & Customs Enforcement*, 935 F.3d 172, 182 (3d Cir. 2019), to argue that the termination of a SEVIS record is final agency action the APA, their reliance is misguided. In *Jie Fang*, DHS conducted a sting operation to catch fraudulent student visa brokers. *Id.* at 173–74. During that process several students were granted nonimmigrant student visas and entered the United States only to have their immigration status revoked by DHS at the conclusion of the investigation. *Id.* at 173–74. Because the students' nonimmigrant status had been revoked, they were

14

placed in immigration removal proceedings. *Id.* at 178–79. The students challenged the revocation of their nonimmigrant status by filing suit under the APA and DHS flip flopped regarding whether it believed that the students were willing participants in the fraud. *See id.* at 174 n.5. The district court dismissed plaintiffs' APA claims after finding that DHS's revocation of their nonimmigrant status was not final under the APA and that the suit was not ripe because the students could challenge their revocation in immigration removal proceedings. *Id.* at 177–78. On appeal, the Third Circuit reversed on both points and remanded for further proceedings because it concluded that the regulation providing for reinstatement of F-1 nonimmigrant status (8 C.F.R. § 214.2(f)(16)) was not mandatory and that the regulatory appeal procedure was not reviewable in immigration proceedings. *Id.*

*Jie Fang* is not persuasive in this case. The issue in *Jie Fang* was not the termination of a SEVIS record; it was the revocation of lawful nonimmigrant status, which led to the agency placing the students in immigration removal proceedings. See *Jie Fang*, 935 F.3d at 178–79.

             c.      The Termination of Plaintiffs' SEVIS record Was Not Arbitrary and Capricious

If an action is reviewable under the APA, a court may set aside agency action that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706. "Under the arbitrary or capricious standard, the party challenging the agency's action must show that the action had no rational basis or

15

that it involved a clear and prejudicial violation of applicable statutes or regulations." *Kroger Co. v. Reg'l Airport Auth. of Louisville & Jefferson Cnty.*, 286 F.3d 382, 389 (6th Cir. 2002) (quotations omitted). "The arbitrary or capricious standard is the least demanding review of an administrative action." *Id.*

Here, DHS's termination of plaintiffs' SEVIS records was not arbitrary and capricious. SEVIS records may be terminated for numerous reasons by DHS and by a university. (*See* Exhibit 3 – SEVIS Terminations). DHS received information of criminal history related to the plaintiffs and terminated plaintiffs SEVIS record as a result. (Exhibit 2 – Watson Decl. ¶¶ 7–22). This is a valid reason for terminating SEVIS record. (*See* Exhibit 3 – SEVIS Terminations). Accordingly, plaintiffs could not succeed on their APA claim based on the evidence in the record at this stage, even if the termination of their SEVIS record were reviewable under the APA.

Plaintiffs' argument that 8 C.F.R. § 214.1(d) somehow limits DHS's ability to update SEVIS is contrary to the language of the regulation and unsupported by any reliable authority. First, it is unsupported by the text of the regulation. The plain text of a regulation controls its application. *See Saginaw Chippewa Indian Tribe of Michigan v. Blue Cross Blue Shield of Michigan*, 32 F.4th 548, 557 (6th Cir. 2022). Section 214.1(d) lists three events that "shall" terminate an individual's nonimmigrant status and none of those events are relevant in this case. *See* 8 C.F.R. § 214.1(d). However, the text does not implicitly or explicitly refer to the SEVIS

16

system and, even if plaintiffs' lawful nonimmigrant status were at issue in this case, nothing in the text of the regulation indicates that those events are the *only* reasons to terminate a nonimmigrant's status. *See id.* Instead, that regulation provides reasons for terminating nonimmigrant status in addition to reasons provided elsewhere in the U.S. Code and the Code of Federal Regulations. *See, e.g.*, 8 U.S.C. § 1201(i); 8 C.F.R. § 214.2(f). Accordingly, plaintiffs' argument has no basis in the text of the regulation.

Second, the authority plaintiffs cite for their interpretation of § 214.1(d) does not support their argument. Plaintiffs' only support is footnote 100 in *Jie Fang. See Jie Fang*, 935 F.3d at 185 n.100. In that footnote, the Third Circuit mused about whether § 214.1(d) limited DHS's ability to terminate F-1 nonimmigrant status. *See id.* (stating only that it "appears" so). However, the court qualified its statement because that issue was not before the court on appeal and because no party made such an argument or even mentioned § 214.1(d) in any of their briefs. *See* Appellant's Brief, Jie Fang v. Homan, 2018 WL 1790605; Appellee's Brief, 2018 WL 2234265, Appellant's Reply Brief, 2018 WL 2725628. Accordingly, the *Jie Fang* footnote should only be accorded the weight that one would reasonably attach to undeveloped dicta contained in the 100th footnote of an opinion.

   B.    *Irreparable Injury*

The Supreme Court's "frequently reiterated standard requires plaintiffs seeking preliminary relief to demonstrate that irreparable injury is *likely* in the absence of an injunction." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008) (emphasis in original). "A plaintiff's harm from the denial of a preliminary injunction is irreparable if it is not fully compensable by monetary damages." *Overstreet v. Lexington-Fayette Urb. Cnty. Gov't*, 305 F.3d 566, 578 (6th Cir. 2002).

Here, plaintiffs have not demonstrated a likely irreparable injury. Plaintiffs first argue that a violation of their due process rights constitutes irreparable injury. (Emergency Mot., ECF No. 2, PageID.79–80). However, as described above, they have not plausibly alleged that their due process rights have been, or will be, violated.

Second, plaintiffs argue that they "face the serious risk of immediate arrest and detention for deportation." (Emergency Mot., ECF No. 2, PageID.79–80). However, that harm is not likely because DHS has not initiated removal proceedings against any of the plaintiffs. (Exhibit 2 - Watson Decl. ¶¶ 7–22). And, in any event, the mere risk of detention and removal is not sufficient to establish irreparable injury. *See Nken v. Holder*, 556 U.S. 418, 435 (2009) ("It is accordingly plain that the burden of removal alone cannot constitute the requisite irreparable injury.")

Third, plaintiffs argue that the interruption of their studies constitutes irreparable harm. (Emergency Mot., ECF No. 2, PageID.79–81). However, they

offer no evidence regarding whether they sought reconsideration or reinstatement through the proper procedures or whether they can transfer their credits to universities in their home country or in other comparable countries, such as Canada, or in Europe. (*See id.*); 8 C.F.R. § 214.2(f)(16); 22 C.F.R. § 41.122(b). Therefore, they have not developed a sufficient record to establish that their injury is not fully compensable by monetary damages. *See Overstreet*, 305 F.3d at 579.

C.     *Balance of Equities and Public Interest*

The third and fourth preliminary injunction factors "merge when the Government is the opposing party." *Nken*, 556 U.S. at 435. The Supreme Court has acknowledged that the public has a valid interest in the efficient functioning of the immigration system and held that courts cannot presume that plaintiffs establish the third and fourth preliminary injunction factors simply by alleging that they are being wrongfully denied immigration rights. *See id.* at 435–36.

Here, plaintiffs have not met their burden of establishing that the balance of equities or the public interest weigh in their favor. Plaintiffs' only argument on this point is that DHS allegedly wrongfully terminated their SEVIS record. (*See* Emergency Mot., ECF No. 2, PageID.81–82). However, as noted above, plaintiffs are incorrect on the merits and, even if they were not, this allegation alone is not sufficient to demonstrate that the balance of equities or the public interest weighs in favor of a preliminary injunction in this case. *See Nken*, 556 U.S. at 435–36.

19

### III.   If the Court Enters a TRO the Court Should Require that Plaintiffs Give Appropriate Security

A "court may issue a preliminary injunction or a temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c). "While this language appears to be mandatory, the rule in our circuit has long been that the district court possesses discretion over whether to require the posting of security." *Appalachian Reg'l Healthcare, Inc. v. Coventry Health & Life Ins. Co.*, 714 F.3d 424, 431 (6th Cir. 2013) (quotation omitted). "The amount of security required and whether a bond is needed is up to the discretion of the district court." *Golden v. Kelsey-Hayes Co.*, 845 F. Supp. 410, 416 (E.D. Mich. 1994), aff'd, 73 F.3d 648 (6th Cir. 1996)

On March 11, 2025, the President issued a memo requiring federal agencies to seek security when confronted with suits seeking emergency preliminary injunctive relief.[2] Pursuant to that memo, if the Court grants preliminary injunctive

---

[2] *See* White House Memo, https://www.whitehouse.gov/presidential-actions/2025/03/ensuring-the-enforcement-of-federal-rule-of-civil-procedure-65c/ (last visited 4/13/2025).

relief in this case, defendants request that the Court require plaintiffs to provide adequate security.

## Conclusion

Defendants respectfully request that the Court deny plaintiffs' motion for a temporary restraining order.

Respectfully submitted,

Julie A. Beck
United States Attorney

*/s/ Zak Toomey*
Zak Toomey (MO61618)
Assistant U.S. Attorney
211 W. Fort Street, Suite 2001
Detroit, Michigan 48226
(313) 226-9617
zak.toomey@usdoj.gov

Dated: April 14, 2025

# Certificate of Service

I hereby certify that on April 14, 2025, I electronically filed the foregoing paper with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the parties of record.

*/s/ Zak Toomey*
**Zak Toomey**
Assistant U.S. Attorney