UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CHINMAY DEORE, et al.,

    Plaintiffs,

Case No. 2:25-cv-11038

HONORABLE STEPHEN J. MURPHY, III

v.

SECRETARY OF U.S. DEPARTMENT
OF HOMELAND SECURITY, et al.,

    Defendants.
_____/

**ORDER DENYING IN PART MOTION FOR TEMPORARY
RESTRAINING ORDER AND PRELIMINARY INJUNCTION [2]**

After the Government terminated their records in the Student and Exchange Visitor Information System (SEVIS) database, four international students sued the Secretary of the U.S. Department of Homeland Security and others. The students alleged that, by terminating their SEVIS records, the Government had also terminated their F-1 student status, which violated the Due Process Clause of the Constitution of the United States and the Administrative Procedure Act. The students then moved for a temporary restraining order that, *inter alia*, would force the Government to set aside the alleged F-1 status termination while the parties litigate the case.

According to the Government, however, SEVIS terminations do not automatically revoke F-1 student status. The Government also represented that it had no reason to believe that the students had lost F-1 status or were in danger of facing removal proceedings.

1

Based on the limited record, the Court cannot conclude whether the termination of a record within the SEVIS database is synonymous with a termination of F-1 status. The parties also presented insufficient information for the Court to ascertain whether the termination of a SEVIS record—absent a termination of F-1 status, insofar as that is possible—carries legal consequences and is thus a reviewable final agency action. And the Court cannot find, based on the record before it, that the students have sufficiently developed their claim of irreparable harm. Accordingly, the Court will deny the motion for a temporary restraining order.

## BACKGROUND[1]

Chinmay Deore, Yogesh Joshi, Xiangyun Bu, and Qiuyi Yang are international students studying at the University of Michigan and Wayne State University. On April 4, 2025, the United States Department of Homeland Security terminated their records in the SEVIS database. ECF No. 14-3, PageID.168–169.

The termination reasons—at least as relayed to the students by the University of Michigan and Wayne State University—varied. The emails to Deore, Bu, and Yang said that their SEVIS records were terminated for "OTHERWISE FAILING TO MAINTAIN STATUS - Individual identified in criminal records check and/or has had their VISA revoked. SEVIS record has been terminated." ECF No. 1-3, PageID.39 (email to Deore); ECF No. 1-5, PageID.43 (email to Bu); ECF No. 1-6, PageID.46

---

[1] The findings of fact and conclusions of law made herein are "not determinative of a ruling on the [Preliminary Injunction] Motion or at a trial on the merits." *Burton v. Kettering Adventist Health Care*, No. 20-cv-209, 2020 WL 3265526, at *4 (S.D. Ohio June 17, 2020).

2

(email to Yang). Meanwhile, the email to Joshi said that his SEVIS record was terminated for "OTHER – Individual identified in criminal records check and/or has had their VISA revoked. SEVIS record has been terminated." ECF No. 1-4, PageID.41 (email to Joshi). The schools advised all four students that the SEVIS terminations meant that their F-1 status had been revoked. ECF No. 1, PageID.39–43.

Soon thereafter, the students sued the Secretary of the Department of Homeland Security and other government officials and sought a temporary restraining order and a preliminary injunction. ECF No. 1; ECF. No. 2, PageID.49. The students argued that the Department's action was contrary to the Due Process Clause of the Constitution and that it violated the Administrative Procedure Act because it was arbitrary, capricious, and contrary to law. *Id.* at PageID.56.

After the Court scheduled a hearing on the emergency temporary restraining order, ECF No. 7, Yang and Joshi learned that the United States Department of State had formally revoked their visas. ECF No. 12, PageID.119–120.[2] The next day, the Government responded to the motion for an emergency TRO. ECF No. 14.

Alongside their response, the Government submitted a declaration from Andre Watson, an Assistant Director of the National Security Division of Homeland Security Investigations within U.S. Immigration and Customs Enforcement (ICE). ECF No. 14-3, PageID.165–170. Watson oversees the Student Exchange Visitor Program

---

[2] Bu has not received notification of any visa revocation, and Deore did not have a visa because he changed his immigration status to F-1 after already being in the United States. ECF 12, PageID.119–120.

3

(SEVP). *Id.* at PageID.166. SEVP tracks various nonimmigrants, including students with F-1 status, through SEVIS pursuant to 8 U.S.C. § 1372. *Id.* at PageID.167.

According to Watson, SEVP terminated the SEVIS records of the four students based on their criminal or immigration histories. *Id.* at PageID.168–169. Deore and Joshi were previously arrested for "Assault Excluding Sexual." *Id.* at PageID.168. Bu had previously been found inadmissible under Section 212 of the Immigration and Nationality Act. *Id.* And Yang was arrested for "Assault – 4th Degree" with a domestic-violence enhancement. *Id.* at PageID.169.

## LEGAL STANDARD

Injunctive relief is an "extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008). "There is no power the exercise of which is more delicate, which requires greater caution, deliberation, and sound discretion, or more dangerous in a doubtful case, than the issuing [of] an injunction." *Detroit Newspaper Publishers Ass'n v. Detroit Typographical Union No. 18, Int'l Typographical Union*, 471 F.2d 872, 876 (6th Cir. 1972).

> When considering a motion for a temporary restraining order, the Court must examine four factors: (1) whether the movant has shown a strong likelihood of success on the merits; (2) whether the movant will suffer irreparable harm if the injunction is not issued; (3) whether the issuance of the injunction would cause substantial harm to others; and (4) whether the public interest would be served by issuing the injunction.

*Overstreet v. Lexington-Fayette Urb. Cnty. Gov't*, 305 F.3d 566, 573 (6th Cir. 2002) (applying the preliminary injunction test for review of a temporary restraining order).

4

The Court generally balances the four factors and should not consider them "prerequisites to the grant" of a temporary restraining order. *Leary v. Daeschner*, 228 F.3d 729, 736 (6th Cir. 2000) (citations omitted); *see also Certified Restoration Dry Cleaning Network, L.L.C. v. Tenke Corp.*, 511 F.3d 535, 542 (6th Cir. 2007) ("The district judge is not required to make specific findings concerning each of the four factors used in determining a motion for preliminary injunction if fewer factors are dispositive of the issue."). A Court may not, however, grant injunctive relief based only on a "possibility" of irreparable harm. *Winter*, 555 U.S. at 22.

Finally, courts routinely decline to issue injunctive relief when they cannot yet resolve novel and complex issues of law or fact. *McKay v. Federspiel*, No. 14-cv-10252, 2014 WL 1400091, at *12 (E.D. Mich. Apr. 10, 2014) (denying preliminary injunctive relief when the Court lacked the requisite facts to make necessary conclusions of law); *see also Detroit Newspaper*, 471 F.2d 872, 876 (6th Cir. 1972) (noting that injunctive relief is available only when the right is "clear," and injunctions should not be awarded in doubtful cases); *Decorative Stone Co. v. Bldg. Trades Council of Westchester Cnty.*, 13 F.2d 123, 123 (2d Cir. 1926) (noting that in the presence of "debatable questions, it is within the discretion of the court to refuse to grant a preliminary injunction on affidavits"); *First Nat'l Bank & Tr. Co. of Mich. v. Fed. Rsrv. Bank of Chi. Detroit Branch*, 495 F. Supp. 154, 157 (W.D. Mich. 1980) ("It is the Court's opinion that there can be no substantial likelihood of success where there exist complex issues of law, the resolution of which are not free from doubt."); *N.W. Controls, Inc. v. Outboard Marine Corp.*, 317 F. Supp. 698, 703 (D. Del. 1970) (finding

no likelihood of success when "on the present record serious conflicts of both a factual and legal nature exist"); *Marilley v. McCamman*, No. C-11-02418, 2011 WL 4595198, at *1 (N.D. Cal. Oct. 3, 2011) ("In circumstances where the court finds that it cannot yet resolve 'doubtful and difficult questions of law or disputed questions of fact,' however, a preliminary injunction may not issue.").

## DISCUSSION

Plaintiffs alleged that Defendants' actions violated the APA and the Constitution. For Defendants to demonstrate a likelihood of success on the merits of either claim, however, Plaintiffs' core assumption must be correct: that their SEVIS record terminations necessarily reflect an F-1 status termination. As discussed below, the Court has reservations about whether the two terminations are necessarily linked. Those reservations, in turn, prevent the Court from concluding that Plaintiffs have demonstrated a strong likelihood of success on their APA and constitutional claims.

I.  SEVIS Record Terminations and F-1 Status Terminations

Based on the limited record and briefing before it, the Court cannot ascertain at this time whether a SEVIS record termination is always reflective of an F-1 status termination or carries with it any independent legal consequences.

First, according to Watson's declaration, a clerical change in SEVIS does not create a termination of F-1 status. ECF No. 14-3, PageID.169. Watson explained that "[t]he statute and regulations do not provide SEVP the authority to terminate nonimmigrant status by terminating a SEVIS record, and SEVP has never claimed

6

that it had terminated the nonimmigrant status of DEORE, JOSHI, BU, and YANG." *Id.*

At the motion hearing, the Government also represented that it does not currently believe that there has been any status change for any of the students, even considering the termination of the SEVIS records. *See* ECF No. 14, PageID.144–145 ("[T]he agency does not take the position that plaintiffs' lack lawful nonimmigrant status at this time or that SEVIS controls or reflects their nonimmigrant status."). Accordingly, the Government admitted that it does not currently have any basis to initiate removal proceedings against the students.

And based on Homeland Security's own website, last updated November 7, 2024, terminated records in SEVIS do not always reflect a revocation of F-1 status. Rather, "[a] terminated record in the Student and Exchange Visitor Information System (SEVIS) *could* indicate that the nonimmigrant no longer maintains F or M status."[3]

Finally, although the Secretary of State has prudentially revoked the visas of some of the students, the Government admitted that prudential visa revocation—on its own—does not automatically revoke F-1 status. ECF No. 14-3, PageID.169 ("Prudential visa revocation, absent other factors, does not make an individual [amenable] to removal"). ICE's own guidance confirms that there is no automatic

---

[3] *SEVIS Help Hub: Terminate a Student*, Department of Homeland Security, https://studyinthestates.dhs.gov/sevis-help-hub/student-records/completions-and-terminations/terminate-a-student (last updated Nov. 7, 2024) (emphasis added) [https://perma.cc/7KEH-BJYQ].

7

connection between visa revocation and F-1 status. For example, in a 2010 letter to Designated School Officials, SEVP noted: "Some circumstances require revocation of a nonimmigrant student's visa while the nonimmigrant is in the United States and in status. Visa revocation is not, in itself, a cause for termination of the student's SEVIS record." ECF No. 2-3, PageID.94.

To be sure, both the University of Michigan and Wayne State University concluded that a status termination took place. *See, e.g.*, ECF No. 1-4, PageID.41 (warning that "your lawful status in the U.S. is terminated, and you are at risk of detention and deportation."); ECF No. 1-5, PageID.43 ("You will need to cease any employment immediately. Since this termination does not carry a grace period, we must recommend you make plans to exit the United States immediately.").

But since then, and as noted above, the Government has provided additional information and argument that may prompt the schools to reassess their view of whether a status termination has occurred. That information includes the Government's agreement with Plaintiffs that a prudential revocation of a visa does not—on its own—change a student's F-1 status, and the Government's argument that F-1 status and the non-termination of a SEVIS record are *meaningfully* distinct. *See generally Yunsong Zhao v. Va. Polytechnic Inst. & State Univ.*, No. 7:18CV00189, 2018 WL 5018487, at *5 (W.D. Va. Oct. 16, 2018) (determining that SEVIS status and F-1 status are divisible).

The Government's representations are by no means dispositive, and Plaintiffs may ultimately show that termination of a SEVIS record is conclusive of a loss of F-

8

1 status or carries its own legal consequences. But the Court cannot conclude based on the current record whether it is likely that any of the students have lost their F-1 status or have lost any legal rights based solely on the termination of their SEVIS record.

II. <u>Temporary Restraining Order Factors</u>

Next, the Court will analyze each of the classic temporary-restraining-order factors. Because the case proceeds against government defendants, the last two factors—balance of the equities and public interest—merge. *Busby v. Bonner*, 477 F. Supp. 3d 691, 700 (W.D. Tenn. 2020).

A. *Likelihood of Success on the Merits*

    i. Administrative Procedure Act

In support of their APA claim, Plaintiffs alleged that the termination of their F-1 statuses was not in accordance with law, was arbitrary and capricious, and was contrary to a constitutional right. ECF No. 2, PageID.75. But because the record at present does not clearly support that a final agency action took place, Plaintiffs have not shown a strong likelihood of success on the merits of their APA claim.

Section 704 of the Administrative Procedures Act authorizes judicial review of "final agency action for which there is no other adequate remedy in a court." 5 U.S.C. § 704; *see also Jama v. Dep't of Homeland Sec.*, 760 F.3d 490, 495 (6th Cir. 2014). Courts use a two-pronged test to determine when agency action is "final": "First, the action must mark the consummation of the agency's decisionmaking process—it must not be of a merely tentative or interlocutory nature. And second, the action must be

9

one by which rights or obligations have been determined, or from which legal consequences will flow." *Jama*, 760 F.3d at 495–95 (quotation and quotation marks omitted). An agency action is not final if it "only affects [the complainants'] rights adversely on the contingency of future administrative action." *Marquette Cnty. Rd. Comm'n v. U.S. Env't Prot. Agency*, 188 F. Supp. 3d 641, 647 (W.D. Mich. 2016), *aff'd*, 726 F. App'x 461 (6th Cir. 2018) (quotation omitted).

As noted above, it is not clear that the Plaintiffs' F-1 statuses were terminated alongside their SEVIS records. And substantial uncertainty over the effect of SEVIS record terminations remains—*i.e.* neither party adequately explained whether SEVIS termination alone (and not as reflective of F-1 status loss) carries any legal consequences. Thus, if Plaintiffs have not lost their F-1 status alongside their SEVIS record terminations or have not lost other rights by termination of SEVIS, then it is not clear that the SEVIS termination represents a final action "by which rights or obligations have been determined, or from which legal consequences will flow." *Jama*, 760 F.3d at 495–96 (quotation and quotation marks omitted). Given those difficult issues, the Court lacks sufficient factual information from which to determine whether there has been a final agency action. *See McKay*, 2014 WL 1400091, at *12 (denying preliminary injunctive relief when the Court lacked the requisite facts to make requisite conclusions of law).

Plaintiffs cited *Jie Fang v. Dir. U.S. Immigr. & Customs Enf't*, 935 F.3d 172 (3d Cir. 2019), for the proposition that "Defendants' termination of each Plaintiff's F-1 student status is a final agency action [that the] Court has jurisdiction to review

10

under the APA." ECF No. 2, PageID.75. In *Jie Fang*, the Department of Homeland Security formally advised students that their SEVIS record had been terminated, that they no longer had valid F-1 status, *and* that they had to file for reinstatement of nonimmigrant status or depart from the United States immediately. 935 F.3d at 180. But *Jie Fang*'s conclusion—that the "order terminating the students' F-1 visa status was therefore a final order for jurisdictional purposes because there was no further opportunity for review," *see* 935 F.3d at 185—does not fit well with the core ambiguities of this case. Those ambiguities are whether the students retain their F-1 status and what the independent effects of a SEVIS termination are.[4]

Here, the Department of Homeland Security provided no letter and no clear indication of a status termination. For the four students who are plaintiffs here, the Government stated that it *has no reason to believe that a status change has occurred*.[5] And the Plaintiffs' brief largely proceeded on the assertion that the "termination of their F-1 *status* in SEVIS" is conclusive of their legal loss of F-1 status in fact. *See*

---

[4] Other courts have described the termination of SEVIS records—albeit by university officials rather than Government officials—as a simple "clerical duty." *See, e.g.*, *Yerrapareddypeddireddy v. Albence*, No. CV-20-01476, 2021 WL 5324894, at *8 (D. Ariz. Nov. 16, 2021), *aff'd*, No. 21-17070, 2022 WL 17484323 (9th Cir. Dec. 7, 2022); *Yunsong Zhao*, 2018 WL 5018487, at *5.

[5] There is *some* reason to believe that a status change occurred. Three Plaintiffs indicated that their records were cancelled by DHS for "otherwise failing to maintain status." *See, e.g.*, ECF No. 1-5, PageID.44. On first glance at 8 C.F.R. § 214.2(f), references to "status" seem to refer not to the status of having a SEVIS record but rather to the student's immigration status. DHS's own notes in SEVIS could provide a reason to believe that three of the students failed to maintain, and thus lost, their F-1 status. That said, given the new information presented by the Government, the Court cannot currently conclude, one way or another, whether the students actually lost their status in fact. The parties can—and should—more fully develop the point in subsequent briefing and at the preliminary injunction hearing.

11

ECF No. 2, PageID.59. That assertion may ultimately prove correct. But, absent further briefing, its veracity is not clear.

    ii.    Due Process Clause

In support of their due process claim, Plaintiff contended that a due process violation occurred because Defendants received no notice of the F-1 status determination, no adequate explanation for the termination, and no adequate opportunity to respond. ECF No. 2, PageID.73. As with its analysis of the APA claim, however, the Court cannot say that the students actually lost their F-1 status, notwithstanding the termination of their SEVIS records. And so, Plaintiffs have not shown a likelihood of success on their due process claims as it relates to the as-of-yet unconfirmed F-1 status change.

The Court must next consider the process due (if any) before SEVP modifies a SEVIS record. The few courts to consider the issue have found that students could not maintain a due process claim for termination of a SEVIS record. *See Yunsong Zhao*, 2018 WL 5018487, at *6 (finding that student whose SEVIS record was terminated, without prior notice and without a hearing, failed to state a due process claim because there was "no legal basis or precedent supporting [his] contention that his SEVIS status constitutes an independent property interest implicating due process"); *Bakhtiari v. Beyer*, No. 4:06-cv-01489, 2008 WL 3200820, at *3 (E.D. Mo. Aug. 6, 2008) (finding that "neither the SEVIS regulations nor the enabling legislation on which they are based demonstrate that Congress intended to create a private right of action or intended to benefit a class of which plaintiff is a member").

12

At this stage of the litigation and upon the present record, the Court likewise cannot conclude that the SEVIS terminations on their own infringed on an interest that implicates due process.

For the reasons above, Plaintiffs cannot show a strong likelihood of success on the merits at this time.

### B. Risk of Irreparable Harm

Plaintiffs did not persuade the Court that they met the high burden to establish the risk that they will suffer immediate and irreparable harm absent a TRO. Plaintiffs identified three main types of harm: (1) possible detention or removal, (2) disruption to their academic programs, and (3) loss of employment.[6]

*Removal and Detention.* It is not clear that DHS terminated the Plaintiffs' F-1 status or that Plaintiffs are facing removal or detention. At oral argument, the Government represented to the Court that DHS has no reason to believe that Plaintiffs are removable. It follows then that there would be no reason for them to be arrested.

If Plaintiffs lost their status, and are removable or detainable on that basis, they are free to seek reinstatement of their student status. 8 C.F.R. § 214.2(16). And Plaintiffs failed to fully explain whether they are pursuing reinstatement, and

---

[6] Only three Plaintiffs—Deore, Joshi, and Yang—alleged loss of paid employment. ECF No. 1, PageID.21. Although Bu alleged that he is "no longer able to obtain OPT," *id.*, which is a form of temporary employment, the complaint did not suggest that he lost any paid position.

13

whether, if their status was indeed revoked, they are allowed to remain in the country while their application for reinstatement is pending review.

*Academic Disruption.* It is not clear that the students' educational progress will be impeded at their current institutions. The Government explicitly said at oral argument that the students are allowed to continue taking classes—which would make sense if the students still maintained their F-1 status—and that the Department of Homeland Security has not asked the University of Michigan or Wayne State University to disenroll the students. In other SEVIS-related cases, schools have allowed students to continue their studies after termination of SEVIS status. *Yunsong Zhao*, 2018 WL 5018487, at \*5 (determining that SEVIS status and F-1 status are divisible).

To be sure, some Plaintiffs have future plans that might be impeded. *See, e.g.*, ECF No. 1, PageID.21 (noting that students might be unable to transfer for a master's degree or matriculate for further graduate studies). But those harms are sufficiently distant to counsel against immediate relief in the form of a TRO.

*Employment.* Three Plaintiffs alleged a loss of employment because of the termination of their F-1 status in SEVIS. ECF No. 1, PageID.21. As noted above, it remains unclear whether the students have F-1 status despite the termination of their SEVIS record, have lost their F-1 status, or anything else. The parties did not thoroughly analyze whether someone with F-1 status but without a SEVIS record (insofar as such a person can exist) may be employed.

Furthermore, lost wages are generally not harms that are irreparable and the universities—that is, the entities who presumably terminated Plaintiffs' employment—are not parties to the lawsuit. *See Aluminum Workers Int'l Union, AFL-CIO, Local Union No. 215 v. Consolidated Aluminum Corp.*, 696 F.2d 437, 443 (6th Cir. 1982) (absent a showing that an employer will be unable to provide backpay or reinstatement, "loss of employment . . . is not irreparable harm and will not support a claim . . . for injunctive relief"). Although it may not be possible for the students to seek reinstatement or backpay from their universities to the extent that they carried out terminations in adherence to federal law, Plaintiffs did not develop any argument of that type. And the Government's representations, before and at the hearing, might positively affect the students' employment. Finally, although Plaintiffs may seek reinstatement of their SEVIS record, they did not explain whether they would be able to work pending review. The Court thus cannot find on the record before it that the lost employment during the pendency of the litigation is an irreparable harm. Again, Plaintiffs can and should develop the argument before and at the preliminary injunction hearing.

C. *Balance of the Equities and the Public's Interest*

Next, the final two factors—the balance of harms and the public interest—are too mixed to move the needle given the Court's concerns stated above. The Court appreciates that detention, deportation, loss of educational opportunity, and wage loss are frightening and very serious concerns for Plaintiffs. And the Court recognizes

15

that the public generally has an interest in the predictable application and enforcement of the law—to which arbitrary and capricious action is antithetical.

But enjoining the agency's ability to exercise its authority before a complete review of the merits of the case, especially considering the novel and complex issues of law present here, is also serious and may be harmful. *See Lopez-Mejia v. Lynch*, No. 1:16-CV-549, 2017 WL 25501, at *4 (S.D. Ohio Jan. 3, 2017) (acknowledging that "the government has a compelling state interest, based on border security and national sovereignty, to enforce its immigration" rules). And the executive retains a strong interest in handling immigration matters. *See Blackie's House of Beef, Inc. v. Castillo*, 659 F.2d 1211, 1221 (D.C. Cir. 1981) (recognizing that the public interest in immigration enforcement is significant) (collecting cases).

## CONCLUSION

In sum, the balance of factors favors denying the motion at this stage. It is not currently clear that Plaintiffs have lost F-1 status or that the SEVIS terminations carry independent consequences. Thus, Plaintiffs have not shown a strong likelihood of success on the merits. And the other factors do not sufficiently support granting the motion.

Although it is ultimately unclear why DHS would terminate SEVIS records for students who maintain F-1 status, Plaintiffs have not, for the reasons explained above, met the standard for the issuance of such an extraordinary remedy.

**WHEREFORE**, it is hereby **ORDERED** that the motion for a temporary restraining order [2] is **DENIED**.

**IT IS FURTHER ORDERED** that the following schedule for a preliminary injunction is hereby **ENTERED**:

| Event | Due Date |
|---|---|
| Government's Brief in Response to Preliminary Injunction (30-page limit) | April 30, 2025 |
| Meet and Confer (see below) | May 2, 2025 |
| Submission of Pre-Hearing Materials | May 13, 2025 |
| Plaintiffs' Reply Brief (30-page limit) | May 13, 2025 |
| Preliminary Injunction Hearing | May 19, 2025 at 10:00 a.m. |

**IT IS FURTHER ORDERED** that the parties shall **FOLLOW** the guidance in the preliminary injunction scheduling order appendix attached below.

**SO ORDERED.**

s/ Stephen J. Murphy, III<br>STEPHEN J. MURPHY, III<br>United States District Judge

Dated: April 17, 2025

## PRELIMINARY INJUNCTION SCHEDULING ORDER APPENDIX

**1. Meet and Confer**

Not later than the corresponding date set forth above, counsel for all parties shall meet and confer, preferably in person, to discuss the following:

a) whether the parties can agree to a preliminary injunction of scope less than what Plaintiff has sought;

b) whether any facts or legal conclusions are agreed upon;

c) evidentiary issues, including any objections to the admissibility of any proposed exhibit or testimony to be offered at the hearing.

The meet and confer is intended to be substantive. The Court thus encourages the parties to exchange proposed findings of fact and conclusions of law (see below) prior to the meet and confer, such that each party has the opportunity to consider the precise language that it would be stipulating to at the meet and confer.

**2. Submission of Pre-Hearing Materials**

Not later than the corresponding date set forth above, counsel must:

a) File a "Joint Exhibit and Witness List" which lists all exhibits that the parties intend to introduce at the hearing and all witnesses the parties intend to call at the hearing. For each identified witness, the Joint Exhibit and Witness List must indicate whether the witness "will" be called or "may" be called at the hearing, the witness's likely testimony (one or two sentences), an estimate of the time needed for direct and cross examination of the witness, and any significant objection to the witness's testimony. For each exhibit the admission

of which is not agreed to by the parties, the Joint Exhibit and Witness List must briefly state the basis for objection.

b) Provide the Court with a "Joint Exhibit Book" containing a copy of all proposed exhibits (including any deposition transcripts or applicable portions thereof) identified in the Joint Exhibit and Witness List. All exhibits must be marked by counsel prior to the preparation of the Joint Exhibit Book such that the copy in the Joint Exhibit Book is marked. The preferred method of marking is letters for the Plaintiffs and numbers for Defendants. The parties should also provide an extra copy of the Joint Exhibit Book for the Court Reporter.

c) File a "Pre-Hearing Brief" containing separately numbered proposed findings of fact with citation to proposed exhibits (preferably citing to the Joint Exhibit Book) and separately numbered proposed conclusions of law.

d) File a joint statement concerning the suitability of hearing and trial under Federal Rule of Civil Procedure 65(a)(2).

**3. The Preliminary Injunction Hearing**

a) The Court has set aside one day for the preliminary injunction hearing. The hearing will begin on **May 19, 2025 at 10:00 a.m. The hearing will finish no later than 3:00 p.m.** and the Court may take periodic breaks and break for lunch.

b) The Court will admit unobjected-to exhibits in the Joint Exhibit and Witness List at the start of the preliminary injunction hearing. The Court will determine the admissibility of objected-to exhibits and objected-to testimony

prior to the start of the hearing or at the time a party seeks to introduce the objected-to evidence (or testimony). Evidence not included in the Joint Exhibit and Witness List will not be admitted absent a showing of good cause for failing to include the evidence on the list. Counsel are required to keep track of all exhibits admitted during the hearing.