# Exhibit A

## *Patel v. Lyons*

1               IN THE UNITED STATES DISTRICT COURT
                        DISTRICT OF COLUMBIA
2

3    AKSHAR PATEL                  ) CIVIL NO.:
                                   ) 25-1096-ACR
4             Plaintiff,           )
          vs.                      )
5                                  )
     TODD M. LYONS,                )
6                                  ) April 16, 2025
              Defendant.           ) Washington, D.C.
7    _____) 10:45 a.m.

8
                     Transcript of Motions Hearing
9               Before the Honorable Ana C. Reyes
                    United States District Judge
10

11   APPEARANCES:

12   For the Plaintiff:  Steven A. Brown, Esquire
                         Reddy Neumann Brown, P.C.
13                       10333 Richmond Avenue, Ste 1050
                         Houston, TX 77042
14
                         Bradley B. Banias, Esquire
15                       Banias Law LLC
                         602 Rutledge Avenue
16                       Charleston, SC 29403

17   For the Defendant:  Joseph F. Carilli , Jr., , Esquire
                         United States Attorney's Office
18                       Civil Division
                         601 D Street, NW
19                       Washington, DC 20001

20   Also Present:  MacKlin Everly
                    Andre Watson
21

22   Reported by:   Christine T. Asif, RPR, FCRR
                    Federal Official Court Reporter
23                  333 Constitution Avenue, NW
                    Washington, D.C. 20001
24                  (202) 354-3247

25   Proceedings recorded by machine shorthand; transcript produced
     by computer-aided transcription

2

```
1                     P R O C E E D I N G S

2              THE CLERK:  This is civil action 25-1096, Akshar

3    Patel versus Todd M. Lyons.

4              Will the parties please identify themselves for the

5    record.

6              MR. BROWN:  Good morning, Your Honor.  Steven Brown

7    and Brad Banias for the plaintiffs.

8              THE COURT:  Government counsel.

9              MR. CARILLI:  Joseph F. Carilli for the

10   Government.

11             THE COURT:  In the future gentleman if I or any

12   court orders you to meet and confer, there are two components

13   of a meet and confer meet and confer.  One that you actually

14   meet, which you do not do over email.  And two is that you

15   actually confer.  The second I saw your --

16             Mr. Carilli, could you please look up and not be

17   writing whatever you're writing right now and listen to me.

18             The second I saw your first joint status report I

19   knew immediately that none of you had done either of those two

20   things, which is why I asked for the further report which

21   confirmed everything that I thought.  Now did you all meet and

22   confer by video this morning?

23             MR. BROWN:  Yes, Your Honor.

24             THE COURT:  How long did the meet and confer last?

25             MR. BROWN:  About 40 minutes, Your Honor.
```

1            THE COURT:  Okay.  Did you guys make any progress?

2            MR. BROWN:  Not towards a resolution, Your Honor,

3    but I think we have a understanding of each -- better

4    understanding of each other's position, Your Honor.

5            THE COURT:  All right.  So Mr. Carilli, can you

6    explain the SEVIS system to me exactly what it is and what it

7    does.

8            MR. CARILLI:  SEVIS is an information system that

9    was established under 8 U.S.C., I'm sorry --

10            THE COURT:  1372.

11            MR. CARILLI:  1372, excuse me.  That was established

12    post 9/11 for the Secretary of Homeland Security to be able to

13    monitor individuals who are in the country in F, M, and J

14    status.  Obviously, the issue here is the portions of SEVIS

15    that are used by F.  Immigration and Customs Enforcement

16    maintains that system under that statute and it is used to,

17    like I said, monitor and then also for individual schools to

18    be able to provide information about F-1 students that are

19    enrolled at their schools.

20            THE COURT:  Okay.  So the purpose of SEVIS is to

21    monitor people who are here in part on F-1 visas?

22            MR. CARILLI:  Yes, Your Honor.

23            THE COURT:  Okay.  So what's the impact of taking

24    someone off of SEVIS, why would we not want to monitor

25    somebody?

1          MR. CARILLI:  Well, to clarify, Your Honor, what

2    occurred here was, in SEVIS there is a drop down menu that

3    allows you to list active -- there's categories about an

4    individual.  So the record wasn't deleted, it's just in SEVIS

5    that it was changed from active to terminated.

6          THE COURT:  Okay.  And what's the consequence of

7    moving someone from active to terminated?

8          MR. CARILLI:  The consequence is exactly as

9    described, that it changed the status of the individual inside

10   SEVIS.  It did not change the individual's immigration

11   status.

12         THE COURT:  So what's the impact of it being changed

13   within SEVIS, why -- what happens when that occurs?

14         MR. CARILLI:  I mean, it's an indication that in

15   system that the individual -- that their record in the system

16   has been -- the status is terminated.  I can't --

17         THE COURT:  No, I understand that.  But what is the

18   impact -- what's the impact of it having been terminated?  If

19   there's no impact, then I'm sure you have no problem moving it

20   back to active and we can all go home; right?

21         MR. CARILLI:  Well, I think that the government

22   has -- ICE has indicated they're not going to change it back.

23   I think that --

24         THE COURT:  That wasn't my question.  I'm not really

25   concerned what ICE thinks they can and can't do, I'm concerned

1    with what I can do.  And my understanding from the plaintiff's

2    argument is that a change of SEVIS from active to terminated

3    either automatically cancels their F-1 visa or is a precursor

4    to canceling their visa.  I'm not quite sure what the argument

5    is, but I think it's the first.  And the government says no,

6    no, no, that has nothing to do with immigration.  So if it has

7    nothing to do with immigration, it must have something to do

8    with something, or else we would all change it back to active

9    and we could all go home.

10          So explain to me please what the consequence is of

11   changing something from active to inactive or terminated.  And

12   do not say it's terminated within the SEVIS system, because

13   that is not an answer to my question.  What is the impact of

14   terminating somebody within SEVIS?

15          MR. CARILLI:  I'm not prepared to answer that --

16          THE COURT:  How are you not prepared to answer --

17   I'm sorry how are you not here prepared to answer that

18   question?  That's the only question in this litigation, Mr.

19   Carilli.

20          MR. CARILLI:  The question here is whether --

21          THE COURT:  No, Mr. Carilli -- Mr. Carilli.  I'm the

22   one who decides what the questions here are, okay, not you.

23   Now, obviously, the first question in this case is what is the

24   practical import of canceling someone within SEVIS.  And if

25   you don't know, we're all going to wait here while you call

1    someone and find out, because I'm not going to get jerked

2    around by you telling me you're not prepared to answer the key

3    question in this case.

4              What is the impact of someone being terminated

5    within SEVIS?

6              MR. CARILLI:  I do not know --

7              THE COURT:  All right.  Mr. Carilli, that's fine --

8    Mr. Carilli, that's totally fine.  We're all going to stay on

9    the phone here.  You're going to go some other phone or you're

10   going to put yourself on mute.  And you're going to call your

11   client and you're going to ask.  And we're going to stay here

12   until you get an answer.

13             MR. CARILLI:  Yes, Your Honor.

14             THE COURT:  So, gentleman, you guys can hang back

15   and we'll hear from Mr. Carilli when he's done.  And I'm going

16   to stay on the bench while you get this done.  And if you

17   can't get someone on the phone.  Get the next person on the

18   phone.  Because I'm going to stay here until you get someone

19   on the phone.  I'm ordering you to get your client on the

20   phone.  So we're all going to stay here while you do that.

21             And you can put yourself on mute and turn yourself

22   off the video if you would like Mr. Carilli.

23             Gentleman, you guys can put yourselves off video if

24   you want to, just stay around in case we get back from him.

25   And Ms. White mute, please.  Turn off my video.

1              (Pause in the proceedings from 10:53 a.m. to 12:06

2    p.m.)

3              THE COURT:  Mr. Carilli, where are we?

4              MR. CARILLI:  Your Honor, I'm still waiting for a

5    response from the Agency, in terms of the practical effects of

6    changing the record in SEVIS to terminated.

7              THE COURT:  Can you explain to me please why it has

8    taken over an hour and I still don't have an answer, to what

9    must be the most obvious simple question that this case

10   presents as to what happens when someone gets taken off of

11   SEVIS?  I mean, you know, why there's a delay, right, Mr.

12   Carilli?  Do you want to tell me why there's a delay or do you

13   want to me to tell you why there's a delay?

14             MR. CARILLI:  Your Honor, I don't know why there's a

15   delay.

16             THE COURT:  Well, I'll tell you why there's a delay,

17   Mr. Carilli, because what happens when you take someone off of

18   SEVIS and you terminate them they lose their status and that's

19   not something you all want to tell the Court.  Now, why you

20   all don't want to tell the Court, I don't know.  But we're

21   going to get an answer to the question.

22             So I want agency counsel to stop whatever

23   conversations she's having or he's having right now and get on

24   the video so I can ask agency counsel what's going on.

25   Because we asked -- apparently agency counsel was on the phone

8

1    no later than 11:40 having this conversation.  And it's not a

2    25-minute answer.  So get agency counsel on the phone.  And

3    after we get agency counsel on the phone, if I'm not

4    satisfied, we're going to have the declarant Mr. Watson come

5    to my courtroom and testify today.  So get agency counsel on

6    the phone, please.

7            MR. CARILLI:  Yes, Your Honor.  Honor, excuse me,

8    before I go off video may I go off video to --

9            THE COURT:  Yeah.  Sure.  Of course.

10            MR. CARILLI:  Thank you, Your Honor.

11            (Pause in the proceedings from 12:08 p.m. to 12:19

12    p.m.)

13            THE COURT:  Mr. Carilli, what's going on?

14            MR. CARILLI:  Your Honor, I just forwarded the

15    invite to one of the agency counsel.  Agency counsel indicated

16    there was also going to be another individual that was going

17    to join.  So I have been waiting for that second name, but I

18    just forwarded it to the person that told me --

19            THE COURT:  Okay.  While we're waiting for them, is

20    the government's position that Mr. Patel's F-1 visa is in

21    effect or not in effect?

22            MR. CARILLI:  Mr. Patel's F-1 visa is no longer

23    valid.  So -- and I think there's a different genre between a

24    individual who has a valid visa which allows them to seek

25    admission into the United States versus when an individual has

1   lawful status after they have been admitted into the United

2   States.

3          THE COURT:  Okay.  Is he lawfully in the United

4   States right now?

5          MR. CARILLI:  The government's position is that he

6   has not -- ICE has not taken -- has not terminated his F-1

7   status.  And for ICE to be able to terminate his F-1 status,

8   they would have to put him in 1229a removal proceedings.

9          THE COURT:  Is he lawfully in the United States

10  right now, yes or no?

11         MR. CARILLI:  I'm not able to answer that question,

12  Your Honor.

13         THE COURT:  How are you not able to answer that

14  question?  What does that even mean?  He's either here legally

15  or he's not here legally.  You're the government's lawyer.  Is

16  he here legally?  I mean, how is Mr. Patel supposed to know if

17  he's here legally if you don't even know if he is here

18  legally?

19         MR. CARILLI:  He was lawfully admitted to the United

20  States --

21         THE COURT:  No, no, Mr. Carilli, there's a -- no, no

22  Mr. Carilli, there is a yes or no answer here.  We are not --

23  this is not Schrodinger's visa, either he's here legally or

24  he's not here legally.  If you cannot answer the question, you

25  have to explain to me why you cannot answer that question.

1              MR. CARILLI:  I cannot answer that question.  I have

2    talked to ICE as to whether or not they consider at this point

3    in time the individual, whether or not they are maintaining

4    lawful status.

5              THE COURT:  And what does ICE say to that?

6              MR. CARILLI:  I have not received a response, Your

7    Honor.

8              THE COURT:  Do you realize that this is Kafkaesque?

9    I've got two experienced immigration lawyers on behalf of a

10   client who is months away from graduation, who has done

11   nothing wrong, who has been terminated from a system that you

12   all keep telling me has no effect on his immigration status,

13   although that clearly is BS.  And now, his two very

14   experienced lawyers can't even tell him whether or not he's

15   here legally, because the Court can't tell him whether or not

16   he's here legally, because the government's counsel can't tell

17   him if he's here legally.

18             And you know what's going to happen when he gets

19   picked up?  He's going to be accused of being here illegally

20   in the United States because when he is picked up and put

21   through deportation proceedings, everyone's going to say he

22   was here illegally and he was obviously here illegally and he

23   should have known that.  And then some court down there is

24   going to say no, no, no, the Court up in D.C. asked and the

25   government said they didn't know.  And those lawyers, do you

1   know what they are going to do?  They're going to be like, I

2   don't know what that lawyer was thinking.

3          We are not going to do that here, Mr. Carilli.  That

4   is not happening in this courtroom.  We're going to get an

5   answer.  And if the answer somehow contradicts what is in your

6   brief, or what is in God willing no, Mr. Watson's declaration,

7   there are going to be serious consequences.  Where is your

8   agency counsel?

9          MR. CARILLI:  Will you allow me to confer with the

10  agency --

11          THE COURT:  No, you've been conferring with the

12  agency for -- I want the agency counsel on the phone, you sent

13  them the thing; right?

14          MR. CARILLI:  Your Honor, what I meant by confer was

15  please let me try and get them back on the phone to find out

16  why they have not joined the call.

17          THE COURT:  Fine.

18          MR. CARILLI:  That's what I meant by --

19          THE COURT:  Fine.

20          (Pause in the proceedings.)

21          MR. CARILLI:  Your Honor, agency counsel is joining

22  on the line.

23          THE COURT:  Plaintiff's counsel, is your client

24  allowed to go to classes right now?

25          MR. BROWN:  Your Honor, it is our client's position

1   that based off of ICE he cannot be in status and thus cannot

2   attend classes.

3          THE COURT:  Is anyone at the school preventing him

4   from going to classes?

5          MR. BROWN:  I don't think there's anybody physically

6   preventing him, no, Your Honor.

7          THE COURT:  All right.  Government counsel, I assume

8   while this is pending you are okay if he goes to classes?

9          MR. CARILLI:  I would need to confer with the Agency

10  about that, Your Honor.  I asked that specific question before

11  this hearing and did not receive a response.

12         THE COURT:  Is it they just don't respond to you or

13  they just don't give you an answer?

14         MR. CARILLI:  I have received that they don't have a

15  response to my question.  In other words, it's not a -- it is

16  not a they did not respond.  It's -- as the Agency counsel

17  just explained to me, when I asked him to join the link is he

18  indicated that those are operational decisions that are with

19  the client, with their client.

20         THE COURT:  Okay.  Well, then I want someone from

21  the client -- where is agency counsel?  How long does it take

22  to log on to a video?  We've been waiting for the agency

23  counsel now 20 minutes.

24             (Pause in the proceedings.)

25         MR. CARILLI:  Just communicated, Your Honor, that

1    he's trying to log in right now.

2         THE COURT:  Mr. Everly, could you please enter your

3    appearance.

4         THE CLERK:  Mr. Everly this is the courtroom deputy,

5    can you hear me, sir?  I can't hear you.

6         MR. EVERLY:  Can you hear me now?

7         THE COURT:  Mr. Everly, can you please enter your

8    appearance.

9         MR. EVERLY:  Yes.  MacKlin Keith Everly, agency

10   counsel for U.S. Immigration and Customs Enforcement.

11        THE COURT:  How long have you been agency counsel,

12   sir.

13        MR. EVERLY:  Little less than two years.

14        THE COURT:  Where were you before then?

15        MR. EVERLY:  I was with Progressive and

16   (indiscernible) company.

17        THE COURT:  All right.  Government counsel asked you

18   some questions today about Mr. Patel, sort of rather obvious

19   questions that I have asked government counsel.  He says he's

20   asked you and you said you can't -- you don't have an answer

21   for him because it was above your pay grade or with some

22   operational people.  So I'm going to ask the two questions and

23   there will be more.  And then we're going to get answers to

24   those questions, Mr. Everly, before we all get off the phone.

25   Am I understood?

14

1    MR. EVERLY:  I understand.  I understand, Your

2    Honor.  I will preface my responses with I won't have any

3    additional information --

4    THE COURT:  We're going to get additional

5    information, Mr. Everly, because you're going to tell me who

6    has that additional information and we're going to get that

7    person on the phone.  And if we have to, I'm going to get them

8    under oath.  All right?

9    MR. EVERLY:  Understood, Your Honor.

10   THE COURT:  The first question is, is Mr. Patel here

11   legally?  Is he lawfully in the United States?

12   MR. EVERLY:  Your Honor, since that's an operational

13   decision by my client, we're actively conferring with the

14   client, I don't have a response to provide at this time.  I

15   believe --

16   THE COURT:  Is Mr. Patel free to go to his classes

17   at Wisconsin?

18   MR. EVERLY:  I have to reiterate the same.  Same

19   response, Your Honor.

20   THE COURT:  Well, what's the effect of terminating

21   someone on SEVIS?  That's just a mechanical question, what's

22   the effect of terminating someone from SEVIS?

23   MR. EVERLY:  Again, Your Honor, that's an

24   operational --

25   THE COURT:  It's not an operational question,

1    Mr. Everly.  That is a mechanical question.  There is a policy

2    somewhere that says what the effect is, so tell me what the

3    effect is of terminating somebody from SEVIS.

4         MR. EVERLY:  Your Honor, I apologize, I do not have

5    the answer to the question.

6         THE COURT:  Okay.  Who has -- Mr. Everly, name me

7    the individual who has the answer to the first two questions

8    and then the third question.

9         MR. EVERLY:  Your Honor, all I can offer at this

10   point is that we have provided a declarant in this case --

11        THE COURT:  Yes, fine.  All right.  That's fine.

12   We're going to get Watson, Mr. Watson here under oath since

13   he's filed a declaration.  And if he doesn't give me the

14   answers that I need then we're going to get somebody else.

15   Because Mr. Watson's declaration doesn't tell me if Mr. Patel

16   is here legally.  It doesn't tell me if Mr. Patel can go to

17   classes.  And it doesn't tell me what the practical effect is

18   of terminating someone from SEVIS, but if we want to start

19   with Mr. Watson under oath subject to penalty of perjury, I'm

20   very happy to do that.  Is there anybody else other than Mr.

21   Watson, who can give me answers to those questions?  Let me

22   put it to you this way, who have you been communicating with

23   at the agency?

24        MR. EVERLY:  I've been communicating with other

25   agency counsel.

1          THE COURT:  Who?  Names, names, Mr. Everly, who?

2          I am ordering you to tell me who have you been

3     communicating with.  Now if you want to violate a court order

4     by stalling --

5          MR. EVERLY:  Your Honor, I have no desire --

6          THE COURT:  Okay.  Great.  Then tell me the name of

7     the person that you've been communicating with.

8          MR. EVERLY:  I have been communicating with -- and I

9     will provide names, I'm just prefacing, I've been

10    communicating with individuals from our National Security Law

11    Division, primarily deputy chief Nina Gleiberman and the chief

12    of the division also Kate Briscoe.  And also in communication

13    with my management deputy chief -- excuse me, deputy chief

14    Christa Leash and Chief Henry (indiscernible.)

15         THE COURT:  Okay.  Of those four people who is most

16    likely to have an answer to my questions.

17         MR. EVERLY:  Unfortunately, they are all in the same

18    position as I am.

19         THE COURT:  Who are they communicating with?

20         MR. EVERLY:  They're communicating with the

21    client --

22         THE COURT:  Who is the client?  Who at the client is

23    the person who's making these decisions or can give me an

24    answer?

25         MR. EVERLY:  We've been working with the

1    declarant --

2              THE COURT:  All right.  Fine.  Fine.  Get Mr. Watson

3    on the phone right now.  I'm ordering him to appear to this

4    hearing.  And he's going to be put under oath.

5              MR. EVERLY:  Understood, Your Honor.  I will take

6    those steps, if I can go on hold for a moment while I go do

7    that.

8              THE COURT:  Yup.

9              MR. EVERLY:  Thank you.

10             (Pause in the proceedings.)

11             THE COURT:  I'm going to take a ten minute recess

12   I'm going to be back here at 12:45.  Mr. Carilli, Mr. Watson

13   had better be on this phone when we get back, are we

14   understood?

15             MR. CARILLI:  Yes, Your Honor.

16             THE COURT:  All right.

17             (A recess was taken from 12:35 p.m. to 12:45 p.m.)

18             THE COURT:  All right.  Do we have Mr. Watson?

19             MR. EVERLY:  Your Honor, we're in active contact

20   with him and we're working to get him here as soon as we can.

21   If we could just have 10 or 15 more minutes to accomplish

22   that, I would really appreciate that.

23             THE COURT:  All right.  I'm going to give you until

24   1:15.

25             MR. EVERLY:  Thank you, Your Honor.

18

1          THE COURT:  Have him here by then, all right?

2          MR. EVERLY:  Yes, Your Honor.

3          THE COURT:  If something happens and you can't get

4     him here by 1:15, alert my law clerk we'll all get back on

5     with the video.  We'll figure out where to go from there, but

6     it's not going to be pretty.  Okay?

7          MR. EVERLY:  Yes, Your Honor.  Thank you.

8          THE COURT:  Thank you.

9          (A recess was taken from 12:47 p.m. to 1:15 p.m.)

10          THE COURT:  All right.  Mr. Watson, welcome.  You're

11     on mute, sir.

12          MR. WATSON:  My apologies.  Good afternoon, Your

13     Honor.

14          THE COURT:  No worries.  All right.  So you filed a

15     declaration on behalf of the government in this case.  And I

16     have some questions for you about that declaration.  I'm not

17     going to put you under oath at this time, but if I feel like

18     I'm getting the run around, which I hope I will not, I will

19     put you under oath.  Okay?

20          MR. WATSON:  Yes, ma'am.

21          THE COURT:  All right.  So first of all, can you

22     explain to me what the practical effect is of terminating

23     someone on SEVIS?  How do I say that by the way, SEVIS, SEVIS?

24          MR. WATSON:  SEVIS is appropriate.

25          THE COURT:  Okay.  So what happens, what's the

Christine T. Asif, RPR, FCRR, Federal Official Court Reporter

1   effect of terminating someone on SEVIS?

2          MR. WATSON:  So it does not terminate their

3   nonimmigrant status, but what it does is it essentially raises

4   a flag as it relates to the student and their participation in

5   the student and exchange visitor program.

6          THE COURT:  Okay.  And so what happens if that flag

7   is raised, what's the effect of the flag raised?  First of

8   all, who does it raise a flag to, ICE?

9          MR. WATSON:  Well, it raises a flag to a designated

10  school official.

11          THE COURT:  Okay.

12          MR. WATSON:  Because they have access to the student

13  and exchange visitor information system.  So a designated

14  school official works with ICE in managing the student and

15  exchange visitor program to ensure compliance with applicable

16  code of federal regulations as it relates to nonimmigrant

17  students studying in the United States.  So it alerts the DSO,

18  the designated school official or the PSO as to that matter.

19          THE COURT:  Okay.  And so that flag tells the

20  official what?  What does the official take from that flag?

21  I'm the school official, I have a flag on Mr. Patel, what do I

22  do now?

23          MR. WATSON:  So it raises a -- it raises a gap, if

24  you will, a question about the student, and compliance as it

25  relates to the terms of their -- as it relates to the terms of

1    their participation in the program.

2          THE COURT:  Okay.  And how does that question get

3    answered?  What question is asked, if they're in compliance?

4          MR. WATSON:  Well, the question can be what

5    happened, what occurred.  So there can be a notation in the

6    record saying what happened, or that someone may or may not be

7    in compliance.

8          THE COURT:  Okay.  So I'm -- so I'm the school

9    official, and I have Mr. Patel's transcripts and he's attended

10   all his classes.  And so far as I, the school official, know

11   he's done everything he's supposed to do.  I see that -- I

12   mean, I don't know if I see this from SEVIS, but I see from

13   somewhere that he got arrested -- or he got pulled over for

14   driving too fast in Texas, but that the charges were

15   dismissed.  And so now am I satisfied that he's in compliance,

16   is everything kosher?  If the answer to that is yes, what do I

17   do next?

18         MR. WATSON:  So great question.  And here's another

19   novelty as well too, designated school officials can also

20   reach out to field representatives.

21         THE COURT:  Field representatives for -- I'm sorry,

22   field representatives for ICE?

23         MR. WATSON:  Yes, ma'am.

24         THE COURT:  Okay.

25         THE WITNESS:  And there's a hand -- there's a

1    working relationship there as to compliance and oversight with

2    the program.  So questions can be raised in that dialogue and

3    discussion.  So like in this instance with the case being

4    dismissed, the question would be then what would the next

5    steps be in terms of in this case the defendant.  So with

6    those charges being dismissed the question then becomes is

7    there a matter there that requires further review.

8             THE COURT:  Okay.

9             MR. WATSON:  As it relates to immigration.

10            THE COURT:  All right.  So let's say you're the

11   field representative for Wisconsin, and I'm -- you're the

12   field representative that there was cause for school officials

13   to contact, you and I have a good working relationship.  I'm

14   the school official in Wisconsin.  I get a notice, a flag that

15   Mr. Patel has been terminated on SEVIS.  I call you and I say

16   what's this flag about?  I've looked at his transcript I've

17   talked to his professors, he's in compliance with all our

18   obligations.  Either I know or you tell me that he had been

19   arrested or pulled over for reckless -- for driving too fast

20   in Texas, but the charges were dismissed.  And so then you --

21   so I say, okay, so now you field representative say what to

22   me?

23            MR. WATSON:  The field representative in that

24   instance can say, well, based on this matter, as it relates to

25   the arrest, the question then becomes is there shall I say a

22

1    continuing requirement or a situation where this can or should

2    be revisited.  So what's interesting to note --

3              THE COURT:  I'm sorry, if what can be revisited?

4    His termination on SEVIS or his --

5              MR. WATSON:  That's correct.

6              THE COURT:  Okay.  All right.

7              MR. WATSON:  Yes, that's correct.  His termination

8    in SEVIS.  So the question then becomes by what means would

9    this person seek to do so, because what's interesting to note

10   about SEVIS is that there's also an ability for, if I'm

11   correct, CIS, Citizenship and Immigration Services to also do

12   the same as well too.

13             So this is a novelty, I'd like to note, in this

14   instance, where it was turned off pursuant to, I think what's

15   in the declaration, collaboration with State as to criminality

16   of nonimmigrant student studying in the United States.  So

17   pursuant to --

18             THE COURT:  Well, to be clear -- to be clear,

19   though, Mr. Watson, he's not a criminal.  He hasn't been

20   charged of anything, much less found guilty of anything, but I

21   understand your point.

22             But so let -- so let me ask you this, right now as

23   of this moment, is Mr. Patel legally in the United States?

24             MR. WATSON:  In terms of his status, this action in

25   itself, it doesn't terminate his nonimmigrant status at this

23

1    point.  It doesn't.

2            THE COURT:  So he's legally in the U.S.  So the

3    answer to my question is yes, he's legally in the United

4    States, as of this moment?

5            MR. WATSON:  I can't say that he's legally in the

6    United States.

7            THE COURT:  Who can tell me if he's legally in the

8    United States?

9            MR. WATSON:  So I would say right now the Department

10   of State by way of a nonimmigrant visa being issued would be

11   the starting point.  Now, if the visa has been revoked or it

12   has expired, then the question becomes whether or not duration

13   of status would apply.

14           THE COURT:  Okay.  But let me -- well, I'm happy to

15   get someone from State on the phone with us, but before I do

16   that, I have your declaration -- I imagine you filed a lot of

17   these declarations recently, right, because apparently somehow

18   all this has happened, like a lot of dozens of people have

19   been terminated from SEVIS, this isn't the only declaration

20   you've filed; right?

21           MR. WATSON:  Yes, ma'am.

22           THE COURT:  Okay.  All right.  Well, for this one in

23   particular, I don't know if you have it in front of you, but

24   in paragraph 8, and this is for Akshar Patel, if I go to

25   paragraph 8 it says, on April 2nd, 2025, CTLD received

1   communications from the Department of State indicating that

2   Patel did not have a valid visa and requesting that the SEVIS

3   record be terminated.  Was that -- I didn't -- are plaintiff's

4   counsel aware that his -- that State apparently terminated his

5   visa?

6           MR. BROWN:  Your Honor, I don't believe his visa is

7   the issue we're challenging, because he had a B visa and then

8   changed his status to F-1.  So he is not on that B visa.  I

9   can double -- I'm going to double check right now.

10          THE COURT:  But he's on a valid F-1 visa.

11          MR. BROWN:  He has valid F-1 status until this

12  happened, Your Honor.

13          MR. CARILLI:  Your Honor, if I may?

14          THE COURT:  Yeah, sure, please.

15          MR. CARILLI:  Yes, Your Honor.  Plaintiff initially,

16  as I understand from the Department of State, plaintiff

17  initially was issued an H-4 visa based on his -- based on his

18  mother coming in on an H -- I believe an H-1B.

19          THE COURT:  Okay.

20          MR. CARILLI:  And he was admitted into the country

21  on that H-4 visa in an H-4 status.  He then sought an I

22  believe adjusted status to that of an F status, and then is in

23  the country on an F status.

24          THE COURT:  Okay.  So then Mr. -- I'm sorry, sir.

25          MR. CARILLI:  And the H-4 visa validity period has

1    expired, which routinely happens for -- depending on how

2    individuals come into the country with a nonimmigrant

3    category, their visa validity period will be different than

4    the stamp that is provided on their I-94, which is their entry

5    document, which the periods may be different or in a lot of

6    cases individuals will be admitted into the United States in a

7    duration of status.

8              So, for example, Your Honor, if you've seen H-1B

9    case where is an individual says they've been in the United

10   States, they've been working but they had to leave for a

11   family issue or they have to leave and depart the United

12   States to get a new visa so that they can come and go from the

13   United States on that H-1B, that's why there's a different

14   between those two things.  And again the visa is just an

15   admission document, but also I would note that visa

16   revocations can form some basis for deportability under 327.

17             THE COURT:  Okay.  Thank you, sir.

18             So this April 2nd, 2025, communication that you

19   received from the State Department, Mr. Watson, do you have it

20   available to you?  I mean, was that a mistake by the State

21   Department that he was on an H-1 visa and he shouldn't be

22   terminated, but State just didn't pick up he was here validly

23   as a student.  I'm trying to figure out why State communicated

24   with you to have this record terminated?

25             MR. WATSON:  So, Your Honor, I don't have that

1     record in front of me.  And we are actually rescrubbing these

2     lists, because to the point that the gentleman that just spoke

3     pointed out, there are some of those nuances that have come

4     about.  So I don't have the information in front of me.  And I

5     believe State is re-examining various cases in a quality

6     control measure as well.

7          THE COURT:  Okay.  So let me put it to you this way.

8     So far as I can understand this kid has done everything that

9     he's supposed to have done.  And it seems like there's been

10    some miscommunication or something has happened.  And I'm

11    happy for State to do quality control.  I'm happy for you to

12    follow up on this and other individuals.  But what I want

13    coming out of this hearing is to at least either order

14    either -- I want this student to be able to go to class and

15    not get picked up by ICE.

16          Now, we can do that by, Mr. Watson, you agreeing to

17    that, or someone agreeing to that, and the plaintiffs going

18    and talking to Wisconsin people and saying he can go to

19    classes.  And if the Wisconsin person wants to talk to the

20    field representative, that's fine.  And if I need to put this

21    in an order, I will.  And I want him not to be picked up by

22    ICE.

23          Now, we can do this one of two ways.  One, we can

24    all agree that this is what's going to happen and Mr. Patel,

25    his lawyers can tell him legitimately that he can go to class,

```
 1    or I can enter a temporary restraining order saying that he

 2    can go to class and that he can't be deported.  And since

 3    everything I've heard from you all is that that seems not

 4    inconsistent with what you all know as of this moment, not

 5    something that you all would challenge.

 6              So Mr. Carilli, how should we proceed here?

 7              MR. CARILLI:  Your Honor, I would comment that under

 8    8 U.S.C. 1252(g), which addresses the jurisdiction of courts

 9    to be able to over the decision by the Department of Homeland

10    Security to initiate removal proceedings and stripped that

11    jurisdiction from district courts.  And so for any matters

12    arising from a decision as to whether or not to place an

13    individual in removal proceedings, the Congress has said that

14    there's no jurisdiction for district courts in those

15    decisions.

16              THE COURT:  All right.  Well, let's take the classes

17    first.  We can all agree that I can order him to be allowed to

18    go to class as a TRO for now; right?  Mr. Carilli?

19              MR. CARILLI:  Your Honor, if you just give me a

20    moment to look through the relief that has been sought in the

21    TRO, I just need -- I need a moment to ensure that I -- and I

22    also, I mean, that's a -- you're asking me for potentially

23    something that is beyond the scope of my authority.

24              THE COURT:  Okay.  Here's what we're going to do,

25    Mr. Carilli, because I understand you guys are in a tough
```

1    spot, because you have a bunch of these cases and you don't

2    want a bunch of bad case law.  I get it.  One way or the other

3    this kid is going back to school today if he has classes,

4    tomorrow if he has classes tomorrow.  And if ICE touches this

5    guy there's going to be repercussions.

6            So now we can do this with you all agreeing that

7    amongst yourselves, and if anything happens you all bring it

8    to my attention, or we can do it through a subsequent hearing

9    this afternoon where I enter a TRO order.  I would rather the

10   former.  And I assume you guys are fine with both of those, at

11   least agreeing with plaintiffs to those because -- or just

12   some agreement that if ICE is going to pick up the guy that,

13   you know, they have 24 hours notice so that they can seek

14   emergency relief, I mean, we can just do that, right.  He can

15   go to class.  And if ICE is going to do anything with him,

16   which I don't suspect they are going to, the plaintiffs get 24

17   hours notice.  All right.

18           You guys come to that agreement, make life easy for

19   everyone, or you can continue to deal with me, Mr. Carilli.

20   And I will not stop with you or Mr. Everly or Mr. Watson,

21   we're going to continue down the road.  All right?

22           MR. CARILLI:  Yes, Your Honor.

23           THE COURT:  All right.  So I'm going to set another

24   hearing for 4:30, but you guys tell me that we don't need it.

25           Mr. Watson, do you have any idea how long State is

1    going to take with this quality review?

2              MR. WATSON:  Ma'am, I can tell you that they are

3    proceeding in earnest to do so, with the level of effort

4    they've made great strides in progress in coordination with my

5    team.

6              THE COURT:  Okay.

7              MR. WATSON:  So ma'am, I can emphasize to you that

8    sooner than better is occurring, ma'am.

9              THE COURT:  Perfect.  All right.  So it seems like,

10   Mr. Carilli, since my hope -- my strong hope is that State is

11   going to realize that this guy was on an F-1 visa and should

12   not have been terminated from SEVIS, my strong hope is that

13   that happens, that this was all an unfortunate mix up, that I

14   don't have to enter a TRO.  So I'm hopeful Mr. Carilli that

15   you and plaintiffs can figure something out amongst

16   yourselves.  Knowing, of course, that if anything happens,

17   plaintiff's lawyers, you can always seek relief from me.

18             Plaintiff's lawyers, do not make Mr. Carilli's life

19   miserable here.  Let's just practically try to get this guy

20   back to class and at least settled in the U.S. until we have

21   final determination of something.  Okay?

22             So I'm setting a hearing for 4:30 tentatively.

23   Hopefully, you all will tell me that we don't need it.

24             Mr. Watson, I understand that you're incredibly

25   busy.  And the last thing that you ever want to hear is

```
1    lawyers saying I need you on the phone right now with the

2    Court.  So I appreciate you getting on the phone.  And I

3    appreciate you giving me this information.  Thank you,

4    everybody.

5              MR. WATSON:  Thank you, ma'am.

6              MR. BROWN:  Thank you, Your Honor.

7              (A recess was taken from 1:33 p.m. to 4:31 p.m.)

8              THE CLERK:  Your Honor, recalling civil action

9    25-1096, Akshar Patel versus Todd M. Lyons.

10             Will the parties please identify themselves for the

11   record, starting with plaintiff's counsel.

12             MR. BANIAS:  I apologize, Brad Banias.  And I

13   believe Steve Brown will be joining us for the plaintiffs.

14             THE COURT:  All right.  Mr. Carilli.

15             MR. CARILLI:  Good afternoon, Your Honor.  Joseph

16   Carilli on behalf of the government.  And I'm expecting agency

17   counsel to join.

18             THE COURT:  All right.  Where are we gentleman?

19             MR. CARILLI:  Your Honor, the plaintiffs counsel and

20   I discussed a possible resolution.  I spoke to the agency and

21   the agency is not willing to reach a resolution with

22   plaintiff's counsel.

23             THE COURT:  Why isn't the agency willing to reach a

24   resolution?

25             MR. CARILLI:  They said at this point in time they
```

1    are not willing to do so.

2              THE COURT:  Mr. Everly can you please explain to me

3    why your agency is not willing to reach a resolution in a case

4    where they can't even tell me if the plaintiff is legally in

5    the United States, and it appears that by all events someone

6    at State and ICE screwed up here, and apparently in a lot of

7    other cases?  That's to you, Mr. Everly.

8              MR. EVERLY:  I apologize, Your Honor, I just logged

9    in, I thought you were addressing --

10             THE COURT:  No, I'm addressing you.  I want to know

11   why the Agency is not willing to reach a resolution when it

12   appears by all accounts that there was a massive screw up at

13   State, not just in this case, but in a lot of other cases,

14   where individuals who are in this country legally, have been

15   going to school, have been doing everything that they're

16   supposed to be doing, are now getting notices that their SEVIS

17   has been terminated when it appears it shouldn't have been.

18   And they're now having to hire lawyers.  And they have hired

19   lawyers for which they're spending money and now those lawyers

20   are in federal court.

21             And this morning I asked the most straight-forward

22   question one could ask, which is what is the effect of someone

23   being terminated on SEVIS?  And even though the government had

24   represented that it has no effect on an individual's

25   immigration status, no one could tell me what the effect of

1    having been terminated in SEVIS even is until I got you on the

2    phone and then I got Mr. Watson on the phone.  And I still, to

3    this day, do not have an answer from the government as to

4    whether or not the individual is here legally or not legally.

5           We all had what I thought was a very fair, very

6    simple process moving forward.  ICE and the plaintiffs would

7    work out an agreement where the plaintiff could continue to go

8    to school.  And since no one is able to tell him that he's

9    here illegally, he would stay in the country.  Now, what is

10   the problem with that resolution from your agency's

11   perspective?

12          MR. EVERLY:  Your Honor, all I can offer at this

13   time is my leadership is not able to provide a response at

14   this time.

15          THE COURT:  Who at your leadership, because we're

16   going to get that person on the phone.

17          MR. CARILLI:  Your Honor, if I may?

18          THE COURT:  Mr. Carilli.

19          MR. CARILLI:  From the government's perspective, we

20   believe that the Court -- the government has stated its

21   position in its papers and that --

22          THE COURT:  Yeah, but your statement in your papers

23   is not supported by the evidence, in fact, it's contradicted

24   by the evidence.

25          MR. CARILLI:  Your Honor, I disagree --

1          THE COURT:  And you can't even tell me what the

2     government's position is.  Tell me right now, right here, Mr.

3     Carilli, is the plaintiff in the country legally or illegally?

4          MR. CARILLI:  The government, as the individual

5     witness appeared before the Court --

6          THE COURT:  Mr. Carilli -- Mr. Carilli, do not

7     lecture me.  Do not lecture me.  I'm well aware of what has

8     happened in this case.  Is the individual here legally or

9     illegally?

10          MR. CARILLI:  That is an operational decision --

11          THE COURT:  Mr. Carilli -- Mr. Carilli --

12          MR. CARILLI:  I can't answer that.

13          THE COURT:  You can't answer that because the

14     government doesn't know or a decision hasn't been made?

15          It is outrageous, it is outra- -- Mr. Carilli, no,

16     stop.  It is outrageous that we have an individual who is

17     being told that he has been terminated in SEVIS, which by all

18     accounts is because your witness said that the State

19     Department told him that he was not here on a valid visa, even

20     though he is here on a valid visa.  And now, the government is

21     not able to say if he's here legally or illegally.  That is

22     either willful -- it is either willful or incompetent, neither

23     of which are good.

24          MR. CARILLI:  Your Honor, I would first state that

25     what the declarant stated when I stated earlier about whether

the individual is here on a valid visa, as we stated the

validity period of his visa has expired.

THE COURT:  Of the H visa.  Of the H visa.  That was

the validity of the H visa.  And the problem was that

apparently State didn't pick up that he's been moved to an F-1

visa, or maybe State has picked up that he's been moved to an

F-1 visa, we don't know, because apparently State made a

number of mistakes and now it's trying to correct them.

What I find particularly outrageous, Mr. Carilli and

Mr. Everly, is that we are here with the government of the

United States not able to tell a federal court whether a

plaintiff is here legally or illegally.  Even though that

you've had this case since, when did you all file this,

Mr. Brown, Friday, Thursday, when did you all file this?

MR. BANIAS:  Last Wednesday, Your Honor.

THE COURT:  Last Wednesday.  We're at a week and the

United States Government can't tell me whether or not an

individual's in the country legally or illegally.  You can't

even tell me why he's been terminated from SEVIS.

Here's what we're doing, Mr. Carilli, I'm entering a

TRO.  I find that there is potential irreparable injury, one,

in whether or not he'll be able to go to school.  And two,

whether he might be picked up at any moment mistakenly by ICE,

put on a plane and sent somewhere to never be heard from

again.  And while that might seem like an exaggeration, we all

1   now know that's not an exaggeration and it's, in fact, quite

2   possible.

3          So I'm entering a TRO.  He's going to be put back on

4   SEVIS in active status today within the hour.  And that TRO is

5   going to be in effect until we have briefing on this issue,

6   which you all tell me what briefing schedule you want.

7          And in that briefing, Mr. Carilli, the government is

8   going to tell me why he was terminated from SEVIS, whether

9   that was appropriate or not, and whether he's in the country

10  here legally.  Because I find that it is very likely that

11  plaintiffs are going to be able to prove that this was done

12  arbitrarily and capriciously.  And, you know, why I find it's

13  likely that they're able to prove that, because you all can't

14  tell me otherwise.

15         So what briefing schedule do you all want and what

16  hearing time do you want?

17         MR. CARILLI:  Your Honor, I would defer to

18  plaintiffs, if they would like to supplement their motion

19  first before -- and then I can speak as to when the government

20  would like to file a response to that.

21         THE COURT:  Well, the government is filing some

22  response, because I want these questions answered.

23         Mr. Brown, what schedule do you guys want?  I don't

24  want the TRO holding out too long.

25         MR. BANIAS:  Your Honor, I apologize.  Mr. Brad

1    Banias for the plaintiffs.  We are happy to file by Friday or

2    Monday, Monday preferably, only because I have another hearing

3    tomorrow.  But Friday would be fine, Your Honor, we're happy

4    to move as quickly as we can.  And we'd like to amend our

5    briefing to address these issues head on.

6                THE COURT:  All right.  Please also address the

7    finality of the issues.  So that would be -- that would be

8    Friday the -- Monday the 21st?

9                THE CLERK:  Yes, Your Honor.

10               MR. BANIAS:  Yes, Your Honor.  That would be

11   great.

12               THE COURT:  Mr. Carilli, how much time would you

13   like to respond?

14               MR. CARILLI:  The government would like the time

15   that's permitted under the local rules, one week, so the

16   28th.

17               THE COURT:  All right.  And then we will have the

18   TRO hearing on the 29th.  Mr. Watson is going to be in my

19   courtroom.  We'll have the PI hearing on the 29th.  Mr.

20   Carilli, Mr. Everly, both of you are going to be in my

21   courtroom, as is Mr. Watson, as is any other declarant you

22   want.  And I want witness in this courtroom who can tell me

23   whether the plaintiff is here legally or illegally.  Are we

24   clear, Mr. Carilli?  That's going to be in my order.

25               MR. CARILLI:  Yes, Your Honor.

1          THE COURT:  All right.  Mr. Banias, Mr. Brown, I

2     suggest you all be here in person too.  If you can't -- if you

3     can't you can appear by video, but I suggest one of you be

4     here in person.

5          Plaintiffs lawyers, I don't know if I have the power

6     to award attorney's fees in this case, but if I do you better

7     bring that to my attention, because if I find that the

8     government has been screwing around on this, we're going to

9     get into it.  All right.  Obviously, if I can't award fees, I

10    can't, but -- and maybe the government will tell me that I've

11    been wrong all along and, in fact, this wasn't arbitrary and

12    capricious and there was actually a reason that all this

13    happened and just nobody knows today, you know, I'll be the

14    first to say the government was right.

15         But right now what I'm seeing is that the government

16    is doing things at a very fast pace without much regard to the

17    effect it actually has on human being's lives.  And the fact

18    that this student, who is months from graduation, is now

19    having to pay two lawyers if not more to find out whether or

20    not he's even in the country legally, which is frankly beyond

21    belief at this point.  But we will be here.

22         You guys, Mr. Banias, Mr. Carilli, I understand you

23    guys are coming up with TRO language, come up with agreement

24    for TRO language in this case that's similar.  I want him back

25    on SEVIS though.

1           Mr. Everly, how soon can that happen?

2           MR. CARILLI:  Your Honor, I will have to reach out

3   to those who can reinstate it, but it will be done as quickly

4   as possible.

5           THE COURT:  All right.  If it's not done, Mr.

6   Banias, Mr. Brown, we're going to get into contempt issue,

7   because that's an order of the court.  Are we clear?  Is

8   everyone clear on that?  Is there any lack of clarification on

9   what I have ordered with respect to him being put back on

10  active in SEVIS immediately.

11          MR. CARILLI:  Your Honor, no.

12          THE COURT:  All right.  Great.  You guys come up

13  with TRO language.  I know that you guys had until 10:00 a.m.

14  tomorrow for Judge Walton.  If you guys need until 10:00 a.m.

15  tomorrow that's fine.  I want him put back on SEVIS as quickly

16  as possible.  Are we all clear?

17          MR. CARILLI:  Yes, Your Honor.

18          MR. BANIAS:  Yes, Your Honor.

19          THE COURT:  Mr. Carilli, I know that this is not

20  your fault.  I know that you're just doing what you can.

21  Mr. Everly, I assume that you're doing what you can.  But I'm

22  not playing games.  I'm not going to be jerked around by

23  anyone in your leadership.  It's not going to happen.  Are we

24  clear on that?

25          MR. CARILLI:  Yes, Your Honor.

```
1              THE COURT:  Mr. Everly?

2              MR. EVERLY:  Yes, Your Honor.

3              THE COURT:  I would suggest that you let your

4    leadership at agency and Mr. Watson, who I found to be

5    forthright today at least, know that we're done playing games.

6    I want answers.  I want to get this settled.  If this was

7    arbitrary and capricious, I'm going to say that.  If there was

8    a reason why it happened then we'll get into that too, and

9    I'll obviously listen for it, right.  But I'm not going to get

10   here on 29th and have a response of I don't have an answer

11   from my client.  Are we understood?  Mr. Everly, are you

12   understood that we're not going to get here on the 29th with

13   anyone saying to me I don't have an answer from my client?

14             MR. EVERLY:  I understand, Your Honor.

15             THE COURT:  All right.  Thank you.

16             (The proceedings were concluded at 4:44 p.m.)

17

18             I, Christine Asif, RPR, FCRR, do hereby certify that
     the foregoing is a correct transcript from the stenographic
19   record of proceedings in the above-entitled matter.

20              _____/s/_____
                      Christine T. Asif
21                  Official Court Reporter

22

23

24

25
```

< Dates >.
April 2nd,
    2025, 23:25,
    25:18.
.
.
< 0 >.
00 38:13,
    38:14.
06 7:1.
08 8:11.
.
.
< 1 >.
1 17:24, 18:4,
    18:9, 30:7.
10 7:1, 17:21,
    38:13,
    38:14.
10333 1:24.
1050 1:24.
10:45 a.m.
    1:13.
11 8:1.
12 7:1, 8:11,
    17:12, 17:17,
    18:9.
1229a 9:8.
1252(g 27:8.
1372 3:10,
    3:11.
15 17:21,
    17:24, 18:4,
    18:9.
19 8:11.
.
.
< 2 >.
20 12:23.
20001 1:36,
    1:44.
202 1:45.
2025 1:11.
21st 36:8.
24 28:13,
    28:16.
25-1096 2:2,
    30:9.
25-1096-ACR
    1:6.

25-minute
    8:2.
28th 36:16.
29403 1:30.
29th 36:18,
    36:19, 39:10,
    39:12.
.
.
< 3 >.
30 28:24,
    29:22.
31 30:7.
327 25:16.
33 30:7.
333 1:43.
35 17:17.
354-3247
    1:45.
.
.
< 4 >.
4 28:24, 29:22,
    30:7,
    39:16.
40 2:25, 8:1.
44 39:16.
45 17:12,
    17:17.
47 18:9.
.
.
< 5 >.
53 7:1.
.
.
< 6 >.
601 1:35.
602 1:29.
.
.
< 7 >.
77042 1:25.
.
.
< 8 >.
8 3:9, 23:24,
    23:25,
    27:8.
.

.
< 9 >.
9/11 3:12.
_____/s/___
    _____
    39:22.
.
.
< A >.
A. 1:22.
a.m. 7:1,
    38:13,
    38:14.
ability
    22:10.
able 3:12,
    3:18, 9:7,
    9:11, 9:13,
    26:14, 27:9,
    32:8, 32:13,
    33:21, 34:11,
    34:22, 35:11,
    35:13.
above 13:21.
above-entitled
    39:20.
access 19:12.
accomplish
    17:21.
accounts 31:12,
    33:18.
accused
    10:19.
action 2:2,
    22:24,
    30:8.
active 4:3,
    4:5, 4:7,
    4:20, 5:2,
    5:8, 5:11,
    17:19, 35:4,
    38:10.
actively
    14:13.
actually 2:13,
    2:15, 26:1,
    37:12,
    37:17.
additional
    14:3, 14:4,

14:6.
address 36:5,
    36:6.
addresses
    27:8.
addressing
    31:9,
    31:10.
adjusted
    24:22.
admission 8:25,
    25:15.
admitted 9:1,
    9:19, 24:20,
    25:6.
afternoon
    18:12, 28:9,
    30:15.
Agency 7:5,
    7:22, 7:24,
    7:25, 8:2,
    8:3, 8:5,
    8:15, 11:8,
    11:10, 11:12,
    11:21, 12:9,
    12:16, 12:21,
    12:22, 13:9,
    13:11, 15:23,
    15:25, 30:16,
    30:20, 30:21,
    30:23, 31:3,
    31:11, 32:10,
    39:4.
agree 26:24,
    27:17.
agreeing 26:16,
    26:17, 28:6,
    28:11.
agreement
    28:12, 28:18,
    32:7,
    37:23.
Akshar 2:2,
    23:24,
    30:9.
AKSHAR PATEL
    1:5.
alert 18:4.
alerts 19:17.
allow 11:9.

allowed 11:24,
27:17.
allows 4:3,
8:24.
although
10:13.
amend 36:4.
amongst 28:7,
29:15.
Ana C. Reyes
1:17.
Andre 1:39.
answer 5:13,
5:15, 5:16,
5:17, 6:2,
6:12, 7:8,
7:21, 8:2,
9:11, 9:13,
9:22, 9:24,
9:25, 10:1,
11:5, 12:13,
13:20, 15:5,
15:7, 16:16,
16:24, 20:16,
23:3, 32:3,
33:12, 33:13,
39:10,
39:13.
answered 20:3,
35:22.
answers 13:23,
15:14, 15:21,
39:6.
anybody 12:5,
15:20.
apologies
18:12.
apologize 15:4,
30:12, 31:8,
35:25.
apparently
7:25, 23:17,
24:4, 31:6,
34:5, 34:7.
appear 17:3,
37:3.
appearance
13:3, 13:8.
APPEARANCES
1:20.

appeared
33:5.
appears 31:5,
31:12,
31:17.
applicable
19:15.
apply 23:13.
appreciate
17:22, 30:2,
30:3.
appropriate
18:24,
35:9.
April 16
1:11.
arbitrarily
35:12.
arbitrary
37:11,
39:7.
argument 5:2,
5:4.
arising
27:12.
around 6:2,
6:24, 18:18,
37:8,
38:22.
arrest 21:25.
arrested 20:13,
21:19.
Asif 1:41,
39:18,
39:23.
assume 12:7,
28:10,
38:21.
attend 12:2.
attended
20:9.
attention 28:8,
37:7.
Attorney 1:33,
37:6.
authority
27:23.
automatically
5:3.
available

25:20.
Avenue 1:24,
1:29, 1:43.
award 37:6,
37:9.
aware 24:4,
33:7.
away 10:10.
.
.
< B >.
B. 1:27.
back 4:20,
4:22, 5:8,
6:14, 6:24,
11:15, 17:12,
17:13, 18:4,
28:3, 29:20,
35:3, 37:24,
38:9,
38:15.
bad 28:2.
Banias 1:27,
1:28, 2:7,
30:12, 34:15,
36:1, 37:1,
37:22,
38:6.
based 12:1,
21:24,
24:17.
basis 25:16.
becomes 21:6,
21:25, 22:8,
23:12.
behalf 10:9,
18:15,
30:16.
belief 37:21.
believe 14:15,
24:6, 24:18,
24:22, 26:5,
30:13,
32:20.
bench 6:16.
better 3:3,
17:13, 29:8,
37:6.
beyond 27:23,
37:20.

Brad 2:7,
30:12,
35:25.
Bradley 1:27.
brief 11:6.
briefing 35:5,
35:6, 35:7,
35:15,
36:5.
bring 28:7,
37:7.
Briscoe
16:12.
Brown 1:22,
1:23, 2:6,
30:13, 34:14,
35:23, 37:1,
38:6.
BS 10:13.
bunch 28:1,
28:2.
busy 29:25.
.
.
< C >.
C. 1:12, 1:23,
1:44, 3:9,
10:24,
27:8.
call 5:25,
6:10, 11:16,
21:15.
canceling 5:4,
5:24.
cancels 5:3.
capricious
37:12,
39:7.
capriciously
35:12.
case 5:23, 6:3,
6:24, 7:9,
15:10, 18:15,
21:3, 21:5,
25:9, 28:2,
31:3, 31:13,
33:8, 34:13,
37:6,
37:24.
cases 25:6,

26:5, 28:1,
31:7,
31:13.
categories
4:3.
category
25:3.
cause 21:12.
certify
39:18.
challenge
27:5.
challenging
24:7.
change 4:10,
4:22, 5:2,
5:8.
changed 4:5,
4:9, 4:12,
24:8.
changing 5:11,
7:6.
charged
22:20.
charges 20:14,
21:6,
21:20.
Charleston
1:30.
check 24:9.
Chief 16:11,
16:13,
16:14.
Christa
16:14.
Christine 1:41,
39:18,
39:23.
CIS 22:11.
Citizenship
22:11.
Civil 1:5,
1:34, 2:2,
30:8.
clarification
38:8.
clarify 4:1.
class 26:14,
26:25, 27:2,
27:18, 28:15,

29:20.
classes 11:24,
12:2, 12:4,
12:8, 14:16,
15:17, 20:10,
26:19, 27:16,
28:3, 28:4.
clear 22:18,
36:24, 38:7,
38:8, 38:16,
38:24.
clearly
10:13.
CLERK 13:4,
18:4, 30:8.
client 6:11,
6:19, 10:10,
11:23, 11:25,
12:19, 12:21,
14:13, 14:14,
16:21, 16:22,
39:11,
39:13.
code 19:16.
collaboration
22:15.
COLUMBIA 1:2.
coming 24:18,
26:13,
37:23.
comment 27:7.
communicated
12:25,
25:23.
communicating
15:22, 15:24,
16:3, 16:7,
16:8, 16:10,
16:19,
16:20.
communication
16:12,
25:18.
communications
24:1.
company
13:16.
compliance
19:15, 19:24,
20:3, 20:7,

20:15, 21:1,
21:17.
components
2:12.
computer-aided
1:49.
concerned
4:25.
concluded
39:16.
confer 2:12,
2:13, 2:15,
2:22, 2:24,
11:9, 11:14,
12:9.
conferring
11:11,
14:13.
confirmed
2:21.
Congress
27:13.
consequence
4:6, 4:8,
5:10.
consequences
11:7.
consider
10:2.
Constitution
1:43.
contact 17:19,
21:13.
contempt
38:6.
continue 28:19,
28:21,
32:7.
continuing
22:1.
contradicted
32:23.
contradicts
11:5.
control 26:6,
26:11.
conversation
8:1.
conversations
7:23.

coordination
29:4.
correct 22:5,
22:7, 22:11,
34:8,
39:19.
counsel 2:8,
7:22, 7:24,
7:25, 8:2,
8:3, 8:5,
8:15, 10:16,
11:8, 11:12,
11:21, 11:23,
12:7, 12:16,
12:21, 12:23,
13:10, 13:11,
13:17, 13:19,
15:25, 24:4,
30:11, 30:17,
30:19,
30:22.
country 3:13,
24:20, 24:23,
25:2, 31:14,
32:9, 33:3,
34:18, 35:9,
37:20.
course 8:9,
29:16.
courtroom 8:5,
11:4, 13:4,
36:19, 36:21,
36:22.
courts 27:8,
27:11,
27:14.
criminal
22:19.
criminality
22:15.
CTLD 23:25.
Customs 3:15,
13:10.
.
.
< D >.
day 32:3.
DC 1:36.
deal 28:19.
decides 5:22.

decision 14:13,
  27:9, 27:12,
  33:10,
  33:14.
decisions
  12:18, 16:23,
  27:15.
declarant 8:4,
  15:10, 17:1,
  33:25,
  36:21.
declaration
  11:6, 15:13,
  15:15, 18:15,
  18:16, 22:15,
  23:16,
  23:19.
declarations
  23:17.
Defendant 1:12,
  1:32, 21:5.
defer 35:17.
delay 7:11,
  7:12, 7:13,
  7:15, 7:16.
deleted 4:4.
depart 25:11.
Department
  23:9, 24:1,
  24:16, 25:19,
  25:21, 27:9,
  33:19.
depending
  25:1.
deportability
  25:16.
deportation
  10:21.
deported
  27:2.
deputy 13:4,
  16:11,
  16:13.
described
  4:9.
designated
  19:9, 19:13,
  19:18,
  20:19.
desire 16:5.

determination
  29:21.
dialogue
  21:2.
different 8:23,
  25:3, 25:5,
  25:13.
disagree
  32:25.
discussed
  30:20.
discussion
  21:3.
dismissed
  20:15, 21:4,
  21:6,
  21:20.
District 1:1,
  1:2, 1:18,
  27:11,
  27:14.
Division 1:34,
  16:11,
  16:12.
document 25:5,
  25:15.
doing 31:15,
  31:16, 34:20,
  37:16, 38:20,
  38:21.
done 2:19,
  6:15, 6:16,
  10:10, 20:11,
  26:8, 26:9,
  35:11, 38:3,
  38:5, 39:5.
double 24:9.
down 4:2,
  10:23,
  28:21.
dozens 23:18.
driving 20:14,
  21:19.
drop 4:2.
DSO 19:17.
duration 23:12,
  25:7.
.
.
< E >.

earlier
  33:25.
earnest 29:3.
easy 28:18.
effect 8:21,
  10:12, 14:20,
  14:22, 15:2,
  15:3, 15:17,
  18:22, 19:1,
  19:7, 31:22,
  31:24, 31:25,
  35:5,
  37:17.
effects 7:5.
effort 29:3.
Either 2:19,
  5:3, 9:14,
  9:23, 21:18,
  26:13, 26:14,
  33:22.
email 2:14.
emergency
  28:14.
emphasize
  29:7.
Enforcement
  3:15,
  13:10.
enrolled
  3:19.
ensure 19:15,
  27:21.
enter 13:2,
  13:7, 27:1,
  28:9,
  29:14.
entering 34:20,
  35:3.
entry 25:4.
Esquire 1:22,
  1:27, 1:32.
essentially
  19:3.
established
  3:9, 3:11.
events 31:5.
Everly 1:38,
  13:2, 13:4,
  13:7, 13:9,
  13:24, 14:5,

15:1, 15:6,
  16:1, 28:20,
  31:2, 31:7,
  34:10, 36:20,
  38:1, 38:21,
  39:1,
  39:11.
everybody
  30:4.
everyone 10:21,
  28:19,
  38:8.
everything
  2:21, 20:11,
  20:16, 26:8,
  27:3,
  31:15.
evidence 32:23,
  32:24.
exactly 3:6,
  4:8.
exaggeration
  34:25,
  35:1.
example 25:8.
exchange 19:5,
  19:13,
  19:15.
excuse 3:11,
  8:7, 16:13.
expecting
  30:16.
experienced
  10:9,
  10:14.
expired 23:12,
  25:1, 34:2.
explain 3:6,
  5:10, 7:7,
  9:25, 18:22,
  31:2.
explained
  12:17.
.
.
< F >.
F-1 3:18, 3:21,
  5:3, 8:20,
  8:22, 9:6,
  9:7, 24:8,

44

24:10, 24:11,
    29:11, 34:5,
    34:7.
F. 1:32, 2:9,
    3:15.
fact 32:23,
    35:1, 37:11,
    37:17.
fair 32:5.
family 25:11.
far 20:10,
    26:8.
fast 20:14,
    21:19,
    37:16.
fault 38:20.
FCRR 1:41,
    39:18.
Federal 1:42,
    19:16, 31:20,
    34:11.
feel 18:17.
fees 37:6,
    37:9.
Field 20:20,
    20:21, 20:22,
    21:11, 21:12,
    21:21, 21:23,
    26:20.
figure 18:5,
    25:23,
    29:15.
file 34:13,
    34:14, 35:20,
    36:1.
filed 15:13,
    18:14, 23:16,
    23:20.
filing 35:21.
final 29:21.
finality
    36:7.
find 6:1,
    11:15, 34:9,
    34:21, 35:10,
    35:12, 37:7,
    37:19.
Fine 6:7, 6:8,
    11:17, 11:19,
    15:11, 17:2,

26:20, 28:10,
    36:3,
    38:15.
First 2:18,
    5:5, 5:23,
    14:10, 15:7,
    18:21, 19:7,
    27:17, 33:24,
    35:19,
    37:14.
flag 19:4,
    19:6, 19:7,
    19:8, 19:9,
    19:19, 19:20,
    19:21, 21:14,
    21:16.
follow 26:12.
foregoing
    39:19.
form 25:16.
former 28:10.
forthright
    39:5.
forward 32:6.
forwarded 8:14,
    8:18.
found 22:20,
    39:4.
four 16:15.
frankly
    37:20.
free 14:16.
Friday 34:14,
    36:1, 36:3,
    36:8.
front 23:23,
    26:1, 26:4.
future 2:11.
.
.
< G >.
games 38:22,
    39:5.
gap 19:23.
genre 8:23.
Gentleman 2:11,
    6:14, 6:23,
    26:2,
    30:18.
gets 7:10,

10:18.
getting 18:18,
    30:2,
    31:16.
give 12:13,
    15:13, 15:21,
    16:23, 17:23,
    27:19.
giving 30:3.
Gleiberman
    16:11.
God 11:6.
Government 2:8,
    2:10, 4:21,
    5:5, 8:20,
    9:5, 9:15,
    10:16, 10:25,
    12:7, 13:17,
    13:19, 18:15,
    30:16, 31:23,
    32:3, 32:19,
    32:20, 33:2,
    33:4, 33:14,
    33:20, 34:10,
    34:17, 35:7,
    35:19, 35:21,
    36:14, 37:8,
    37:10, 37:14,
    37:15.
grade 13:21.
graduation
    10:10,
    37:18.
Great 16:6,
    20:18, 29:4,
    36:11,
    38:12.
guilty 22:20.
guy 28:5,
    28:12, 29:11,
    29:19.
guys 3:1, 6:14,
    6:23, 27:25,
    28:10, 28:18,
    28:24, 35:23,
    37:22, 37:23,
    38:12, 38:13,
    38:14.
.
.

< H >.
H-1 25:21.
H-1B 24:18,
    25:8,
    25:13.
H-4 24:17,
    24:21,
    24:25.
hand 20:25.
hang 6:14.
happen 10:18,
    26:24, 38:1,
    38:23.
happened 20:5,
    20:6, 23:18,
    24:12, 26:10,
    33:8, 37:13,
    39:8.
happening
    11:4.
happens 4:13,
    7:10, 7:17,
    18:3, 18:25,
    19:6, 25:1,
    28:7, 29:13,
    29:16.
happy 15:20,
    23:14, 26:11,
    36:1, 36:3.
he'll 34:22.
head 36:5.
hear 6:15,
    13:5, 13:6,
    29:25.
heard 27:3,
    34:24.
hearing 12:11,
    17:4, 26:13,
    28:8, 28:24,
    29:22, 35:16,
    36:2, 36:18,
    36:19.
Henry 16:14.
hereby 39:18.
hire 31:18.
hired 31:18.
hold 17:6.
holding
    35:24.
home 4:20,

5:9.
Homeland 3:12,
  27:9.
Honorable
  1:17.
hope 18:18,
  29:10,
  29:12.
hopeful
  29:14.
Hopefully
  29:23.
hour 7:8,
  35:4.
hours 28:13,
  28:17.
Houston 1:25.
human 37:17.
.
.
< I >.
I-94 25:4.
ICE 4:22, 4:25,
  9:6, 9:7,
  10:2, 10:5,
  12:1, 19:8,
  19:14, 20:22,
  26:15, 26:22,
  28:4, 28:12,
  28:15, 31:6,
  32:6,
  34:23.
idea 28:25.
identify 2:4,
  30:10.
illegally
  10:19, 10:22,
  32:9, 33:3,
  33:9, 33:21,
  34:12, 34:18,
  36:23.
imagine
  23:16.
immediately
  2:19,
  38:10.
Immigration
  3:15, 4:10,
  5:6, 5:7,
  10:9, 10:12,

13:10, 21:9,
  22:11,
  31:25.
impact 3:23,
  4:12, 4:18,
  4:19, 5:13,
  6:4.
import 5:24.
inactive
  5:11.
incompetent
  33:22.
inconsistent
  27:4.
incredibly
  29:24.
indicated 4:22,
  8:15,
  12:18.
indicating
  24:1.
indication
  4:14.
indiscernible
  13:16.
indiscernible.
  16:14.
individual
  3:17, 4:4,
  4:9, 4:10,
  4:15, 8:16,
  8:24, 8:25,
  10:3, 15:7,
  25:9, 27:13,
  31:24, 32:4,
  33:4, 33:8,
  33:16, 34:1,
  34:18.
individuals
  3:13, 16:10,
  25:2, 25:6,
  26:12,
  31:14.
information
  3:8, 3:18,
  14:3, 14:5,
  14:6, 19:13,
  26:4, 30:3.
initially
  24:15,

24:17.
initiate
  27:10.
injury 34:21.
inside 4:9.
instance 21:3,
  21:24,
  22:14.
interesting
  22:2, 22:9.
invite 8:15.
irreparable
  34:21.
issue 3:14,
  24:7, 25:11,
  35:5, 38:6.
issued 23:10,
  24:17.
issues 36:5,
  36:7.
itself 22:25.
.
.
< J >.
jerked 6:1,
  38:22.
join 8:17,
  12:17,
  30:17.
joined 11:16.
joining 11:21,
  30:13.
joint 2:18.
Joseph 1:32,
  2:9, 30:15.
Jr 1:32.
Judge 1:18,
  38:14.
jurisdiction
  27:8, 27:11,
  27:14.
.
.
< K >.
Kafkaesque
  10:8.
Kate 16:12.
keep 10:12.
Keith 13:9.
key 6:2.

kid 26:8,
  28:3.
Knowing
  29:16.
known 10:23.
knows 37:13.
kosher 20:16.
.
.
< L >.
lack 38:8.
language 37:23,
  37:24,
  38:13.
Last 2:24,
  29:25, 34:15,
  34:16.
later 8:1.
Law 1:28,
  16:10, 18:4,
  28:2.
lawful 9:1,
  10:4.
lawfully 9:3,
  9:9, 9:19,
  14:11.
lawyer 9:15,
  11:2.
lawyers 10:9,
  10:14, 10:25,
  26:25, 29:17,
  29:18, 30:1,
  31:18, 31:19,
  37:5,
  37:19.
leadership
  32:13, 32:15,
  38:23,
  39:4.
Leash 16:14.
least 26:13,
  28:11, 29:20,
  39:5.
leave 25:10,
  25:11.
lecture 33:7.
legally 9:14,
  9:15, 9:16,
  9:17, 9:18,
  9:23, 9:24,

10:15, 10:16,
10:17, 14:11,
15:16, 22:23,
23:2, 23:3,
23:5, 23:7,
31:4, 31:14,
32:4, 33:3,
33:8, 33:21,
34:12, 34:18,
35:10, 36:23,
37:20.
legitimately
26:25.
less 13:13,
22:20.
level 29:3.
life 28:18,
29:18.
likely 16:16,
35:10,
35:13.
line 11:22.
link 12:17.
list 4:3.
listen 2:17,
39:9.
lists 26:2.
litigation
5:18.
Little 13:13.
lives 37:17.
LLC 1:28.
local 36:15.
log 12:22,
13:1.
logged 31:8.
long 2:24,
12:21, 13:11,
28:25,
35:24.
longer 8:22.
look 2:16,
27:20.
looked 21:16.
lose 7:18.
lot 23:16,
23:18, 25:5,
31:6,
31:13.
Lyons 2:3,

30:9.
.
.
< M >.
M. 2:3, 30:9.
Ma'am 18:20,
20:23, 23:21,
29:2, 29:7,
29:8, 30:5.
machine 1:48.
Macklin 1:38,
13:9.
maintaining
10:3.
maintains
3:16.
management
16:13.
managing
19:14.
massive
31:12.
matter 19:18,
21:7, 21:24,
39:20.
matters
27:11.
mean 4:14,
7:11, 9:14,
9:16, 20:12,
25:20, 27:22,
28:14.
means 22:8.
meant 11:14,
11:18.
measure 26:6.
mechanical
14:21,
15:1.
meet 2:12,
2:13, 2:14,
2:21, 2:24.
menu 4:2.
minute 17:11.
minutes 2:25,
12:23,
17:21.
miscommunicatio
n 26:10.
miserable

29:19.
mistake
25:20.
mistakenly
34:23.
mistakes
34:8.
mix 29:13.
moment 17:6,
22:23, 23:4,
27:4, 27:20,
27:21,
34:23.
Monday 36:2,
36:8.
money 31:19.
monitor 3:13,
3:17, 3:21,
3:24.
months 10:10,
37:18.
morning 2:6,
2:22,
31:21.
mother 24:18.
motion 35:18.
Motions Hearing
1:16.
move 36:4.
moved 34:5,
34:6.
moving 4:7,
4:19, 32:6.
MR. BANIAS
30:12, 35:25,
36:10,
38:18.
MR. BROWN 2:6,
2:23, 2:25,
3:2, 11:25,
12:5, 24:6,
24:11,
30:6.
MR. EVERLY
13:6, 13:9,
13:13, 13:15,
14:1, 14:9,
14:12, 14:18,
14:23, 15:4,
15:9, 15:24,

16:5, 16:8,
16:17, 16:20,
16:25, 17:5,
17:9, 17:19,
17:25, 18:2,
18:7, 31:8,
32:12, 39:2,
39:14.
MR. WATSON
18:12, 18:20,
18:24, 19:2,
19:9, 19:12,
19:23, 20:4,
20:18, 20:23,
21:9, 21:23,
22:5, 22:7,
22:24, 23:5,
23:9, 23:21,
25:25, 29:2,
29:7, 30:5.
Ms 6:25.
mute 6:10,
6:21, 6:25,
18:11.
.
.
< N >.
name 8:17,
15:6, 16:6.
Names 16:1,
16:9.
National
16:10.
need 12:9,
15:14, 26:20,
27:21, 28:24,
29:23, 30:1,
38:14.
neither
33:22.
Neumann 1:23.
new 25:12.
next 6:17,
20:17,
21:4.
Nina 16:11.
NO. 1:5.
nobody 37:13.
none 2:19.
nonimmigrant

19:3, 19:16,
22:16, 22:25,
23:10,
25:2.
notation
20:5.
note 22:2,
22:9, 22:13,
25:15.
nothing 5:6,
5:7, 10:11.
notice 21:14,
28:13,
28:17.
notices
31:16.
novelty 20:19,
22:13.
nuances 26:3.
number 34:8.
NW 1:35,
1:43.
.
.
< O >.
oath 14:8,
15:12, 15:19,
17:4, 18:17,
18:19.
obligations
21:18.
obvious 7:9,
13:18.
Obviously 3:14,
5:23, 10:22,
37:9, 39:9.
occurred 4:2,
20:5.
occurring
29:8.
occurs 4:13.
offer 15:9,
32:12.
Office 1:33.
Official 1:42,
19:10, 19:14,
19:18, 19:20,
19:21, 20:9,
20:10, 21:14,
39:24.

officials
20:19,
21:12.
Okay 3:1, 3:20,
3:23, 4:6,
5:22, 8:19,
9:3, 12:8,
12:20, 15:6,
16:6, 16:15,
18:6, 18:19,
18:25, 19:6,
19:11, 19:19,
20:2, 20:8,
20:24, 21:8,
21:21, 22:6,
23:14, 23:22,
24:19, 24:24,
25:17, 26:7,
27:24, 29:6,
29:21.
One 2:13, 5:22,
8:15, 23:22,
26:23, 28:2,
31:22, 31:25,
32:8, 34:21,
36:15,
37:3.
operational
12:18, 13:22,
14:12, 14:24,
14:25,
33:10.
order 16:3,
26:13, 26:21,
27:1, 27:17,
28:9, 36:24,
38:7.
ordered 38:9.
ordering 6:19,
16:2, 17:3.
orders 2:12.
otherwise
35:14.
outra- 33:15.
outrageous
33:15, 33:16,
34:9.
oversight
21:1.
.

.
< P >.
p.m. 7:2, 8:11,
8:12, 17:17,
18:9, 30:7,
39:16.
pace 37:16.
papers 32:21,
32:22.
paragraph
23:24,
23:25.
part 3:21.
participation
19:4, 20:1.
particular
23:23.
particularly
34:9.
parties 2:4,
30:10.
Patel 2:3,
8:20, 8:22,
9:16, 13:18,
14:10, 14:16,
15:15, 15:16,
19:21, 20:9,
21:15, 22:23,
23:24, 24:2,
26:24,
30:9.
Pause 7:1,
8:11, 11:20,
12:24,
17:10.
pay 13:21,
37:19.
penalty
15:19.
pending 12:8.
people 3:21,
13:22, 16:15,
23:18,
26:18.
Perfect 29:9.
period 24:25,
25:3, 34:2.
periods 25:5.
perjury
15:19.

permitted
36:15.
person 6:17,
8:18, 14:7,
16:7, 16:23,
22:9, 26:19,
32:16, 37:2,
37:4.
perspective
32:11,
32:19.
phone 6:9,
6:17, 6:18,
6:19, 6:20,
7:25, 8:2,
8:3, 8:6,
11:12, 11:15,
13:24, 14:7,
17:3, 17:13,
23:15, 30:1,
30:2, 32:2,
32:16.
physically
12:5.
PI 36:19.
pick 25:22,
28:12,
34:5.
picked 10:19,
10:20, 26:15,
26:21, 34:6,
34:23.
place 27:12.
Plaintiff 1:7,
1:22, 5:1,
11:23, 24:3,
24:15, 24:16,
29:17, 29:18,
30:11, 30:22,
31:4, 32:7,
33:3, 34:12,
36:23.
Plaintiffs 2:7,
26:17, 28:11,
28:16, 29:15,
30:13, 30:19,
32:6, 35:11,
35:18, 36:1,
37:5.
plane 34:24.

playing 38:22,
  39:5.
Please 2:4,
  2:16, 5:10,
  6:25, 7:7,
  8:6, 11:15,
  13:2, 13:7,
  24:14, 30:10,
  31:2, 36:6.
point 10:2,
  15:10, 22:21,
  23:1, 23:11,
  26:2, 30:25,
  37:21.
pointed 26:3.
policy 15:1.
portions
  3:14.
position 3:4,
  8:20, 9:5,
  11:25, 16:18,
  32:21,
  33:2.
possible 30:20,
  35:2, 38:4,
  38:16.
post 3:12.
potential
  34:21.
potentially
  27:22.
power 37:5.
practical 5:24,
  7:5, 15:17,
  18:22.
practically
  29:19.
precursor
  5:3.
preface 14:2.
prefacing
  16:9.
preferably
  36:2.
prepared 5:15,
  5:16, 5:17,
  6:2.
Present 1:38.
presents
  7:10.

pretty 18:6.
preventing
  12:3, 12:6.
primarily
  16:11.
problem 4:19,
  32:10,
  34:4.
proceed 27:6.
proceeding
  29:3.
Proceedings
  1:48, 7:1,
  8:11, 9:8,
  10:21, 27:10,
  27:13, 39:16,
  39:20.
proceedings.
  11:20, 12:24,
  17:10.
process 32:6.
produced
  1:48.
professors
  21:17.
program 19:5,
  19:15, 20:1,
  21:2.
progress 3:1,
  29:4.
Progressive
  13:15.
prove 35:11,
  35:13.
provide 3:18,
  14:14, 16:9,
  32:13.
provided 15:10,
  25:4.
PSO 19:18.
pulled 20:13,
  21:19.
purpose 3:20.
pursuant 22:14,
  22:17.
put 6:10, 6:21,
  6:23, 9:8,
  10:20, 15:22,
  17:4, 18:17,
  18:19, 26:7,

26:20, 34:24,
  35:3, 38:9,
  38:15.

.

< Q >.
quality 26:5,
  26:11,
  29:1.
question 4:24,
  5:13, 5:18,
  5:20, 5:23,
  6:3, 7:9,
  7:21, 9:11,
  9:14, 9:24,
  9:25, 10:1,
  12:10, 12:15,
  14:10, 14:21,
  14:25, 15:1,
  15:5, 15:8,
  19:24, 20:2,
  20:3, 20:4,
  20:18, 21:4,
  21:6, 21:25,
  22:8, 23:3,
  23:12,
  31:22.
questions 5:22,
  13:18, 13:19,
  13:22, 13:24,
  15:7, 15:21,
  16:16, 18:16,
  21:2,
  35:22.
quickly 36:4,
  38:3,
  38:15.
quite 5:4,
  35:1.

.

< R >.
raise 19:8.
raised 19:7,
  21:2.
raises 19:3,
  19:9,
  19:23.
rather 13:18,
  28:9.

re-examining
  26:5.
reach 20:20,
  30:21, 30:23,
  31:3, 31:11,
  38:2.
realize 10:8,
  29:11.
really 4:24,
  17:22.
reason 37:12,
  39:8.
recalling
  30:8.
receive
  12:11.
received 10:6,
  12:14, 23:25,
  25:19.
recently
  23:17.
recess 17:11,
  17:17, 18:9,
  30:7.
reckless
  21:19.
record 2:5,
  4:4, 4:15,
  7:6, 20:6,
  24:3, 25:24,
  26:1, 30:11,
  39:20.
recorded
  1:48.
Reddy 1:23.
regard 37:16.
regulations
  19:16.
reinstate
  38:3.
reiterate
  14:18.
relates 19:4,
  19:16, 19:25,
  21:9,
  21:24.
relationship
  21:1,
  21:13.
relief 27:20,

28:14,
  29:17.
removal 9:8,
  27:10,
  27:13.
repercussions
  28:5.
report 2:18,
  2:20.
Reported
  1:41.
Reporter 1:42,
  39:24.
representative
  21:11, 21:12,
  21:21, 21:23,
  26:20.
representatives
  20:20, 20:21,
  20:22.
represented
  31:24.
requesting
  24:2.
requirement
  22:1.
requires
  21:7.
rescrubbing
  26:1.
resolution 3:2,
  30:20, 30:21,
  30:24, 31:3,
  31:11,
  32:10.
respect 38:9.
respond 12:12,
  12:16,
  36:13.
response 7:5,
  10:6, 12:11,
  12:15, 14:14,
  14:19, 32:13,
  35:20, 35:22,
  39:10.
responses
  14:2.
restraining
  27:1.
review 21:7,

29:1.
revisited 22:2,
  22:3.
revocations
  25:16.
revoked
  23:11.
Richmond
  1:24.
road 28:21.
routinely
  25:1.
RPR 1:41,
  39:18.
rules 36:15.
run 18:18.
Rutledge
  1:29.
.
.
< S >.
S. 13:10, 23:2,
  29:20.
satisfied 8:4,
  20:15.
saw 2:15,
  2:18.
saying 20:6,
  26:18, 27:1,
  30:1,
  39:13.
says 5:5,
  13:19, 15:2,
  23:25,
  25:9.
SC 1:30.
schedule 35:6,
  35:15,
  35:23.
school 12:3,
  19:10, 19:14,
  19:18, 19:21,
  20:8, 20:10,
  20:19, 21:12,
  21:14, 28:3,
  31:15, 32:8,
  34:22.
schools 3:17,
  3:19.
Schrodinger

9:23.
scope 27:23.
screw 31:12.
screwed 31:6.
screwing
  37:8.
second 2:15,
  2:18, 8:17.
Secretary
  3:12.
Security 3:12,
  16:10,
  27:10.
seeing 37:15.
seek 8:24,
  22:9, 28:13,
  29:17.
seem 34:25.
seems 26:9,
  27:3, 29:9.
seen 25:8.
sent 11:12,
  34:24.
serious 11:7.
Services
  22:11.
set 28:23.
setting
  29:22.
settled 29:20,
  39:6.
shall 21:25.
shorthand
  1:48.
shouldn't
  25:21,
  31:17.
similar
  37:24.
simple 7:9,
  32:6.
sir 13:5,
  13:12, 18:11,
  24:24,
  25:17.
situation
  22:1.
somebody 3:25,
  5:14, 15:3,
  15:14.

somehow 11:5,
  23:17.
someone 3:24,
  4:7, 5:24,
  6:1, 6:4,
  6:17, 6:18,
  7:10, 7:17,
  12:20, 14:21,
  14:22, 15:18,
  18:23, 19:1,
  20:6, 23:15,
  26:17, 31:5,
  31:22.
somewhere 15:2,
  20:13,
  34:24.
soon 17:20,
  38:1.
sooner 29:8.
sorry 3:9,
  5:17, 20:21,
  22:3,
  34:24.
sort 13:18.
sought 24:21,
  27:20.
specific
  12:10.
spending
  31:19.
spoke 26:2,
  30:20.
spot 28:1.
stalling
  16:4.
stamp 25:4.
start 15:18.
starting 23:11,
  30:11.
State 22:15,
  23:10, 23:15,
  24:1, 24:4,
  24:16, 25:19,
  25:20, 25:22,
  25:23, 26:5,
  26:11, 28:25,
  29:10, 31:6,
  31:13, 33:18,
  33:24, 34:5,
  34:6, 34:7.

stated 32:20,
33:25,
34:1.
statement
32:22.
States 1:1,
1:18, 1:33,
8:25, 9:2,
9:4, 9:9,
9:20, 10:20,
14:11, 19:17,
22:16, 22:23,
23:4, 23:6,
23:8, 25:6,
25:10, 25:12,
25:13, 31:5,
34:11,
34:17.
status 2:18,
3:14, 4:9,
4:11, 4:16,
7:18, 9:1,
9:7, 10:4,
10:12, 12:1,
19:3, 22:24,
22:25, 23:13,
24:8, 24:11,
24:21, 24:22,
24:23, 25:7,
31:25,
35:4.
statute 3:16.
stay 6:8, 6:11,
6:16, 6:18,
6:20, 6:24,
32:9.
Ste 1:24.
stenographic
39:19.
steps 17:6,
21:5.
Steve 30:13.
Steven 1:22,
2:6.
stop 7:22,
28:20,
33:16.
straight-forwar
d 31:21.
Street 1:35.

strides 29:4.
stripped
27:10.
strong 29:10,
29:12.
student 19:4,
19:5, 19:12,
19:14, 19:24,
22:16, 25:23,
26:14,
37:18.
students 3:18,
19:17.
studying 19:17,
22:16.
subject
15:19.
subsequent
28:8.
suggest 37:2,
37:3, 39:3.
supplement
35:18.
supported
32:23.
supposed 9:16,
20:11, 26:9,
31:16.
suspect
28:16.
system 3:6,
3:8, 3:16,
4:15, 5:12,
10:11,
19:13.
.
.
< T >.
T. 1:41,
39:23.
talked 10:2,
21:17.
team 29:5.
tells 19:19.
temporary
27:1.
ten 17:11.
tentatively
29:22.
terminate 7:18,

9:7, 19:2,
22:25.
terminated 4:5,
4:7, 4:16,
4:18, 5:2,
5:11, 5:12,
6:4, 7:6,
9:6, 10:11,
21:15, 23:19,
24:3, 24:4,
25:22, 25:24,
29:12, 31:17,
31:23, 32:1,
33:17, 34:19,
35:8.
terminating
5:14, 14:20,
14:22, 15:3,
15:18, 18:22,
19:1.
termination
22:4, 22:7.
terms 7:5,
19:25, 21:5,
22:24.
testify 8:5.
Texas 20:14,
21:20.
THE CLERK 2:2,
36:9.
themselves 2:4,
30:10.
they've 25:9,
25:10,
29:4.
thinking
11:2.
thinks 4:25.
third 15:8.
though 22:19,
31:23, 33:20,
34:12,
37:25.
Thursday
34:14.
today 8:5,
13:18, 28:3,
35:4, 37:13,
39:5.
Todd 2:3,

30:9.
TODD M. LYONS
1:10.
tomorrow 28:4,
36:3, 38:14,
38:15.
totally 6:8.
touches 28:4.
tough 27:25.
towards 3:2.
Transcript
1:16, 1:48,
21:16,
39:19.
transcription
1:49.
transcripts
20:9.
TRO 27:18,
27:21, 28:9,
29:14, 34:21,
35:3, 35:4,
35:24, 36:18,
37:23, 37:24,
38:13.
try 11:15,
29:19.
trying 13:1,
25:23,
34:8.
Turn 6:21,
6:25.
turned 22:14.
two 2:12, 2:14,
2:19, 10:9,
10:13, 13:13,
13:22, 15:7,
25:14, 26:23,
34:22,
37:19.
TX 1:25.
.
.
< U >.
understand
4:17, 14:1,
22:21, 24:16,
26:8, 27:25,
29:24, 37:22,
39:14.

understanding
   3:3, 3:4,
   5:1.
Understood
   13:25, 14:9,
   17:5, 17:14,
   39:11,
   39:12.
unfortunate
   29:13.
Unfortunately
   16:17.
United 1:1,
   1:18, 1:33,
   8:25, 9:1,
   9:3, 9:9,
   9:19, 10:20,
   14:11, 19:17,
   22:16, 22:23,
   23:3, 23:6,
   23:8, 25:6,
   25:9, 25:11,
   25:13, 31:5,
   34:11,
   34:17.
until 6:12,
   6:18, 17:23,
   24:11, 29:20,
   32:1, 35:5,
   38:13,
   38:14.
.
.
< V >.
valid 8:23,
   8:24, 24:2,
   24:10, 24:11,
   33:19, 33:20,
   34:1.
validity 24:25,
   25:3, 34:2,
   34:4.
validly
   25:22.
various 26:5.
versus 2:3,
   8:25, 30:9.
video 2:22,
   6:22, 6:23,
   6:25, 7:24,

8:8, 12:22,
   18:5, 37:3.
violate 16:3.
visa 5:3, 5:4,
   8:20, 8:22,
   8:24, 9:23,
   23:10, 23:11,
   24:2, 24:5,
   24:6, 24:7,
   24:8, 24:10,
   24:17, 24:21,
   24:25, 25:3,
   25:12, 25:14,
   25:15, 25:21,
   29:11, 33:19,
   33:20, 34:1,
   34:2, 34:3,
   34:4, 34:6,
   34:7.
visas 3:21.
visitor 19:5,
   19:13,
   19:15.
vs 1:8.
.
.
< W >.
wait 5:25.
waiting 7:4,
   8:17, 8:19,
   12:22.
Walton 38:14.
wants 26:19.
Washington
   1:12, 1:36,
   1:44.
Watson 1:39,
   8:4, 11:6,
   15:12, 15:15,
   15:19, 15:21,
   17:2, 17:12,
   17:18, 18:10,
   22:19, 25:19,
   26:16, 28:20,
   28:25, 29:24,
   32:2, 36:18,
   36:21,
   39:4.
ways 26:23.
Wednesday

34:15,
   34:16.
week 34:16,
   36:15.
welcome
   18:10.
whatever 2:17,
   7:22.
whether 5:20,
   10:2, 10:3,
   10:14, 10:15,
   23:12, 27:12,
   32:4, 33:25,
   34:11, 34:17,
   34:22, 34:23,
   35:8, 35:9,
   36:23,
   37:19.
White 6:25.
Will 2:4, 11:9,
   13:23, 14:2,
   16:9, 17:5,
   18:18, 19:24,
   25:3, 25:6,
   26:21, 28:20,
   29:23, 30:10,
   30:13, 36:17,
   37:10, 37:21,
   38:2, 38:3.
willful
   33:22.
willing 11:6,
   30:21, 30:23,
   31:1, 31:3,
   31:11.
Wisconsin
   14:17, 21:11,
   21:14, 26:18,
   26:19.
within 4:13,
   5:12, 5:14,
   5:24, 6:5,
   35:4.
without
   37:16.
WITNESS 20:25,
   33:5, 33:18,
   36:22.
words 12:15.
work 32:7.

working 16:25,
   17:20, 21:1,
   21:13,
   25:10.
works 19:14.
worries
   18:14.
writing 2:17.
.
.
< Y >.
years 13:13.
yourself 6:10,
   6:21.
yourselves
   6:23, 28:7,
   29:16.
Yup 17:8.