UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CHINMAY DEORE, et al.,

    Plaintiffs,

Case No. 2:25-cv-11038

HONORABLE STEPHEN J. MURPHY, III

v.

SECRETARY OF U.S. DEPARTMENT
OF HOMELAND SECURITY, et al.,

    Defendants.

                            /

## ORDER GRANTING AND DENYING IN PART MOTION [23]

On April 23, 2025, Plaintiffs filed an *ex parte* request for limited early discovery. ECF No. 23, PageID.336. The request included requests for admissions, interrogatories, requests for production, and up to two depositions of government officials—Andre Watson and/or an alternative if Watson lacks the necessary information. ECF 23, PageID.349; ECF No. 23-2, PageID.355–374; ECF No. 23-3, PageID.375–381. Plaintiffs stated that the discovery would help the parties prepare for the May 19, 2025 preliminary injunction hearing. ECF No. 23, PageID.346. Defendants opposed early discovery. ECF No. 26, PageID.491.

The Court will grant the motion in part and deny it in part. The Court will first analyze the request under Rule 26(d)(1) and its attendant legal framework. The Court will then address several objections raised by Defendants.

1

I. Rule 26(d)(1)—Early Discovery

Federal Rule of Civil Procedure 26(d)(1) authorizes early discovery by court order.[1] Courts in the Sixth Circuit and elsewhere apply a "good cause" standard to requests for early discovery. *E.g.*, *Fabreeka Int'l Holdings, Inc. v. Haley*, No. 15-cv-12958, 2015 WL 5139606, at *5 (E.D. Mich. Sept. 1, 2015); *see* 8A Charles Alan Wright, Arthur R. Miller & Richard L. Marcus, *Federal Practice and Procedure* § 2046.1 (3d ed. 2025) ("[C]ourts presented with requests for immediate discovery have frequently treated the question whether to authorize early discovery as governed by a good cause standard.").

To determine whether good cause is present, courts consider factors that include "(1) whether a preliminary injunction is pending; (2) the breadth of the discovery requests; (3) the purpose for the request; (4) the burden to comply; and (5) how far in advance of the typical discovery process the request was made." *Arab Am. C.R. League v. Trump*, No. 17-10310, 2017 WL 5639928, at *2 (E.D. Mich. Mar. 31, 2017) (synthesizing cases considering "good cause"). Requests for information necessary for preliminary injunction proceedings often satisfy the good-cause standard. *Serra Spring & Mfg., LLC v. Ramnarine*, No. 22-cv-10530, 2022 WL 1487742, at *2 (E.D. Mich. May 11, 2022); *USEC Inc. v. Everitt*, No. 3:09-CV-4, 2009

---

[1] In full, the rule provides that "[a] party may not seek discovery from any source before the parties have conferred as required by Rule 26(f), except in a proceeding exempted from initial disclosure under Rule 26(a)(1)(B), or when authorized by these rules, by stipulation, or by court order." Fed. R. Civ. P. 26(d)(1). Actions for review on an administrative record are exempt from initial disclosures. Fed. R. Civ. P. 26(a)(1)(B)(ii).

WL 152479, at *3 (E.D. Tenn. Jan. 22, 2009) ("Good cause is usually found in cases involving requests for injunctive relief, challenges to personal jurisdiction, class actions, and claims of infringement and unfair competition."); *e.g.*, *J.P. Morgan Sec., LLC v. Duncan*, No. 2:22-cv-11732, 2022 WL 3325514, at *7 (E.D. Mich. Aug. 11, 2022) (Murphy, J.); *Citizens Bank, N.A. v. Margolis*, No. 20-cv-12393, 2020 WL 5505383, at *2 (E.D. Mich. Sept. 11, 2020).[2]

First, a motion for a preliminary injunction is pending. ECF No. 2, PageID.49–51. Second and third, the discovery requests are narrow and tailored to the stage and needs of the case. The requests largely focus on dispelling the fog that clings to some aspects of the case. For example, the requests seek to clarify Defendants' position on whether the fact of termination of a SEVIS record terminates an individual's legal student status in the United States and whether the factual termination of a SEVIS record, on its own, carries legal consequences. ECF No. 23-2, PageID.363–370. On the face of their requests, Plaintiffs seek information necessary to ensure that the preliminary injunction hearing is not duplicative of the TRO hearing. *See* ECF No. 20, PageID.282, PageID.290 (noting the inability to make the requisite findings for a TRO due to insufficient factual development). A full understanding of Defendants'

---

[2] Defendants cited *North Atlantic Operating Co., Inc. v. JingJing Huang*, 194 F. Supp. 3d 634, 637 (E.D. Mich. 2016), for a list of the "narrow circumstances when good cause is shown," and then argued that "none of the recognized reasons for finding good cause for early discovery are present." ECF No. 26, PageID.499. *JingJing Huang*'s list does not include preliminary injunction proceedings. 194 F. Supp. 3d at 637. But the order from *JingJing Huang* that Defendants cited *granted a preliminary injunction* so the inquiry at that point was whether *post-injunction* discovery was justified. *Id.* Further, nothing in *JingJing Huang* suggested that its list was exhaustive.

3

view on those questions is relevant to each of the traditional preliminary injunction factors. *See Overstreet v. Lexington-Fayette Urb. Cnty. Gov't,* 305 F.3d 566, 573 (6th Cir. 2002) (listing factors).

Fourth and fifth, the Court recognizes that early and expedited discovery imposes a burden. In this case, however, some discovery will be necessary before the preliminary injunction hearing. The question then is how much discovery must be given and when. The Court will not allow discovery that is "cumulative or duplicative," if it "can be obtained from some other source that is more convenient," or if it would impose an undue burden on the responding party. Fed. R. Civ. P. 26(b)(2).

Plaintiffs requested leave to depose Andre Watson or another government official with the requisite knowledge on the identified topics. ECF No. 23, PageID.337. The Court concludes that no pre-hearing deposition is justified at this time. Watson already provided a declaration. ECF No. 14-3. Further, the topics indicated for the requested deposition of Watson are highly similar to the information covered by the interrogatories, requests for admission, requests for production, and Watson's existing declaration. *Compare* ECF No. 23-3, PageID.378–381, *with* ECF No. 23-2 *and* ECF No. 14-3. Given the Court's understanding of the dispute, requiring Watson to be deposed is unduly cumulative and burdensome at present. Further, although Plaintiffs' timeline is fast, speed is to be expected given the posture of the case. And the Court will adjust the timeline when it sees more need to do so.

4

The Court finds that the factors weigh in favor of early discovery on the topics identified by Plaintiffs with the exception of a deposition of Andre Watson or another official.

II. Defendants' Objections

Although the factors above favor some early discovery, the Court will address objections raised by Defendants that go to the propriety of any discovery at all and to the propriety of specific requests.

   A. *Discovery in APA Cases*

Defendants argued that discovery is wholly inappropriate in any challenge to agency action under the Administrative Procedure Act. ECF No. 26, PageID.496. To be sure, in APA Cases, "review generally is limited to the administrative record, which includes materials compiled by the agency at the time its decision was made." *S. Forest Watch, Inc. v. Jewell*, 817 F.3d 965, 977 (6th Cir. 2016) (quotation and quotation marks omitted). But that rule's applicability is limited here, largely because it seems that everyone is still in the dark somewhat regarding what actions the agency has taken and whether a more complete record exists. That is, "[a]lthough this in an [APA] case, the discovery plaintiffs request is proper because it is necessary to determine the contours of the agency actions that plaintiffs challenge." *Am. Fed'n of Lab. & Cong. of Indus. Orgs. v. Dep't of Lab.*, No. CV 25-0339, 2025 WL 1142495, at *1 (D.D.C. Feb. 27, 2025); *Humane Soc. of U.S. v. Brown*, 901 F. Supp. 338, 352 (Ct. Int'l Trade 1995) ("In circumstances such as these here, where the defendants are also arguing that this action is not reviewable at all under the APA, discovery is

5

appropriate—at least for the limited purpose of determining the actual nature and extent of defendants' action(s) and record thereof.").

The merits of the APA claim—*e.g.*, whether DHS's actions constituted final agency action that was arbitrary and capricious—must generally be decided on the administrative record already in existence at the time of the agency's decision. *Jewell*, 817 F.3d at 977. But to understand what agency action occurred, the Court must determine whether DHS has unilaterally terminated or purported to terminate F-1 status (a likely final agency action),[3] *see Jie Fang v. Dir. U.S. Immigr. & Customs Enf't*, 935 F.3d 172, 185 (3d Cir. 2019), and whether SEVIS record terminations constitute final agency action. Pinning down the Defendants' position, therefore, on the application of the relevant law to the facts of these Plaintiffs' cases is relevant to whether the agency undertook final action—a threshold, jurisdictional prerequisite.

The only contemporaneous agency rationale provided here was the one relayed in the emails from the universities to the students and a second-hand account that the State Department asked ICE to terminate some SEVIS records. ECF No. 1-3; ECF No. 1-4; ECF No. 1-5; ECF No. 1-6; ECF No. 1-7; ECF No. 14-3, PageID.168–169. If the Court must proceed on only those materials, it will, but the discovery requests here are aimed directly at uncovering any additional, contemporaneous basis for the action, insofar as it exists. The Court will not deny the requests solely

---

[3] To be sure, Plaintiffs challenged "the termination of their F-1 student status in SEVIS." ECF No. 1, PageID.5. A complete reading of the Complaint suggests that Plaintiffs are challenging the termination in SEVIS but also the as of yet uncertain termination of their F-1 status. *See generally id.*

because the case relates to the APA. Insofar as discovery reveals information that the Court cannot consider, the Court will limit its consideration to the appropriate administrative materials.

### B. *Discovery into fact versus law*

The next issue hews closely to the APA issue. On the one hand, Defendants argue that Plaintiffs should be able to discovery only "factual information" and not "legal opinions." ECF No. 26, PageID.496. On the other hand, Defendants argue that fact discovery is either barred, *see ante*, or unnecessary in this case. *See id.* at PageID.500–505.

First, discovery into opinions of how law applies to facts via interrogatories and requests for admission is expressly embraced by the federal rules. Fed. R. Civ. P. 33(a)(2) ("An interrogatory is not objectionable merely because it asks for an opinion or contention that relates to fact or the application of law to fact . . . ."); Fed. R. Civ. P. 36(a)(1)(A) (authorizing admissions related to "facts, the application of law to fact, or opinions about either"). Much of the requests focus expressly on Defendants' opinions on how immigration law applies to the facts of hypothetical factual scenarios. *See generally* ECF No. 23-2.

Second, in their motion, Defendants concede that issues like irreparable harm will be a key concern at the motion hearing and in the Court's consideration of the request for a preliminary injunction. ECF No. 25, PageID.503–505. Government actors' views on whether the Plaintiffs may legally attend classes, remain in the

country, work,[4] and so on are highly relevant to the harms that Plaintiffs may suffer during litigation. Even if fact discovery would not necessarily relate to the merits, the likelihood of success on the merits is only one of the factors that the Court considers for injunctive relief.

*C. Privilege*

Defendants allude to two possible privileges that might apply to some of the requested discovery: (1) the deliberative process privilege and (2) the law enforcement privilege. ECF No. 26, PageID.507. Neither require the Court to deny the requested discovery in whole.

First, the deliberative process privilege protects "confidential intraagency advisory opinions," but it does not extend to "objective facts" upon which an agency's decisions are based. *See Sanford v. City of Detroit*, 355 F. Supp. 3d 619, 623 (E.D. Mich. 2019). Therefore, discovery into the "objective facts"—*e.g.*, that the State Department requested the SEVIS terminations—would appear "fair game" absent any developed argument from Defendants to the contrary. *Id.* at 624. But because Request for Production No. 4 could step on privileged material, at this time

---

[4] Defendants suggest that Plaintiffs cannot be irreparably harmed by losing work or other financial support because the regulations require that students already have "documentary evidence of financial support in the amount indicated on the Form I–20 or successor form" to get legal status. 8 C.F.R. § 214.2; ECF No. 26, PageID.505. But the Department of Homeland Security's website notes that "financial support" can include financial aid, scholarships, and letters from employers showing salary. *Financial Ability*, Dep't of Homeland Sec., https://studyinthestates.dhs.gov/students/prepare/financial-ability [https://perma.cc/5N82-SDCX] (last accessed Apr. 28, 2025). Those methods of "support" could be jeopardized by an actual loss or apparent loss of F-1 status.

8

Defendants must produce only those emails alluded to by Andre Watson in his declaration and may redact any portion beyond the request to terminate SEVIS records.

Second, Defendants have not sustained the burden to prophylactically assert the law enforcement privilege.

> Three requirements must be met by the Government to prevail on its claim of privilege: (1) there must be a formal claim of privilege by the head of the department having control over the requested information; (2) assertion of the privilege must be based on actual personal consideration by that official; and (3) the information for which the privilege is claimed must be specified, with an explanation why it properly falls within the scope of the privilege.

*Hamama v. Adducci*, 2018 WL 2445042, at *1 (E.D. Mich. May 31, 2018) (quotation and quotation marks omitted). Defendants did not make any showing on any factor here, so the Court will not apply the law enforcement privilege.

### D. "Nonsensical" or ill-targeted requests

The last major objection that Defendants have to the requests is that some are "nonsensical" or seek information held by others. *See* ECF No. 26, PageID.502, PageID.508. First, Defendants note that the maintenance of F-1 status requires compliance with several regulatory requirements, some of which it is not responsible for tracking. So, requests about students' F-1 status cannot be answered by ICE alone without a comprehensive review of students' compliance with the regulations. *Id.* at PageID.508.

But the Court will not now deny the requested discovery based on regulatory responsibility of others. Instead, the Court will instruct Defendants to answer the

9

requests to the best of their ability. In doing so, Defendants should read the requests carefully. For example, some include language like "if they are otherwise in compliance with the conditions of their F-1 status" and "otherwise complying with their F-1 status." ECF No. 23-2, PageID.364–365. And if, as Defendants suppose, certain requests for admission cannot be answered without information or actions by third parties, Defendants should say so and state "in detail why the answering party cannot truthfully admit or deny it." Fed. R. Civ. P. 34(a)(4).

III. Mootness

The parties here have made consistent references to similar cases elsewhere and the fact that dozens of like cases are proceeding across the country. The parties should promptly inform the Court of any factual change that could suggest to a reasonable jurist that all or some of the relief sought has become moot—*e.g.*, a restoration of SEVIS records for some or all of Plaintiffs—even if the parties believe that the case remains live in part or in whole.

## ORDER

**WHEREFORE**, it is hereby **ORDERED** that Plaintiffs' Emergency Ex Parte Motion for Immediate Expedited Discovery [23] is **GRANTED IN PART** and **DENIED IN PART** consistent with this order.

**IT IS FURTHER ORDERED** that Defendants **MUST ANSWER** interrogatories, requests for admission, and requests for production of documents identified in ECF No. 23-2 **no later than May 9, 2025 at 5:00 p.m.**

10

**IT IS FURTHER ORDERED that** Plaintiffs' request to depose Andre Watson or another official is **DENIED**.

**SO ORDERED.**

                                                      s/ Stephen J. Murphy, III
                                                      STEPHEN J. MURPHY, III
                                                      United States District Judge

Dated: April 30, 2025